# EXHIBIT 1

First issued by
The Baltic and International Maritime Council (BIMCO), Copenhagen in 1974
as "Barecon A" and "Barecon B". Revised and amalgamated 1989. Revised 2001

Printed by BIMCO's idea

Copyright, published by
The Baltic and International Maritime Council (BIMCO), Copenhagen, issued November 2001

| 1. Shipbroker | BIMCO STANDARD BAREBOAT CHARTER |
|---|---|
| ICAP Shipping Ltd. | CODE NAME: "BARECON 2001" **PART I** |

| 2. Place and date |
|---|
| London 27th May 2010 |

| 3. Owners/Place of business (Cl. 1) | 4. Bareboat Charterers/Place of business (Cl. 1) |
|---|---|
| Eclipse Liquidity of the Marshall Islands whose obligations will be guaranteed by Stealth Maritime Corp. of Liberia | Geden Holdings Limited, Malta or nominee always guaranteed by Geden line. Performance Guarantee to the satisfaction of Owners and their financiers to be mutually agreed. |

| 5. Vessel's name, call sign and flag (Cl. 1 and 3) |
|---|
| M/T Avor |
| Flag Malta |
| Hull number 1758 |

| 6. Type of Vessel | 7. GT/NT |
|---|---|
| Crude Oil Carrier | About 61341 / About 35396 |

| 8. When/Where built | 9. Total DWT (abt.) in metric tons on summer freeboard |
|---|---|
| 2010, Samsung Heavy Industries Co. Ltd. | 115,804 |

| 10. Classification Society (Cl. 3) | 11. Date of last special survey by the Vessel's classification society |
|---|---|
| DNV | N/A |

| 12. Further particulars of Vessel (also indicate minimum number of months' validity of class certificates agreed acc. to Cl. 3) |
|---|
| Attached Vessel's Q88. Vessel to be redelivered with SS passed. |

| 13. Port or Place of delivery (Cl. 3) | 14. Time for delivery (Cl. 4) | 15. Cancelling date (Cl. 5) |
|---|---|---|
| Ex Yard Samsung Heavy Industries Co. Ltd, Korea. | Back to back with MOA dated 27/05/2010 | N/A |

| 16. Port or Place of redelivery (Cl. 15) | 17. No. of months' validity of trading and class certificates upon redelivery (Cl. 15) |
|---|---|
| DLOSP at one safe Port, berth or anchorage WW in CHOPT always within tradings limits ATONSHINC | SS/DD passed without extensions |

| 18. Running days' notice if other than stated in Cl. 4 | 19. Frequency of dry-docking (Cl. 10(g)) |
|---|---|
| See rider clause 15 | As requested by Class without extension |

| 20. Trading limits (Cl. 6) |
|---|
| Worldwide, excluding Israel, Cambodia, Cuba, Lebanon, Gulf of Aqaba, Namibia, North Korea, Chinese River Ports, Haiti, all war risk and war like zones and other areas/countries prohibited by the flag of the Vessel and the United Nations without Owners' prior consent which shall not be unreasonably withheld. |
| The Vessel not to trade in ice, break ice nor follow ice breakers in ice. |

| 21. Charter period (Cl. 2) | 22. Charter hire (Cl. 11) |
|---|---|
| 5 years firm +/- 30 days in Charterers option. | USD 12900 NET |

| 23. New class and other safety requirements (state percentage of Vessel's insurance value acc. to Box 29)(Cl. 10(a)(ii)) |
|---|
| 10% |

| 24. Rate of interest payable acc. to Cl. 11 (f) and, if applicable. acc. to PART IV | 25. Currency and method of payment (Cl. 11) |
|---|---|
| As per Clause 10 F | US Dollar / Telegraphic Transfer |

This document is a computer generated BARECON 2001 form printed by authority of BIMCO. Any insertion or deletion to the form must be clearly visible. In the event of any modification made to the pre printed text of this document which is not clearly visible, the text of the original BIMCO approved document shall apply. BIMCO assumes no responsibility for any loss, damage or expense as a result of discrepancies between the original BIMCO approved document and this computer generated document.

### "BARECON 2001" STANDARD BAREBOAT CHARTER                          PART I

| | |
|---|---|
| 26. Place of payment; also state beneficiary and bank account (Cl. 11)<br>**TBA** | 27. Bank guarantee/bond (sum and place) (Cl. 24) (optional)<br>**Corporate Guarantee to be attached to the BBCHP as attached to the C/P.** |
| 28. Mortgage(s), if any (state whether 12(a) or (b) applies; if 12(b) applies state date of Financial Instrument and name of Mortgagee(s)Place of business) (Cl. 12) | 29. Insurance (hull and machinery and war risks) (state value acc. to Cl. 13(f) or, if applicable, acc. to Cl. 14(k)) (also state if Cl. 14 applies)<br>**USD 85,000,000.00** |
| 30. Additional insurance cover, if any, for Owners' account limited to (Cl. 13(b) or, if applicable, Cl. 14(g))<br>**At Owner's discretion** | 31. Additional insurance cover, if any, for Charterers' account limited to (Cl. 13(b) or, if applicable, Cl. 14(g))<br>**At Charterer's discretion** |
| 32. Latent defects (only to be filled in if period other than stated in Cl. 3)<br>**N/A** | 33. Brokerage commission and to whom payable (Cl. 27)<br>**NONE** |
| 34. Grace period (state number of clear banking days) (Cl. 28)<br>**Seven (7) working days** | 35. Dispute Resolution (state 30(a), 30(b) or 30(c); if 30(c) agreed Place of Arbitration must be stated (Cl. 30)<br>**30a** |
| 36. War cancellation (indicate countries agreed) (Cl. 26(f))<br>**UK, USA, Russia, China** | |
| 37. Newbuilding Vessel (indicate with "yes" or "no" whether PART III applies) (optional)<br>**Yes** | 38. Name and place of Builders (only to be filled in if PART III applies)<br>**Samsung Heavy Industried Co. Ltd, Korea** |
| 39. Vessel's Yard Building No. (only to be filled in if PART III applies)<br>**Hull 1758** | 40. Date of Building Contract (only to be filled in if PART III applies)<br>**1st February 2007** |
| 41. Liquidated damages and costs shall accrue to (state party acc. to Cl. 1)<br>a) --------<br>b) --------<br>c) -------- | |
| 42. Hire/Purchase agreement (indicate with "yes" or "no" whether PART IV applies) (optional)<br>**As per rider Clause 13** | 43. Bareboat Charter Registry (indicate with "yes" or "no" whether PART V applies) (optional)<br>**Yes** |
| 44.Flag and Country of the Bareboat Charter Registry (only to be filled in if PART V applies)<br>**Malta** | 45. Country of the Underlying Registry (only to be filled in if PART V applies)<br>**Marshall Islands** |
| 46. Number of additional clauses covering special provisions, if agreed<br>**Rider Clauses 1-20** | |

PREAMBLE - It is mutually agreed that this Contract shall be performed subject to the conditions contained in this Charter which shall include PART I and PART II. In the event of a conflict of conditions, the provisions of PART I shall prevail over those of PART II to the extent of such conflict but no further. It is further mutually agreed that PART III and/or PART IV and/or PART V shall only apply and only form part of this Charter if expressly agreed and stated in Boxes 37, 42 and 43. If PART III and/or PART IV and/or PART V apply, it is further agreed that in the event of a conflict of conditions, the provisions of PART I and PART II shall prevail over those of PART III and/or PART IV and/or PART V to the extent of such conflict but no further.

| Signature (Owners) | Signature (Charterers) |
|---|---|
| STRATOS ANESLOS<br>SOLE DIRECTOR | TBGMRK TBKGOR |

This document is a computer generated BARECON 2001 form printed by authority of BIMCO. Any insertion or deletion to the form must be clearly visible. In the event of any modification made to the pre-printed text of this document which is not clearly visible, the text of this original BIMCO approved document shall apply. BIMCO assumes no responsibility for any loss, damage or expense as a result of discrepancies between the original BIMCO approved document and this computer generated document.

PART II
"BARECON 2001" Standard Bareboat Charter

| | |
|---|---|
| **1.** **Definitions** | 1 |
| In this Charter, the following terms shall have the | 2 |
| meanings hereby assigned to them: | 3 |
| *"The Owners"* shall mean the party identified in Box 3; | 4 |
| *"The Charterers"* shall mean the party identified in Box 4; | 5 |
| *"The Vessel"* shall mean the vessel named in Box 5 and | 6 |
| with particulars as stated in Boxes 6 to 12. | 7 |
| *"Financial Instrument"* means the mortgage, deed of | 8 |
| covenant or other such financial security instrument as | 9 |
| annexed to this Charter and stated in Box 28. | 10 |

**2.** **Charter Period**
In consideration of the hire detailed in Box 22, — 12
the Owners have agreed to let and the Charterers have — 13
agreed to hire the Vessel for the period stated in Box 21 — 14
("The Charter Period"). — 15

~~3.~~ ~~Delivery~~ — 16
~~(not applicable when Part III applies, as indicated in Box 37)~~ — 17
~~(a)  The Owners shall before and at the time of delivery~~ — 18
~~exercise due diligence to make the Vessel seaworthy~~ — 19
~~And in every respect ready in hull, machinery and~~ — 20
~~equipment for service under this Charter.~~ — 21
~~The Vessel shall be delivered by the Owners and taken~~ — 22
~~over by the Charterers at the port or place indicated in~~ — 23
~~Box 13 in such ready safe berth as the Charterers may~~ — 24
~~direct.~~ — 25
~~(b)  The Vessel shall be properly documented on~~ — 26
~~delivery in accordance with the laws of the flag State~~ — 27
~~indicated in Box 5 and the requirements of the~~ — 28
~~classification society stated in Box 10. The Vessel upon~~ — 29
~~delivery shall have her survey cycles up to date and~~ — 30
~~trading and class certificates valid for at least the number~~ — 31
~~of months agreed in Box 12.~~ — 32
~~(c)  The delivery of the Vessel by the Owners and the~~ — 33
~~taking over of the Vessel by the Charterers shall~~ — 34
~~constitute a full performance by the Owners of all the~~ — 35
~~Owners' obligations under this Clause 3, and thereafter~~ — 36
~~the Charterers shall not be entitled to make or assert~~ — 37
~~any claim against the Owners on account of any~~ — 38
~~conditions, representations or warranties expressed or~~ — 39
~~implied with respect to the Vessel but the Owners shall~~ — 40
~~be liable for the cost of but not the time for repairs or~~ — 41
~~renewals occasioned by latent defects in the Vessel,~~ — 42
~~her machinery or appurtenances, existing at the time of~~ — 43
~~delivery under this Charter, provided such defects have~~ — 44
~~manifested themselves within twelve (12) months after~~ — 45
~~delivery unless otherwise provided in Box 32.~~ — 46

**4.** **Time for Delivery** — 47
~~(not applicable when Part III applies, as indicated in Box 37)~~ — 48
~~The Vessel shall not be delivered before the date~~ — 49
~~indicated in Box 14 without the Charterers' consent and~~ — 50
~~the Owners shall exercise due diligence to deliver the~~ — 51
~~Vessel not later than the date indicated in Box 15.~~ — 52
~~Unless otherwise agreed in Box 18, the Owners shall~~ — 53
~~give the Charterers not less than thirty (30) running days'~~ — 54
~~preliminary and not less than fourteen (14) running days'~~ — 55
~~definite notice of the date on which the Vessel is~~ — 56
~~expected to be ready for delivery.~~ — 57
~~The Owners shall keep the Charterers closely advised~~ — 58
~~of possible changes in the Vessel's position.~~ — 59

~~5.~~ ~~Cancelling~~ — 60
~~(not applicable when Part III applies, as indicated in Box 37)~~ — 61
~~(a)  Should the Vessel not be delivered latest by the~~ — 62
~~cancelling date indicated in Box 15, the Charterers shall~~ — 63
~~have the option of cancelling this Charter by giving the~~ — 64
~~Owners notice of cancellation within thirty six (36)~~ — 65
~~running hours after the cancelling date stated in Box~~ — 66
~~15, failing which this Charter shall remain in full force~~ — 67
~~and effect.~~ — 68
~~(b)  If it appears that the Vessel will be delayed beyond~~ — 69
~~the cancelling date, the Owners may, as soon as they~~ — 70
~~are in a position to state with reasonable certainty the~~ — 71
~~day on which the Vessel should be ready, give notice~~ — 72

~~thereof to the Charterers asking whether they will~~ — 73
~~exercise their option of cancelling, and the option must~~ — 74
~~then be declared within one hundred and sixty-eight~~ — 75
~~(168) running hours of the receipt by the Charterers of~~ — 76
~~such notice or within thirty-six (36) running hours after~~ — 77
~~the cancelling date, whichever is the earlier. If the~~ — 78
~~Charterers do not then exercise their option of cancelling,~~ — 79
~~the seventh day after the readiness date stated in the~~ — 80
~~Owners' notice shall be substituted for the cancelling~~ — 81
~~date indicated in Box 15 for the purpose of this Clause 5.~~ — 82
~~(c)  Cancellation under this Clause 5 shall be without~~ — 83
~~prejudice to any claim the Charterers may otherwise~~ — 84
~~have on the Owners under this Charter.~~ — 85

**6.** **Trading Restrictions** — 86
The Vessel shall be employed in lawful trades for the — 87
carriage of suitable lawful merchandise within the trading — 88
limits indicated in Box 20. — 89
The Charterers undertake not to employ the Vessel or — 90
suffer the Vessel to be employed otherwise than in — 91
conformity with the terms of the contracts of insurance — 92
(including any warranties expressed or implied therein) — 93
without first obtaining the consent of the insurers to such — 94
employment and complying with such requirements as — 95
to extra premium or otherwise as the insurers may — 96
prescribe. When required by Owner, the Charterers — 97
shall keep the Owners and Mortgagees advised on
intended employment of the Vessel.
The Charterers also undertake not to employ the Vessel — 98
or suffer her employment in any trade or business which — 99
is forbidden by the law of any country to which the Vessel — 100
may sail or is otherwise illicit or in carrying illicit or — 101
prohibited goods or in any manner whatsoever which — 102
may render her liable to condemnation, destruction, — 103
seizure or confiscation. — 104
Notwithstanding any other provisions contained in this — 105
Charter it is agreed that nuclear fuels or radioactive — 106
products or waste are specifically excluded from the — 107
cargo permitted to be loaded or carried under this — 108
Charter. This exclusion does not apply to radio-isotopes — 109
used or intended to be used for any industrial, — 110
commercial, agricultural, medical or scientific purposes — 111
provided the Owners' prior approval has been obtained — 112
to loading thereof. — 113

**7.** **Surveys on Delivery and Redelivery** — 114
*(not applicable when Part III applies, as indicated in Box 37)* — 115
The Owners and Charterers shall each appoint — 116
surveyors for the purpose of determining and agreeing — 117
in writing the condition of the Vessel at the time of — 118
delivery and redelivery hereunder. The Owners shall — 119
bear all expenses of the On-hire Survey including loss — 120
of time, if any, and the Charterers shall bear all expenses — 121
of the Off-hire Survey including loss of time, if any, at — 122
the daily equivalent to the rate of hire or pro rata thereof. — 123

**8.** **Inspection** — 124
The Owners shall have the right at any time after giving — 125
reasonable notice to the Charterers to inspect or survey — 126
the Vessel or instruct a duly authorised surveyor to carry — 127
out such survey on their behalf:- provided it does not — 128
interfere with the operation of the Vessel a/o crew,
but not to be unreasonably withheld.
**(a)** to ascertain the condition of the Vessel and satisfy — 129
themselves that the Vessel is being properly repaired — 130
and maintained. The costs and fees for such inspection — 131
or survey shall be paid by the Owners unless the Vessel — 132
is found to require repairs or maintenance in order to — 133
achieve the condition so provided; — 134
**(b)** in dry-dock if the Charterers have not dry-docked — 135
Her in accordance with Clause 10(g). The costs and fees — 136
for such inspection or survey shall be paid by the — 137
Charterers; — 138
**(c)** for any other commercial reason they consider — 139
necessary (provided it does not unduly interfere with — 140
the commercial operation of the Vessel). The costs and — 141

This document is a computer generated BARECON 2001 form printed by authority of BIMCO. Any insertion or deletion to the form must be clearly visible. In event of any modification being made to the pre-printed text of this document which is not clearly visible, the text of the original BIMCO approved document shall apply. BIMCO assumes no responsibility for any loss, damage or expense caused as a result of discrepancies between the original BIMCO approved document and this computer generated document.

PART II
"BARECON 2001" Standard Bareboat Charter

fees for such inspection and survey shall be paid by the 142
Owners. 143
All time in respect of inspection, survey or repairs 144
shall be for the Charterers' account and form part of the 145
Charter Period. 146
The Charterers shall also permit the Owners to inspect 147
the Vessel's log books whenever requested and shall 148
whenever required by the Owners furnish them with full 149
information regarding any casualties or other accidents 150
or damage to the Vessel. 151

9.  Inventories, Oil and Stores 152
    A complete inventory of the Vessel's entire equipment, 153
    outfit including spare parts, appliances and of all 154
    consumable stores on board the Vessel shall be made 155
    by the Charterers in conjunction with the Owners on 156
    delivery and again on redelivery of the Vessel. The 157
    Charterers and the Owners, respectively, shall at the 158
    time of delivery and redelivery take over and pay for all 159
    bunkers, lubricating oil, unbroached provisions, paints, 160
    ropes and other consumable stores (excluding spare 161
    parts) in the said Vessel at the then current market prices 162
    at the ports of delivery and redelivery, respectively. The 163
    Charterers shall ensure that all spare parts listed in the 164
    inventory and used during the Charter Period are 165
    replaced at their expense prior to redelivery of the 166
    Vessel. 167

10. Maintenance and Operation 168
    (a)(i) Maintenance and Repairs – During the Charter 169
    Period the Vessel shall be in the full possession 170
    and at the absolute disposal for all purposes of the 171
    Charterers and under their complete control in 172
    every respect. The Charterers shall maintain the 173
    Vessel, her machinery, boilers, appurtenances and 174
    spare parts in a good state of repair, in efficient 175
    operating condition and in accordance with good 176
    commercial maintenance practice and, except as 177
    provided for in Clause 14(l), if applicable, at their 178
    own expense they shall at all times keep the 179
    Vessel's Class fully up to date with the Classification 180
    Society indicated in Box 10 and maintain all other 181
    necessary certificates in force at all times. If 182
    necessary as deemed by Class, the Charterers to 
    take immediate steps to have the necessary 
    repairs done within a reasonable time (prior to or 
    upon SS-drydocking) failing which the Owners 
    shall have the right of withdrawing the Vessel 
    from the service of the Charterers and without 
    prejudice to any claim the Owners may 
    otherwise have against the Charterers under this 
    Charter.
    (ii) New Class and Other Safety Requirements - In the 183
    event of any improvement, structural changes or 184
    new equipment becoming necessary for the 185
    continued operation of the Vessel by reason of new 186
    class requirements or by compulsory legislation 187
    costing (excluding the Charterers' loss of time) 188
    more than the percentage stated in Box 23, or if 189
    Box 23 is left blank, 5 per cent. of the Vessel's 190
    insurance value as stated in Box 29, then the 191
    extent, if any, to which the rate of hire shall be varied 192
    and the ratio in which the cost of compliance shall 193
    be shared between the parties concerned in order 194
    to achieve a reasonable distribution thereof as 195
    between the Owners and the Charterers having 196
    regard, inter alia, to the length of the period 197
    remaining under this Charter shall, in the absence 198
    of agreement, be referred to the dispute resolution 199
    method agreed in Clause 30. 200
    (iii) Financial Security - The Charterers shall maintain 201
    financial security or responsibility in respect of third 202
    party liabilities as required by any government, 203
    including federal, state or municipal or other division 204
    or authority thereof, to enable the Vessel, without 205

penalty or charge, lawfully to enter, remain at, or 206
leave any port, place, territorial or contiguous 207
waters of any country, state or municipality in 208
performance of this Charter without any delay. This 209
obligation shall apply whether or not such 210
requirements have been lawfully imposed by such 211
government or division or authority thereof. 212
The Charterers shall make and maintain all arrange- 213
ments by bond or otherwise as may be necessary to 214
satisfy such requirements at the Charterers' sole 215
expense and the Charterers shall indemnify the Owners 216
against all consequences whatsoever (including loss of 217
time) for any failure or inability to do so. 218
(b)  Operation of the Vessel - The Charterers shall at 219
their own expense and by their own procurement man, 220
victual, navigate, operate, supply, fuel and, whenever 221
required, repair the Vessel during the Charter Period 222
and they shall pay all charges and expenses of every 223
kind and nature whatsoever incidental to their use and 224
operation of the Vessel under this Charter, including 225
annual flag State fees and any foreign general 226
municipality and/or state taxes. The Master, officers 227
and crew of the Vessel shall be the servants of the Charterers 228
for all purposes whatsoever, even if for any reason 229
appointed by the Owners. 230
Charterers shall comply with the regulations regarding 231
officers and crew in force in the country of the Vessel's 232
flag or any other applicable law. 233
(c)  The Charterers shall keep the Owners and the 234
mortgagee(s) advised of the intended employment, 235
planned dry-docking and major repairs of the Vessel, 236
as reasonably required. 237
(d)  Flag and Name of Vessel – Charterers have the 238
right to reflag the ship and install and display their
funnel insignia and fly their own house flag, but name
cannot be changed. During the Charter
Period, the Charterers shall have liberty to paint the 239
Vessel in their own colours, install and display their 240
funnel insignia and fly their own house flag. The 241
Charterers shall also have the liberty, with the Owners' 242
consent, which shall not be unreasonably withheld, to 243
change the flag and/or the name of the Vessel during 244
the Charter Period. Painting and re-painting, instalment 245
and re-instalment, registration and re-registration, if 246
required by the Owners, shall be at the Charterers' 247
expense and time. 248
(e)  Changes to the Vessel – Subject to Clause 10(a)(i), 249
the Charterers shall make no structural changes in the 250
Vessel or changes in the machinery, boilers, appurten- 251
ances or spare parts thereof without in each instance 252
first securing the Owners' approval thereof. If the Owners 253
so agree, the Charterers shall, if the Owners so require, 254
restore the Vessel to its former condition before the 255
termination of this Charter. 256
(f)  Use of the Vessel's Outfit, Equipment and 257
Appliances - The Charterers shall have the use of all 258
outfit, equipment, and appliances on board the Vessel 259
at the time of delivery, provided the same or their 260
substantial equivalent shall be returned to the Owners 261
on redelivery in the same good order and condition as 262
when received, ordinary wear and tear excepted. The 263
Charterers shall from time to time during the Charter 264
Period replace such items of equipment as shall be so 265
damaged or worn as to be unfit for use. The Charterers 266
are to procure that all repairs to or replacement of any 267
damaged, worn or lost parts or equipment be effected 268
in such manner (both as regards workmanship and 269
quality of materials) as not to diminish the value of the 270
Vessel. The Charterers have the right to fit additional 271
equipment at their expense and risk but the Charterers 272
shall remove such equipment at the end of the period if 273
requested by the Owners. Any equipment including radio 274
equipment on hire on the Vessel at time of delivery shall 275
be kept and maintained by the Charterers and the 276
Charterers shall assume the obligations and liabilities 277

This document is a computer generated BARECON 2001 form printed by authority of BIMCO. Any insertion or deletion to the form must be clearly visible. In event of any modification being made to the pre-printed text of this document which is not clearly visible, the text of the original BIMCO approved document shall apply. BIMCO assumes no responsibility for any loss, damage or expense caused as a result of discrepancies between the original BIMCO approved document and this computer generated document.

PART II
"BARECON 2001" Standard Bareboat Charter

of the Owners under any lease contracts in connection 278
therewith and shall reimburse the Owners for all 279
expenses incurred in connection therewith, also for any 280
new equipment required in order to comply with radio 281
regulations. 282
(g)  Periodical Dry-Docking - The Charterers shall dry- 283
dock the Vessel and clean and paint her underwater 284
parts whenever the same may be necessary, but not 285
less than once during the period stated in Box 19 or, if 286
Box 19 has been left blank, every sixty (60) calendar 287
months after delivery or such other period as may be 288
required by the Classification Society or flag State. 289

**11.  Hire** 290
(a)  The Charterers shall pay hire due to the Owners 291
punctually in accordance with the terms of this Charter 292
in respect of which time shall be of the essence. 293
(b)  Payment of hire shall be made as per daily hire 294
in Box 22 basis per calendar month in advance. First
hire payable prorata upto end of the month starting
from Vessel's actual delivery date/time. The Charterers
shall pay to the Owners for the hire
of the Vessel a lump-sum in the amount indicated in 295
Box 22 which shall be payable not later than every thirty 296
(30) running days in advance, the first lump sum being 297
payable on the date and hour of the Vessel's delivery to 298
the Charterers. Hire shall be paid continuously 299
throughout the Charter Period. 300
(c)  Payment of hire shall be made in cash without 301
discount in the currency and in the manner indicated in 302
Box 25 and at the place mentioned in Box 26. 303
(d)  Final payment of hire, if for a period of less than 304
thirty (30) running days a month, shall be calculated 305
proportionally
according to the number of days and hours remaining 306
before redelivery and advance payment to be effected 307
accordingly. 308
(e)  Should the Vessel be lost or missing, hire shall 309
cease from the date and time when she was lost or last 310
heard of. The date upon which the Vessel is to be treated 311
as lost or missing shall be ten (10) days after the Vessel 312
was last reported or when the Vessel is posted as 313
missing by Lloyd's, whichever occurs first. Any hire paid 314
in advance to be adjusted accordingly. 315
(f)  Any delay in payment of hire shall entitle the 316
Owners to interest at the rate per annum as agreed 317
in Box 24. If Box 24 has not been filled in, the three months 318
Interbank offered rate in London (LIBOR or its successor) 319
for the currency stated in Box 25, as quoted by the British 320
Bankers' Association (BBA) on the date when the hire 321
fell due, increased by 2 per cent., shall apply. 322
(g)  Payment of interest due under sub-clause 11(f) 323
shall be made within seven (7) running days of the date 324
of the Owners' invoice specifying the amount payable 325
or, in the absence of an invoice, at the time of the next 326
hire payment date. 327

**12.  Mortgage** 328
(only to apply if Box 28 has been appropriately filled in) 329
*)  (a)  The Owners warrant that they have not effected 330
any mortgage(s) of the Vessel and that they shall not 331
effect any mortgage(s) without the prior consent of the 332
Charterers, which shall not be unreasonably withheld. 333
*)  (b)  The Vessel chartered under this Charter is financed 334
by a mortgage according to the Financial Instrument. 335
The Charterers undertake to comply, and provide such 336
information and documents to enable the Charterers to 337
comply, with all such instructions or directions in regard 338
to the employment, insurances, operation, repairs and 339
maintenance of the Vessel as laid down in the Financial 340
Instrument or as may be directed from time to time during 341
the currency of the Charter by the mortgagee(s) in 342
conformity with the Financial Instrument. The Charterers 343
confirm that, for this purpose, they have acquainted 344
themselves with all relevant terms, conditions and 345

provisions of the Financial Instrument and agree to 346
acknowledge this in writing in any form that may be 347
required by the mortgagee(s). The Owners warrant that 348
they have not effected any mortgage(s) other than stated 349
in Box 28. Charterers will sign a tripartite agreement 350
with the Owners and the Bank if needed unless this
will not give any additional obligations to the
Charterers other than what a standard assignment
would give. Charterers in any case will sign an
acknowledgement if Owners will assign their rights.
and that they shall not agree to any
amendment of the mortgage(s) referred to in Box 28 or 351
effect any other mortgage(s) without the prior consent 352
of the Charterers, which shall not be unreasonably 353
withheld. 354
*)  (Optional, Clauses 12(a) and 12(b) are alternatives; 355
indicate alternative agreed in Box 28). 356

**13.  Insurance and Repairs** 357
(a)  During the Charter Period the Vessel shall be kept 358
insured by the Charterers at their expense against hull 359
and machinery, war and Protection and Indemnity risks 360
(and any risks against which it is compulsory to insure 361
for the operation of the Vessel, including maintaining 362
financial security in accordance with sub-clause 363
10(a)(iii)) in such form as the Owners shall in writing 364
approve, which approval shall not be un-reasonably 365
withheld. Such Insurances shall be arranged by the 366
Charterers to protect the interests of both the Owners 367
and the Charterers and the mortgagee(s) (if any), and 368
the Charterers shall be at liberty to protect under such 369
insurances the interests of any managers they may 370
appoint. Insurance policies shall cover the Owners and 371
the Charterers according to their respective interests. 372
Subject to the provisions of the Financial Instrument, if 373
any, and the approval of the Owners and the insurers, 374
the Charterers shall effect all insured repairs and shall 375
undertake settlement and reimbursement from the 376
insurers of all costs in connection with such repairs as 377
well as insured charges, expenses and liabilities to the 378
extent of coverage under the insurances herein provided 379
for. 380
The Charterers also to remain responsible for and to 381
effect repairs and settlement of costs and expenses 382
incurred thereby in respect of all other repairs not 383
covered by the insurances and/or not exceeding any 384
possible franchise(s) or deductibles provided for in the 385
insurances. 386
All time used for repairs under the provisions of sub- 387
clause 13(a) and for repairs of latent defects according 388
to Clause 3(c) above, including any deviation, shall be 389
for the Charterers' account. 390
(b)  If the conditions of the above insurances permit 391
additional insurance to be placed by the parties, such 392
cover shall be limited to the amount for each party set 393
out in Box 30 and Box 31, respectively. The Owners or 394
the Charterers as the case may be shall immediately 395
furnish the other party with particulars of any additional 396
insurance effected, including copies of any cover notes 397
or policies and the written consent of the insurers of 398
any such required insurance in any case where the 399
consent of such insurers is necessary. 400
(c)  The Charterers shall upon the request of the 401
Owners, provide information and promptly execute such 402
documents as may be required to enable the Owners to 403
comply with the insurance provisions of the Financial 404
Instrument. 405
(d)  Subject to the provisions of the Financial Instru- 406
ment, if any, should the Vessel become an actual, 407
constructive, compromised or agreed total loss under 408
the insurances required under sub-clause 13(a), all 409
insurance payments for such loss shall be paid to the 410
Owners who shall distribute the moneys between the 411
Owners and the Charterers according to their respective 412
interests. The Charterers undertake to notify the Owners 413

This document is computer generated BARECON 2001 form printed by authority of BIMCO. Any insertion or deletion to the form must be clearly visible. In event of any modification being made to the pre-printed text of this document which is not clearly visible, the text of the original BIMCO approved document shall apply. BIMCO assumes no responsibility for any loss, damage or expense caused as a result of discrepancies between the original BIMCO approved document and this computer generated document.

PART II
"BARECON 2001" Standard Bareboat Charter

| | |
|---|---|
| and the mortgagee(s), if any, of any occurrences in | 414 |
| consequence of which the Vessel is likely to become a | 415 |
| total loss as defined in this Clause. | 416 |
| (e)   The Owners shall upon the request of the | 417 |
| Charterers, promptly execute such documents as may | 418 |
| be required to enable the Charterers to abandon the | 419 |
| Vessel to insurers and claim a constructive total loss. | 420 |
| (f)   For the purpose of insurance coverage against hull | 421 |
| and machinery and war risks under the provisions of | 422 |
| sub-clause 13(a), the value of the Vessel is the sum | 423 |
| indicated in Box 29. | 424 |

14.   Insurance, Repairs and Classification
*(Optional, only to apply if expressly agreed and stated* 426
*in Box 29, in which event Clause 13 shall be considered* 427
*deleted).* 428
*(a)   During the Charter Period the Vessel shall be kept* 429
*insured by the Owners at their expense against hull and* 430
*machinery and war risks under the form of policy or* 431
*policies attached hereto. The Owners and/or insurers* 432
*shall not have any right of recovery or subrogation* 433
*against the Charterers on account of loss of or any* 434
*damage to the Vessel or her machinery or appurt-* 435
*enances covered by such insurance, or on account of* 436
*payments made to discharge claims against or liabilities* 437
*of the Vessel or the Owners covered by such insurance.* 438
*Insurance policies shall cover the Owners and the* 439
*Charterers according to their respective interests.* 440
*(b)   During the Charter Period the Vessel shall be kept* 441
*insured by the Charterers at their expense against* 442
*Protection and Indemnity risks (and any risks against* 443
*which it is compulsory to insure for the operation of the* 444
*Vessel, including maintaining financial security in* 445
*accordance with sub-clause 10(a)(iii)) in such form as* 446
*the Owners shall in writing approve which approval shall* 447
*not be unreasonably withheld.* 448
*(c)   In the event that any act or negligence of the* 449
*Charterers shall vitiate any of the insurance herein* 450
*provided, the Charterers shall pay to the Owners all* 451
*losses and indemnify the Owners against all claims and* 452
*demands which would otherwise have been covered by* 453
*such insurance.* 454
*(d)   The Charterers shall, subject to the approval of the* 455
*Owners or Owners' Underwriters, effect all insured* 456
*repairs  and the Charterers shall undertake a settlement* 457
*of all miscellaneous expenses in connection with such* 458
*repairs as well as all insured charges, expenses and* 459
*liabilities, to the extent of coverage under the insurances* 460
*provided for under the provisions of sub-clause 14(a).* 461
*The Charterers to be secured reimbursement through* 462
*the Owners' Underwriters for such expenditures upon* 463
*presentation of accounts.* 464
*(e)   The Charterers to remain responsible for and to* 465
*effect repairs and settlement of costs and expenses* 466
*incurred thereby in respect of all other repairs not* 467
*covered by the insurances and/or not exceeding any* 468
*possible franchise(s) or deductibles provided for in the* 469
*insurances.* 470
*(f)   All time used for repairs under the provisions of* 471
*sub-clauses 14(d) and 14(e) and for repairs of latent* 472
*defects according to Clause 3 above, including any* 473
*deviation, shall be for the Charterers' account and shall* 474
*form part of the Charter Period.* 475
*The Owners shall not be responsible for any expenses* 476
*as are incidental to the use and operation of the Vessel* 477
*for such time as may be required to make such repairs.* 478
*(g)   If the conditions of the above insurances permit* 479
*additional insurance to be placed by the parties such* 480
*cover shall be limited to the amount for each party set* 481
*out in Box 30 and Box 31, respectively. The Owners or* 482
*the Charterers as the case may be shall immediately* 483
*furnish the other party with particulars of any additional* 484
*insurance effected, including copies of any cover notes* 485
*or policies and the written consent of the insurers of* 486
*any such required insurance in any case where the* 487

| | |
|---|---|
| *consent of such insurers is necessary.* | 488 |
| *(h)   Should the Vessel become an actual, constructive,* | 489 |
| *compromised or agreed total loss under the insurances* | 490 |
| *required under sub-clause 14(a), all insurance payments* | 491 |
| *for such loss shall be paid to the Owners, who shall* | 492 |
| *distribute the moneys between themselves and the* | 493 |
| *Charterers according to their respective interests.* | 494 |
| *(i)   If the Vessel becomes an actual, constructive,* | 495 |
| *compromised or agreed total loss under the insurances* | 496 |
| *arranged by the Owners in accordance with sub-clause* | 497 |
| *14(a), this Charter shall terminate as of the date of such* | 498 |
| *loss.* | 499 |
| *(j)   The Charterers shall upon the request of the* | 500 |
| *Owners, promptly execute such documents as may be* | 501 |
| *required to enable the Owners to abandon the Vessel* | 502 |
| *to the insurers and claim a constructive total loss.* | 503 |
| *(k)   For the purpose of insurance coverage against hull* | 504 |
| *and machinery and war risks under the provisions of* | 505 |
| *sub-clause 14(a), the value of the Vessel is the sum* | 506 |
| *indicated in Box 29.* | 507 |
| *(l)   Notwithstanding anything contained in sub-clause* | 508 |
| *10(a), it is agreed that under the provisions of Clause* | 509 |
| *14, if applicable, the Owners shall keep the Vessel's* | 510 |
| *Class fully up-to-date with the Classification Society* | 511 |
| *indicated in Box 10 and maintain all other necessary* | 512 |
| *certificates in force at all times.* | 513 |

15.   Redelivery 514
At the expiration of the Charter Period the Vessel shall 515
be redelivered by the Charterers to the Owners at a 516
safe and ice-free port or place as indicated in Box 16, in 517
such ready safe berth as the Charterers Owners may 518
direct. 
Charterers shall give the Owners not less than thirty 519
(30) running days' preliminary notice of expected date, 520
range of ports of redelivery or port or place of redelivery 521
and not less than 5/3/2/1 fourteen (14) running days' 522
definite 
notice of expected date and port or place of redelivery. 523
Any changes thereafter in the Vessel's position shall be 524
notified immediately to the Owners. 525
The Charterers warrant that they will not permit the 526
Vessel to commence a voyage (including any preceding 527
ballast voyage) which cannot reasonably be expected 528
to be completed in time to allow redelivery of the Vessel 529
within the Charter Period.  Notwithstanding the above, 530
should the Charterers fail to redeliver the Vessel within 531
The Charter Period, the Charterers shall pay the daily 532
equivalent to the rate of hire stated in Box 22 plus 10 533
per cent  or to the market rate, whichever is the higher, 534
for the number of days by which the Charter Period is 535
exceeded.  All other terms, conditions and provisions of 536
this Charter shall continue to apply. 537
Subject to the provisions of Clause 10, the Vessel shall 538
be redelivered to the Owners in the same or as good 539
structure, state, condition and class as that in which she 540
was delivered, fair wear and tear not affecting class 541
excepted. 542
The Vessel upon redelivery shall have her survey cycles 543
up to date and trading and class certificates valid for at 544
least the number of months agreed in Box 17. 545

16.   Non-Lien 546
The Charterers will not suffer, nor permit to be continued, 547
any lien or encumbrance incurred by them or their 548
agents, which might have priority over the title and 549
interest of the Owners in the Vessel. The Charterers 550
further agree to fasten to the Vessel in a conspicuous 551
place and to keep so fastened during the Charter Period 552
a notice reading as follows: 553
"This Vessel is the property of (name of Owners). It is 554
under charter to (name of Charterers) and by the terms 555
of the Charter Party neither the Charterers nor the 556
Master have any right, power or authority to create, incur 557
or permit to be imposed on the Vessel any lien 558

This document is a computer generated BARECON 2001 form printed by authority of BIMCO. Any insertion or deletion to the form must be clearly visible. In event of any modification being made to the pre-printed text of this document which is not clearly visible, the text of the original BIMCO approved document shall apply. BIMCO assumes no responsibility for any loss, damage or expense caused as a result of discrepancies between the original BIMCO approved document and this computer generated document.

PART II
"BARECON 2001" Standard Bareboat Charter

whatsoever."                                                        559

**17.  Indemnity**                                                 560
(a)  The Charterers shall indemnify the Owners against             561
any loss, damage or expense incurred by the Owners                 562
arising out of or in relation to the operation of the Vessel       563
by the Charterers, and against any lien of whatsoever              564
nature arising out of an event occurring during the                565
Charter Period.  If the Vessel be arrested or otherwise            566
detained by reason of claims or liens arising out of her           567
operation hereunder by the Charterers, the Charterers              568
shall at their own expense take all reasonable steps to            569
secure that within a reasonable time the Vessel is                 570
released, including the provision of bail.                         571
Without prejudice to the generality of the foregoing, the          572
Charterers agree to indemnify the Owners against all               573
consequences or liabilities arising from the Master,               574
officers or agents signing Bills of Lading or other                575
documents.                                                         576
(b)  If the Vessel be arrested or otherwise detained by            577
reason of a claim or claims against the Owners, by the             578
mortgage holder the
Owners shall at their own expense take all reasonable              579
steps to secure that within a reasonable time the Vessel           580
is released, including the provision of bail.                      581
In such circumstances the Owners shall indemnify the               582
Charterers against any loss, damage or expense                     583
incurred by the Charterers (including hire paid under              584
this Charter) as a direct consequence of such arrest or            585
detention.                                                         586

**18.  Lien**                                                      587
The Owners to have a lien upon all cargoes, sub-hires              588
and sub-freights belonging or due to the Charterers or             589
any sub-charterers and any Bill of Lading freight for all          590
claims under this Charter, and the Charterers to have a            591
lien on the Vessel for all moneys paid in advance and              592
not earned.                                                        593

**19.  Salvage**                                                   594
All salvage and towage performed by the Vessel shall               595
be for the Charterers' benefit and the cost of repairing           596
damage occasioned thereby shall be borne by the                    597
Charterers.                                                        598

**20.  Wreck Removal**                                             599
In the event of the Vessel becoming a wreck or                     600
obstruction to navigation the Charterers shall indemnify           601
the Owners against any sums whatsoever which the                   602
Owners shall become liable to pay and shall pay in                 603
consequence of the Vessel becoming a wreck or                      604
obstruction to navigation.                                         605

**21.  General Average**                                           606
The Owners shall not contribute to General Average.                607

**22.  Assignment, Sub-Charter and Sale**                          608
(a)   The Charterers shall not assign this Charter nor             609
sub-charter the Vessel on a bareboat basis except with            610
the prior consent in writing of the Owners, which shall            611
not be unreasonably withheld, and subject to such terms            612
and conditions as the Owners shall approve.                        613
(b)   The Owners shall not sell the Vessel during the              614
currency of this Charter except with the prior written             615
consent of the Charterers, which shall not be unreason-            616
ably withheld, and subject to the buyer accepting an               617
assignment of this Charter.                                        618

**23.  Contracts of Carriage**                                     619
*)   (a)   The Charterers to procure that all documents            620
issued during the Charter Period evidencing the terms             621
and conditions agreed in respect of carriage of goods              622
shall contain a paramount clause incorporating any                 623
legislation relating to carrier's liability for cargo              624
compulsorily applicable in the trade; if no such legislation       625
exists, the documents shall incorporate the Hague-Visby            626
Rules. The documents shall also contain the New Jason              627

Clause and the Both-to-Blame Collision Clause.                     628
*)   ~~(b)   The Charterers are to procure that all passenger~~    629
~~tickets issued during the Charter Period for the carriage~~      630
~~of passengers and their luggage under this Charter shall~~       631
~~contain a paramount clause incorporating any legislation~~       632
~~relating to carrier's liability for passengers and their~~       633
~~luggage compulsorily applicable in the trade; if no such~~       634
~~legislation exists, the passenger tickets shall incorporate~~    635
~~the Athens Convention Relating to the Carriage of~~              636
~~Passengers and their Luggage by Sea, 1974, and any~~             637
~~protocol thereto.~~                                              638
*)   ~~Delete as applicable~~                                      639

**24.  Bank Guarantee**                                            640
*(Optional, only to apply if Box 27 filled in)*                    641
The Charterers undertake to furnish, before delivery of            642
the Vessel, a first class bank guarantee or bond in the            643
sum and at the place as indicated in Box 27 as guarantee           644
for full performance of their obligations under this               645
Charter.  Corporate Guarantee to be attached to the                846
BBCHP.

**25.  Requisition/Acquisition**                                   647
(a)   In the event of the Requisition for Hire of the Vessel       648
by any governmental or other competent authority                   649
(hereinafter referred to as "Requisition for Hire")                650
irrespective of the date during the Charter Period when            651
"Requisition for Hire" may occur and irrespective of the           652
length thereof and whether or not it be for an indefinite          653
or a limited period of time, and irrespective of whether it        654
may or will remain in force for the remainder of the               655
Charter Period, this Charter shall not be deemed thereby           656
or thereupon to be frustrated or otherwise terminated              657
and the Charterers shall continue to pay the stipulated            658
hire in the manner provided by this Charter until the time         659
when the Charter would have terminated pursuant to                 660
any of the provisions hereof always provided however               661
that in the event of "Requisition for Hire" any Requisition        662
Hire or compensation received or receivable by the                 663
Owners shall be payable to the Charterers during the               664
remainder of the Charter Period or the period of the               665
"Requisition for Hire" whichever be the shorter.                   666
(b)   In the event of the Owners being deprived of their           667
ownership in the Vessel by any Compulsory Acquisition              668
of the Vessel or requisition for title by any governmental         669
or other competent authority (hereinafter referred to as           670
"Compulsory Acquisition"), then, irrespective of the date          671
during the Charter Period when "Compulsory Acqui-                  672
sition" may occur, this Charter shall be deemed                    673
terminated as of the date of such "Compulsory                      674
Acquisition". In such event Charter Hire to be considered          675
as earned and to be paid up to the date and time of                676
such "Compulsory Acquisition".                                     677

**26.  War**                                                       678
(a)   For the purpose of this Clause, the words "War               679
Risks" shall include any war (whether actual or                    680
threatened), act of war, civil war, hostilities, revolution,       681
rebellion, civil commotion, warlike operations, the laying         682
of mines (whether actual or reported), acts of piracy,             683
acts of terrorists, acts of hostility or malicious damage,         684
blockades (whether imposed against all vessels or                  685
imposed selectively against vessels of certain flags or            686
ownership, or against certain cargoes or crews or                  687
otherwise howsoever), by any person, body, terrorist or            688
political group, or the Government of any state                     689
whatsoever, which may be dangerous or are likely to be             690
or to become dangerous to the Vessel, her cargo, crew              691
or other persons on board the Vessel.                              692
(b)   The Charterers shall be at liberty to trade the              693
Vessel in War Risk Areas and any applicable
additional premium shall be for the Charterers
account, but with full indemnity to Owners' in regards
to ransoms/accidents/deaths or loss of cargo,
Charterers to show evidence of extra premia being
paid. The Vessel, unless the written consent of the

This document is a computer generated BARECON 2001 form printed by authority of BIMCO. Any insertion or deletion to the form must be clearly visible. In event of any modification being made to the pre-printed text of this document which is not clearly visible, the text of the original BIMCO approved document shall apply. BIMCO assumes no responsibility for any loss, damage or expense caused as a result of discrepancies between the original BIMCO approved document and this computer generated document.

## PART II
## "BARECON 2001" Standard Bareboat Charter

Owners be first obtained, shall not continue to or go 694
through any port, place, area or zone (whether of land 695
or sea), or any waterway or canal, where it reasonably 696
appears that the Vessel, her cargo, crew or other 697
persons on board the Vessel, in the reasonable 698
judgement of the Owners, may be, or are likely to be, 699
exposed to War Risks. Should the Vessel be within any 700
such place as aforesaid, which only becomes danger- 701
ous, or is likely to be or to become dangerous, after her 702
entry into it, the Owners shall have the right to require 703
the Vessel to leave such area. 704

(c)   The Vessel shall not load contraband cargo, or to 705
pass through any blockade, whether such blockade be 706
imposed on all vessels, or is imposed selectively in any 707
way whatsoever against vessels of certain flags or 708
ownership, or against certain cargoes or crews or 709
otherwise howsoever, or to proceed to an area where 710
she shall be subject, or is likely to be subject to 711
a belligerent's right of search and/or confiscation. 712

(d)   If the insurers of the war risks insurance, when 713
Clause 14 is applicable, require payment of 714
premiums and/or calls because, pursuant to the 715
Charterers' orders, the Vessel is within, or is due to enter 716
and remain within, any area or areas which are specified 717
by such insurers as being subject to additional premiums 718
because of War Risks, then such premiums and/or calls 719
shall be reimbursed by the Charterers to the Owners at 720
the same time as the next payment of hire is due. 721

(e)   The Charterers shall have the liberty: 722
(i)    to comply with all orders, directions, recommend- 723
ations or advice as to departure, arrival, routes, 724
sailing in convoy, ports of call, stoppages, 725
destinations, discharge of cargo, delivery, or in any 726
other way whatsoever, which are given by the 727
Government of the Nation under whose flag the 728
Vessel sails, or any other Government, body or 729
group whatsoever acting with the power to compel 730
compliance with their orders or directions; 731
(ii)   to comply with the orders, directions or recom- 732
mendations of any war risks underwriters who have 733
the authority to give the same under the terms of 734
the war risks insurance; 735
(iii)  to comply with the terms of any resolution of the 736
Security Council of the United Nations, any 737
directives of the European Community, the effective 738
orders of any other Supranational body which has 739
the right to issue and give the same, and with 740
national laws aimed at enforcing the same to which 741
the Owners are subject, and to obey the orders 742
and directions of those who are charged with their 743
enforcement. 744

(f)    In the event of outbreak of war (whether there be a 745
declaration of war or not) (i) between any two or more 746
of the following countries: the United States of America; 747
Russia; the United Kingdom; France; and the People's 748
Republic of China, (ii) between any two or more of the 749
countries stated in Box 36, both the Owners and the 750
Charterers shall have the right to cancel this Charter, 751
whereupon the Charterers shall redeliver the Vessel to 752
the Owners in accordance with Clause 15, if the Vessel 753
has cargo on board after discharge thereof at 754
destination, or if debarred under this Clause from 755
reaching or entering it at a near, open and safe port as 756
directed by the Owners, or if the Vessel has no cargo 757
on board, at the port at which the Vessel then is or if at 758
sea at a near, open and safe port as directed by the 759
Owners. In all cases hire shall continue to be paid in 760
accordance with Clause 11 and except as aforesaid all 761
other provisions of this Charter shall apply until 762
redelivery. 763

27.   Commission 764
The Owners to pay a commission at the rate indicated 765
in Box 33 to the Brokers named in Box 33 on any hire 766
paid under the Charter. If no rate is indicated in Box 33, 767

the commission to be paid by the Owners shall cover 768
the actual expenses of the party liable therefor and a reasonable 769
fee for their work. 770
If the full hire is not paid owing to breach of the Charter 771
by either of the parties the party liable therefor shall 772
indemnify the Brokers against their loss of commission. 773
Should the parties agree to cancel the Charter, the 774
Owners shall indemnify the Brokers against any loss of 775
commission but in such case the commission shall not 776
exceed the brokerage on one year's hire. 777

28.   Termination 778
(a)   Charterers' Default 779
The Owners shall be entitled to withdraw the Vessel from 780
the service of the Charterers and terminate the Charter 781
with immediate effect by written notice to the Charterers if: 782
(i)    the Charterers fail to pay hire in accordance with 783
Clause 11.  However, where there is a failure to 784
make punctual payment of hire due to oversight, 785
negligence, errors or omissions on the part of the 786
Charterers or their bankers, the Owners shall give 787
the Charterers written notice of the number of clear 788
banking days stated in Box 34 (as recognised at 789
the agreed place of payment) in which to rectify 790
the failure, and when so rectified within such 791
number of days following the Owners' notice, the 792
payment shall stand as regular and punctual. 793
Failure by the Charterers to pay hire within the 794
number of days stated in Box 34 of their receiving 795
the Owners' notice as provided herein, shall entitle 796
the Owners to withdraw the Vessel from the service 797
of the Charterers and terminate the Charter without 798
further notice; 799
(ii)   the Charterers fail to comply with the requirements of: 800
(1) Clause 6 (Trading Restrictions) 801
(2) Clause 13(a) (Insurance and Repairs) 802
provided that the Owners shall have the option, by 803
written notice to the Charterers, to give the 804
Charterers a specified number of days grace within 805
which to rectify the failure without prejudice to the 806
Owners' right to withdraw and terminate under this 807
Clause if the Charterers fail to comply with such 808
notice; 809
(iii)  the Charterers fail to rectify any failure to comply 810
with the requirements of sub-clause 10(a)(i) 811
(Maintenance and Repairs) as soon as practically 812
possible after the Owners have requested them in 813
writing so to do and in any event so that the Vessel's 814
insurance cover is not prejudiced. 815
(b)   Owners' Default 816
If the Owners shall by any act or omission be in breach 817
of their obligations under this Charter to the extent that 818
the Charterers are deprived of the use of the Vessel 819
and such breach continues for a period of fourteen (14) 820
running days after written notice thereof has been given 821
by the Charterers to the Owners, the Charterers shall 822
be entitled to terminate this Charter with immediate effect 823
by written notice to the Owners. 824
(c)   Loss of Vessel 825
This Charter shall be deemed to be terminated if the 826
Vessel becomes a total loss or is declared as a 827
constructive or compromised or arranged total loss.  For 828
the purpose of this sub-clause, the Vessel shall not be 829
deemed to be lost unless she has either become an 830
actual total loss or agreement has been reached with 831
her underwriters in respect of her constructive, 832
compromised or arranged total loss or if such agreement 833
with her underwriters is not reached it is adjudged by a 834
competent tribunal that a constructive loss of the Vessel 835
has occurred. 836
(d)   Either party shall be entitled to terminate this 837
Charter with immediate effect by written notice to the 838
other party in the event of an order being made or 839
resolution passed for the winding-up, dissolution, 840
liquidation or bankruptcy of the other party (otherwise 841

This document is a computer generated BARECON 2001 form printed by authority of BIMCO. Any insertion or deletion to the form must be clearly visible. In event of any modification being made to the pre-printed text of this document which is not clearly visible, the text of the original BIMCO approved document shall apply. BIMCO assumes no responsibility for any loss, damage or expense caused as a result of discrepancies between the original BIMCO approved document and this computer generated document.

## PART II
## "BARECON 2001" Standard Bareboat Charter

| | |
|---|---|
| than for the purpose of reconstruction or amalgamation) | 842 |
| or if a receiver is appointed, or if it suspends payment, | 843 |
| ceases to carry on business or makes any special | 844 |
| arrangement or composition with its creditors. | 845 |
| (e)   The termination of this Charter shall be without | 846 |
| prejudice to all rights accrued due between the parties | 847 |
| prior to the date of termination and to any claim that | 848 |
| either party might have. | 849 |

29.   Repossession — 850
In the event of the termination of this Charter in — 851
accordance with the applicable provisions of Clause 28, — 852
the Owners shall have the right to repossess the Vessel — 853
from the Charterers at her current or next port of call, or — 854
at a port or place convenient to them without hindrance — 855
or interference by the Charterers, courts or local — 856
authorities.  Pending physical repossession of the Vessel — 857
in accordance with this Clause 29, the Charterers shall — 858
hold the Vessel as gratuitous bailee only to the Owners. — 859
The Owners shall arrange for an authorised represent- — 860
ative to board the Vessel as soon as reasonably — 861
practicable following the termination of the Charter.  The — 862
Vessel shall be deemed to be repossessed by the — 863
Owners from the Charterers upon the boarding of the — 864
Vessel by the Owners' representative.  All arrangements — 865
and expenses relating to the settling of wages, — 866
disembarkation and repatriation of the Charterers' — 867
Master, officers and crew shall be the sole responsibility — 868
of the Charterers. — 869

30.   Dispute Resolution — 870
*)   (a)   This Contract shall be governed by and construed — 871
in accordance with English law and any dispute arising — 872
out of or in connection with this Contract shall be referred — 873
to arbitration in London in accordance with the Arbitration — 874
Act 1996 or any statutory modification or re-enactment — 875
thereof save to the extent necessary to give effect to — 876
the provisions of this Clause. — 877
The arbitration shall be conducted in accordance with — 878
the London Maritime Arbitrators Association (LMAA) — 879
Terms current at the time when the arbitration proceed- — 880
ings are commenced. — 881
The reference shall be to three arbitrators.  A party — 882
wishing to refer a dispute to arbitration shall appoint its — 883
arbitrator and send notice of such appointment in writing — 884
to the other party requiring the other party to appoint its — 885
own arbitrator within 14 calendar days of that notice and — 886
stating that it shall appoint its arbitrator as sole arbitrator — 887
unless the other party appoints its own arbitrator and — 888
gives notice that it has done so within the 14 days — 889
specified.  If the other party does not appoint its own — 890
arbitrator and give notice that it has done so within the — 891
14 days specified, the party referring a dispute to — 892
arbitration may, without the requirement of any further — 893
prior notice to the other party, appoint its arbitrator as — 894
sole arbitrator and shall advise the other party — 895
accordingly.  The award of a sole arbitrator shall be — 896
binding on both parties as if he had been appointed by — 897
agreement. — 898
Nothing herein shall prevent the parties agreeing in — 899
writing to vary these provisions to provide for the — 900
appointment of a sole arbitrator. — 901
In cases where neither the claim nor any counterclaim — 902
exceeds the sum of US$50,000 (or such other sum as — 903
the parties may agree) the arbitration shall be conducted — 904
in accordance with the LMAA Small Claims Procedure — 905
current at the time when the arbitration proceedings are — 906
commenced. — 907
*)   (b)   This Contract shall be governed by and construed — 908
in accordance with Title 9 of the United States Code — 909
and the Maritime Law of the United States and any — 910
dispute arising out of or in connection with this Contract — 911
shall be referred to three persons at New York, one to — 912
be appointed by each of the parties hereto, and the third — 913
by the two so chosen; their decision or that of any two — 914

of them shall be final, and for the purposes of enforcing — 915
any award, judgement may be entered on an award by — 916
any court of competent jurisdiction.  The proceedings — 917
shall be conducted in accordance with the rules of the — 918
Society of Maritime Arbitrators, Inc. — 919
In cases where neither the claim nor any counterclaim — 920
exceeds the sum of US$50,000 (or such other sum as — 921
the parties may agree) the arbitration shall be conducted — 922
in accordance with the Shortened Arbitration Procedure — 923
of the Society of Maritime Arbitrators, Inc. current at — 924
the time when the arbitration proceedings are commenced. — 925
*)   (c)   This Contract shall be governed by and construed — 926
in accordance with the laws of the place mutually agreed — 927
by the parties and any dispute arising out of or in — 928
connection with this Contract shall be referred to — 929
arbitration at a mutually agreed place, subject to the — 930
procedures applicable there. — 931
(d)   Notwithstanding (a), (b) or (c) above, the parties — 932
may agree at any time to refer to mediation any — 933
difference and/or dispute arising out of or in connection — 934
with this Contract. — 935
In the case of a dispute in respect of which arbitration — 936
has been commenced under (a), (b) or (c) above, the — 937
following shall apply:- — 938
(i)   Either party may at any time and from time to time — 939
elect to refer the dispute or part of the dispute to — 940
mediation by service on the other party of a written — 941
notice (the "Mediation Notice") calling on the other — 942
party to agree to mediation. — 943
(ii)   The other party shall thereupon within 14 calendar — 944
days of receipt of the Mediation Notice confirm that — 945
they agree to mediation, in which case the parties — 946
shall thereafter agree a mediator within a further — 947
14 calendar days, failing which on the application — 948
of either party a mediator will be appointed promptly — 949
by the Arbitration Tribunal ("the Tribunal") or such — 950
person as the Tribunal may designate for that — 951
purpose.  The mediation shall be conducted in such — 952
place and in accordance with such procedure and — 953
on such terms as the parties may agree or, in the — 954
event of disagreement, as may be set by the — 955
mediator. — 956
(iii)   If the other party does not agree to mediate, that — 957
fact may be brought to the attention of the Tribunal — 958
and may be taken into account by the Tribunal when — 959
allocating the costs of the arbitration as between — 960
the parties. — 961
(iv)   The mediation shall not affect the right of either — 962
party to seek such relief or take such steps as it — 963
considers necessary to protect its interest. — 964
(v)   Either party may advise the Tribunal that they have — 965
agreed to mediation.  The arbitration procedure shall — 966
continue during the conduct of the mediation but — 967
the Tribunal may take the mediation timetable into — 968
account when setting the timetable for steps in the — 969
arbitration. — 970
(vi)   Unless otherwise agreed or specified in the — 971
mediation terms, each party shall bear its own costs — 972
incurred in the mediation and the parties shall share — 973
equally the mediator's costs and expenses. — 974
(vii)   The mediation process shall be without prejudice — 975
and confidential and no information or documents — 976
disclosed during it shall be revealed to the Tribunal — 977
except to the extent that they are disclosable under — 978
the law and procedure governing the arbitration. — 979
(Note: The parties should be aware that the mediation — 980
process may not necessarily interrupt time limits.) — 981
(e)   If Box 35 in Part I is not appropriately filled in, sub-clause — 982
30(a) of this Clause shall apply.  Sub-clause 30(d) shall — 983
apply in all cases. — 984
*)   Sub-clauses 30(a), 30(b) and 30(c) are alternatives; — 985
indicate alternative agreed in Box 35. — 986

31.   Notices — 987
(a)   Any notice to be given by either party to the other — 988

This document is a computer generated BARECON 2001 form printed by authority of BIMCO. Any insertion or deletion to the form must be clearly visible. In event of any modification being made to the pre-printed text of this document which is not clearly visible, the text of the original BIMCO approved document shall apply. BIMCO assumes no responsibility for any loss, damage or expense caused as a result of discrepancies between the original BIMCO approved document and this computer generated document.

**PART II**
**"BARECON 2001" Standard Bareboat Charter**

| | |
|---|---|
| party shall be in writing and may be sent by fax, telex, e-mail | 989 |
| registered or recorded mail or by personal service. | 990 |
| (b)   The address of the Parties including e-mail(s) for service of such | 991 |
| communication shall be as stated in Boxes 3 and 4 | 992 |
| respectively. | 993 |

This document is a computer generated BARECON 2001 form printed by authority of BIMCO. Any insertion or deletion to the form must be clearly visible. In event of any modification being made to the pre-printed text of this document which is not clearly visible, the text of the original BIMCO approved document shall apply. BIMCO assumes no responsibility for any loss, damage or expense caused as a result of discrepancies between the original BIMCO approved document and this computer generated document.

# "BARECON 2001" Standard Bareboat Charter

## PART III
## PROVISIONS TO APPLY FOR NEWBUILDING VESSELS ONLY
(Optional, only to apply if expressly agreed and stated in Box 37)

| OPTIONAL PART |
| --- |

1.   Specifications and Building Contract
(a)   The Vessel shall be constructed in accordance with the Building Contract (hereafter called the Building Contract) as annexed to this Charter, made between the Builders and the Owners and in accordance with the specifications and plans annexed thereto, such Building Contract, specifications and plans having been counter-signed as approved by the Charterers.
(b)   No change shall be made in the Building Contract or in the specifications or plans of the Vessel as approved by the Charterers as aforesaid, without the Charterers' consent.
(c)   The Charterers shall have the right to send their representative to the Builders' Yard to inspect the Vessel during the course of her construction to satisfy themselves that construction is in accordance with such approved specifications and plans as referred to under sub-clause (a) of this Clause.
(d)   The Vessel shall be built in accordance with the Building Contract and shall be of the description set out therein. Subject to the provisions of sub-clause 2(c)(ii) hereunder, the Charterers shall be bound to accept the Vessel from the Owners, completed and constructed in accordance with the Building Contract, on the date of delivery by the Builders. The Charterers undertake that having accepted the Vessel they will not thereafter raise any claims against the Owners in respect of the Vessel's performance or specification or defects, if any. Nevertheless, in respect of any repairs, replacements or defects which appear within the first 12 months from delivery by the Builders, the Owners shall endeavour to compel the Builders to repair, replace or remedy any defects or to recover from the Builders any expenditure incurred in carrying out such repairs, replacements or remedies. However, the Owners' liability to the Charterers shall be limited to the extent the Owners have a valid claim against the Builders under the guarantee clause of the Building Contract (a copy whereof has been supplied to the Charterers). The Charterers shall be bound to accept such sums as the Owners are reasonably able to recover under this Clause and shall make no further claim on the Owners for the difference between the amount(s) so recovered and the actual expenditure on repairs, replacement or renewing defects or for any loss of time incurred.
Any liquidated damages for physical defects or deficiencies shall accrue to the account of the party stated in Box 41(a) or if not filled in shall be shared equally between the parties. The costs of pursuing a claim or claims against the Builders under this Clause (including any liability to the Builders) shall be borne by the party stated in Box 41(b) or if not filled in shall be shared equally between the parties.

2.   Time and Place of Delivery
(a)   Subject to the Vessel having completed her acceptance trials including trials of cargo equipment in accordance with the Building Contract and specifications to the satisfaction of the Charterers, the Owners shall give and the Charterers shall take delivery of the Vessel afloat when ready for delivery and properly documented at the Builders' Yard or some other safe and readily accessible dock, wharf or place as may be agreed between the parties herein and the Builders. Under the Building Contract the Builders have estimated that the Vessel will be ready for delivery to the Charterers as therein provided but the delivery date for the purpose of this Charter shall be the date when the Vessel is in fact ready for delivery by the Builders after completion of trials whether that be before or after as indicated in the Building Contract. The Charterers shall not be entitled to refuse acceptance of delivery of the Vessel and upon and after such acceptance, subject to Clause

1(d)   the Charterers shall not be entitled to make any claim against the Owners in respect of any conditions, representations or warranties, whether express or implied, as to the seaworthiness of the Vessel or in respect of delay in delivery.
(b)   If for any reason other than a default by the Owners under the Building Contract, the Builders become entitled under that Contract not to deliver the Vessel to the Owners, the Owners shall upon giving to the Charterers written notice of Builders becoming so entitled be excused from giving delivery of the Vessel to the Charterers and upon receipt of such notice by the Charterers this Charter shall cease to have effect.
(c)   If for any reason the Owners become entitled under the Building Contract to reject the Vessel the Owners shall, before exercising such right of rejection, consult the Charterers and thereupon
(i) if the Charterers do not wish to take delivery of the Vessel they shall inform the Owners within seven (7) running days by notice in writing and upon receipt by the Owners of such notice this Charter shall cease to have effect; or
(ii) if the Charterers wish to take delivery of the Vessel they may by notice in writing within seven (7) running days require the Owners to negotiate with the Builders as to the terms on which delivery should be taken and/or refrain from exercising their right to rejection and upon receipt of such notice the Owners shall commence such negotiations and/or take delivery of the Vessel from the Builders and deliver her to the Charterers;
(iii) in no circumstances shall the Charterers be entitled to reject the Vessel unless the Owners are able to reject the Vessel from the Builders;
(iv) if this Charter terminates under sub-clause (b) or (c) of this Clause, the Owners shall thereafter not be liable to the Charterers for any claim under or arising out of this Charter or its termination.
(d)   Any liquidated damages for delay in delivery under the Building Contract and any costs incurred in pursuing a claim therefor shall accrue to the account of the party stated in Box 41(c) or if not filled in shall be shared equally between the parties.

3.   Guarantee Works
If not otherwise agreed, the Owners authorise the Charterers to arrange for the guarantee works to be performed in accordance with the building contract terms, and hire to continue during the period of guarantee works. The Charterers have to advise the Owners about the performance to the extent the Owners may request.

4.   Name of Vessel
The name of the Vessel shall be mutually agreed between the Owners and the Charterers and the Vessel shall be painted in the colours, display the funnel insignia and fly the house flag as required by the Charterers.

5.   Survey on Redelivery
The Owners and the Charterers shall appoint surveyors for the purpose of determining and agreeing in writing the condition of the Vessel at the time of re-delivery. Without prejudice to Clause 15 (Part II), the Charterers shall bear all survey expenses and all other costs, if any, including the cost of docking and undocking, if required, as well as all repair costs incurred. The Charterers shall also bear all loss of time spent in connection with any docking and undocking as well as repairs, which shall be paid at the rate of hire per day or pro rata. Condition survey only on redelivery on Charterers time/expense unless purchase option is exercised.

This document is a computer generated BARECON 2001 form printed by authority of BIMCO. Any insertion or deletion to the form must be clearly visible. In event of any modification being made to the pre-printed text of this document which is not clearly visible, the text of the original BIMCO approved document shall apply. BIMCO assumes no responsibility for any loss, damage or expense caused as a result of discrepancies between the original BIMCO approved document and this computer generated document.