## "BARECON 2001" Standard Bareboat Charter

### PART IV
### HIRE/PURCHASE AGREEMENT
(Optional, only to apply if expressly agreed and stated in Box 42)

**OPTIONAL PART**

| | |
|---|---|
| On expiration of this Charter and provided the Charterers have fulfilled their obligations according to Part I and II as well as Part III, if applicable, it is agreed, that on payment of the final payment of hire as per Clause 11 the Charterers have purchased the Vessel with everything belonging to her and the Vessel is fully paid for. | 1-7 |
| In the following paragraphs the Owners are referred to as the Sellers and the Charterers as the Buyers. | 8-9 |
| The Vessel shall be delivered by the Sellers and taken over by the Buyers on expiration of the Charter. | 10-11 |
| The Sellers guarantee that the Vessel, at the time of delivery, is free from all encumbrances and maritime liens or any debts whatsoever other than those arising from anything done or not done by the Buyers or any existing mortgage agreed not to be paid off by the time of delivery. Should any claims, which have been incurred prior to the time of delivery be made against the Vessel, the Sellers hereby undertake to indemnify the Buyers against all consequences of such claims to the extent it can be proved that the Sellers are responsible for such claims. Any taxes, notarial, consular and other charges and expenses connected with the purchase and registration under Buyers' flag, shall be for Buyers' account. Any taxes, consular and other charges and expenses connected with closing of the Sellers' register, shall be for Sellers' account. | 12-27 |
| In exchange for payment of the last month's hire instalment the Sellers shall furnish the Buyers with a Bill of Sale duly attested and legalized, together with a certificate setting out the registered encumbrances, if any. On delivery of the Vessel the Sellers shall provide for deletion of the Vessel from the Ship's Register and deliver a certificate of deletion to the Buyers. The Sellers shall, at the time of delivery, hand to the Buyers all classification certificates (for hull, engines, anchors, chains, etc.), as well as all plans which may be in Sellers' possession. | 28-38 |
| The Wireless Installation and Nautical Instruments, unless on hire, shall be included in the sale without any extra payment. | 39-41 |
| The Vessel with everything belonging to her shall be at Sellers' risk and expense until she is delivered to the Buyers, subject to the conditions of this Contract and the Vessel with everything belonging to her shall be delivered and taken over as she is at the time of delivery, after which the Sellers shall have no responsibility for possible faults or deficiencies of any description. | 42-48 |
| The Buyers undertake to pay for the repatriation of the Master, officers and other personnel if appointed by the Sellers to the port where the Vessel entered the Bareboat Charter as per Clause 3 (Part II) or to pay the equivalent cost for their journey to any other place. | 49-53 |



This document is a computer generated BARECON 2001 form printed by authority of BIMCO. Any insertion or deletion to the form must be clearly visible. In event of any modification being made to the pre-printed text of this document which is not clearly visible, the text of the original BIMCO approved document shall apply. BIMCO assumes no responsibility for any loss, damage or expense caused as a result of discrepancies between the original BIMCO approved document and this computer generated document.

**"BARECON 2001" Standard Bareboat Charter**

| OPTIONAL |
| PART |

### PART V
### PROVISIONS TO APPLY FOR VESSELS REGISTERED IN A BAREBOAT CHARTER REGISTRY
*(Optional, only to apply if expressly agreed and stated in Box 43)*

1. **Definitions** (1)
   For the purpose of this PART V, the following terms shall (2) have the meanings hereby assigned to them: (3)
   "The Bareboat Charter Registry" shall mean the registry (4) of the State whose flag the Vessel will fly and in which (5) the Charterers are registered as the bareboat charterers (6) during the period of the Bareboat Charter. (7)
   "The Underlying Registry" shall mean the registry of the (8) state in which the Owners of the Vessel are registered (9) as Owners and to which jurisdiction and control of the (10) Vessel will revert upon termination of the Bareboat (11) Charter Registration. (12)

2. **Mortgage** (13)
   The Vessel chartered under this Charter is financed by (14) a mortgage and the provisions of Clause 12(b) (Part II) (15) shall apply. (16)

3. **Termination of Charter by Default** (17)
   If the Vessel chartered under this Charter is registered (18) in a Bareboat Charter Registry as stated in Box 44, and (19) if the Owners shall default in the payment of any amounts (20) due under the mortgage(s) specified in Box 28, the (21) Charterers shall, if so required by the mortgagee, direct (22) the Owners to re-register the Vessel in the Underlying (23) Registry as shown in Box 45. (24)
   In the event of the Vessel being deleted from the (25) Bareboat Charter Registry as stated in Box 44, due to a (26) default by the Owners in the payment of any amounts (27) due under the mortgage(s), the Charterers shall have (28) the right to terminate this Charter forthwith and without (29) prejudice to any other claim they may have against the (30) Owners under this Charter. (31)

This document is a computer generated BARECON 2001 form printed by authority of BIMCO. Any insertion or deletion to the form must be clearly visible. In event of any modification being made to the pre-printed text of this document which is not clearly visible, the text of the original BIMCO approved document shall apply. BIMCO assumes no responsibility for any loss, damage or expense caused as a result of discrepancies between the original BIMCO approved document and this computer generated document.

RIDER CLAUSES TO CHARTER PARTY
HULL NO. 1758 TO BE RENAMED M.T. "AVOR"
Dated 27th May 2010

CLAUSE 1. CANCELLATION OF BAREBOAT CHARTER:

Owners during this charter have the right to sell the Vessel to a third party at any time hereunder with the following conditions:
(a) Sale of the vessel to third party shall by no means affect the continuation of this charter and the new owner shall comply in full with all the terms and conditions of this Charter Party.
(b) Charterers always to have the right of first refusal to buy the Vessel.
(c) Any new owner always to be approved by Charterer, such approval shall not be unreasonably withheld.

CLAUSE 2. DRY DRY-DOCKS:

Charterers have the obligation to dry-dock the Vessel and/or to pass all surveys strictly in accordance with the rules and regulations of Vessel's Class and flag Including Special Survey and Dry Dock always un-extended at Charterers cost and expenses.

CLAUSE 3. BUNKER CLAUSE:

Charterers warrant that all bunkers in accordance with herewith shall be of a quality complying 380 CST with ISO 8217 RMG 35 and with its specification for marine fuels as amended from time to time

CLAUSE 4. CHARTERERS LIABILITIES:

Charterers hereby indemnify Owners from and again any all liabilities, claims, losses, damage, costs or expenses suffered or incurred, against Owners arising out of Charterers' negligence or failure to comply with the requirements of any government, including Federal, state or municipal or other division or authorities.

CLAUSE 5. OIL POLLUTION:

Charterers warrant that the Vessel shall have a valid P&I insurance against liability for pollution, including ITOPF/CLC obligations for an amount not less than USD One (1) billion per incident, provided, however that if the P&I Club in which the vessel entered and/or the underwriter(s) cease to provide Pollution Liability Coverage to such Club's Members in the amount(s) as just described then Charterers shall promptly obtain Pollution Liability Cover (both basis P & I Clubs and Additional Insurance) in the highest amount(s) then made available by any first class Underwriter.

CLAUSE 6. RISKS AND INSURANCE OF THE VESSEL:

(a) For the purpose of this Charter, "Total Loss" has the meaning given to it in Part 11, "Compulsory Acquisition" has the meaning given to it in Clause 25 above and "Major Casualty" mean a casualty to the Vessel or incident (other than a Total Loss) in respect of which the claim or aggregate of the claims against all Insurers, before adjustment for any relevant franchise or deductible, exceeds Five Hundred Thousand United States Dollars (US$500,000) or the equivalents in any other currency.
(b) The Vessel shall throughout the term of this Charter be in every respect at the risk of the Charterers who shall bear all risks however arising whether of navigation operation or maintenance of the Vessel or otherwise.
(e) In addition to the Insurance's referred to in Clause 13 and in this clause, the owners shall be entitled to effect and maintain for its own benefit and its own cost, Innocent Owner's interest insurance for an



amount to be determined by Owners in Owners' role discretion and, for the benefit of any mortgagee or mortgagees pursuant to mortgagees Indemnity Insurance.

(d) The Charterers undertake throughout the term of this Charter, without prejudice to their obligation under Clause 13 above:

(i) to effect and maintain sufficient Insurance on and over the Vessel In respect of hull, machinery and equipment, marine and war risks (Including excess risks), protection and Indemnity risks, FD and D, and all pollution liability (If appropriate) upon such terms as shall from time to time be approved in writing by the owners and In such amounts In United States Dollars from time to time as are set out In the Schedule to these Additional Clauses In the case of hull ,machinery and equipment, marine and war risks and excess risks and In the case of protection and Indemnity risks and all pollution liability, for the maximum amount obtainable from the protection and Indemnity association in which the Vessel Is from time to time entered;

(ii) Without prejudice to the provisions of sub-clause (i) above, Charterers shall procure and arrange at their own expense Hull and Machinery and war risks Insurance's under terms not less favourable than those of Institute Time clauses Hulls edition 1.10.83 and/or as amended from time to time and Institute War and Strike Clauses Hull Time addition 1.. 10.83 with deductible not exceeding USD 225,000. Charterers shall In addition procure and maintain at their own expense full entry of the Vessel for all pollution liabilities at the maximum amount available on the Insurance market (presently such amount Is equal to One Thousand Million United States Dollars (US$ 1,000,000,000) and to arrange and pay for extra cover required by protection and Indemnity associations for voyagers to any other country.

iii) To effect the insurances aforesaid through first class insurance companies, underwriters and war risks associations operating In the London, American or others Insurance market and protection and Indemnity associations which are members of the International Group of Protection and Indemnity Associations;

(iv)To renew the Insurances aforesaid at least fourteen (14) days before the relevant policies or contracts expire and to procure that the said brokers, and any war risks and protection and Indemnity association with which such Insurances are effected, shall promptly confirm in writing to the Owners the terms and conditions of such renewal as and when the same occurs;

(v)Punctually to pay all premiums, calls, contributions or other sums In respect of the Insurances and to produce all relevant receipts when so required by the owners:

(vi)To procure that a loss payable clause in such form as may be required by the Owners is endorsed upon all ships, cover notes, policies, certificates of entry or other Instruments of Insurance issued or to be Issued In respect of the insurance of the vessel;

(vii) To procure that all such Instruments of Insurance referred to sub-clause (iv) above are as effected through the said brokers shall be deposited with the said brokers, and that such brokers shall furnish the Owners with proforma copies and a letter or letters of undertaking in such form as may be required by the Owners;

(viii) To procure that the protection and Indemnity and/or war risks associations In which the Vessel Is entered shall furnish the Owners with a certified copy of the certificate of entry for the vessel and a letter or letters of undertaking In the Protection & Indemnity Association's standard wording;

(ix) To apply all such sums receivable In respect of the insurances of the Vessel as are paid to Charterers In accordance with the provisions of this Charter for the purpose of making good the loss and fully repairing the damage In respect of which such sums have been received:

(x)Not to alter any of the terms of any If the Instruments of Insurance referred to In sub clause (vi) above which have been approved by the Owners and not to make, do, consent or agree to any act or omission which would or might render any such Instrument or Insurance Invalid, void, voidable or unenforceable or render any sum payable there under repayable In whole or In part

(xi)Not Without the prior written consent of the Owners to settle, compromise or abandon any claim for Total Loss or a Major casualty

(e) Unless and until a Termination Event shall occur whereupon all Insurance recoveries shall be payable to the Owners, any sums receivable In respect of the insurances effected by the Charterers



pursuant to Clause 13 above and this Clause shall be payable as follows;

    (i) there shall be paid to the Owners all sums receivable in respect of Total loss and, unless otherwise authorized by the Owners, any and every sum receivable in respect of a Major Casualty, but so that the Insurance moneys received by the Owners in respect of any such Major Casualty Shall be paid over to the Charterers upon the Charterers furnishing evidence to Owner's underwriter's satisfaction that all loss and damage resulting from the casualty has been properly made good and repaired, and that all repair accounts and other liabilities whatsoever in connection with the casualty have been fully paid and discharged by the Charterers, provided that the Insurers may with the consent of the Owners make payment on account of repairs in the course of their being effected

    (ii) all other sums receivable in respect of the Insurances shall be paid to the Charterers and shall be applied by them for the purpose of making good the loss and fully repairing all damage in respect of which the insurance moneys have been received.

(f) The provisions of Clause 13 and of this Clause shall not apply to the proceeds of any additional insurance cover effected by the Owners and/or the Charterers for their own account and benefit, provided that such cover shall only be effected if and to the extent that the Insurances effected by the Charterers pursuant to Clause 13 and to this Clause permit.

g) In the event that at any time during the term of this Charter the Charterers shall not have paid the premiums in respect of the Insurance cover required by this charter, the Owners shall notify the Charterers requiring rectification thereof but In any event shall be at liberty to pay such premiums or to effect, at the Charterers expense, such alternative insurance as the Owners may In their discretion determine to be necessary to protect the interests of the Owners under this Charter (and approved mortgagees if any) and the costs thereof shall be payable by the Charterers on demand and shall be recoverable as additional hire hereunder.

**CLAUSE 7. INTEREST:**

The Charterers shall pay on demand by the Owners Interest on any sum due under this Charter and unpaid from and including the date which it fell due for payment (subject as provided below) until the date of actual payment (as well after as before judgement) at the rate per annum determined by the Owners and certified by them to the Charterers to be equal to one month London Interbank Offer Rate (LIBOR) plus 2 percent (2%) per annum- provided always that where the Owners pay or incur any such costs, charges expenses claims, liabilities, losses, penalties, fines, duty, fee tax or other moneys as are stated in the Charter to be payable by the Charterers to the Owners or recoverable by the Owners from the Charterers or in respect of which the Charterers may be liable to indemnify Owners, Interest shall accrue thereon at the rate specified above from and including the date on which such cost, charge, expenses, claim, liability, loss, penalty, fine, duty, fee tax of or other money is paid or Incurred by the Owners. Any such Interest which Is not paid when due shall be compounded at the end of such periods as the Owners may determine for so long as it remains unpaid. All payments of Interest to be made under the Charter shall accrue from day to day and be calculated on the basis of the actual number of days elapsed and a three hundred and sixty five (365) day year.

**CLAUSE 8. CHARTERERS' COVENANTS:**

The Charterers Covenant with the Owners undertake throughout the term of this Charter that!

(a) they will provide the Owners with such Information concerning the Vessel as the Owners may from time to time reasonable require including (without limitation) Information regarding the employment, condition, geographical position and crewing of the vessel;

(b) They will, forthwith upon becoming aware of the same, notify the owners in writing of any termination event (or event of which they are aware which, with the giving of notice and/or lapse of time would constitute a termination event);

(c) They will obtain and promptly renew from time to time and will whenever so required promptly furnish certified copies to the Owners of all such authorizations, approvals, consents, and licenses (if any) as may be required under any applicable law or regulation to enable the Charterers to perform

their obligations under this Charter or required for the validity or enforceability of this Charter, and the Charterers shall in all material respects comply with the terms of the same;

(d) they will-(I) at any time during this charter, subject to a limit of one (1) month in ever calendar year, allow one representative of Owners, and, (II) during the last voyage) prior to vessel's dry dock or special survey (laden voyage), two representatives to be allowed onboard

(iii) during the last round voyage (ballast and laden legs) before redelivery of the Vessel allow up to two (2) representatives of the Owners to attend on board the Vessel for general observation and inspection purposes always at the risk-and expense of the Owners provided that such observation and inspection shall not interfere with the ordinary work on board and the trading of the Vessel and Subject to signing Charterers P&I Club Indemnity forms which shall be presented to them for signature upon boarding;

(e) They will notify the Owners forthwith by telex, telefax or e-mail previously provided of:

(1) Any accident to the Vessel or Incident which is or is likely to be a Major Casualty;

(2) Any occurrence resulting in the Vessel becoming or being likely to become a Total loss;

(3) Any requirement or recommendation made by an Insurer or classification society, or by any competent authority, which is not complied with within any time limit imposed by such Insurer, classification society or authority;

(4) Any arrest of the Vessel, or the exercise or purported exercise of any lien on the vessel or any requisition of the Vessel for hire.

(f) They will procure that at all times the Vessel is managed only by the Charterers or Charterers' associated company or such managers as shall be approved in writing by the Owners such approval not to be unreasonably withheld. In the event Charterers decide to appoint a third-party manager then Charterers shall invite Owners or their nominees to submit a quotation for the management of the Vessel;

(g) They will maintain the Vessel at all times in accordance with the requirements of (INSERT CLASS) to a standard not less than that to which the Charterers maintain the other vessels owned by the Charterers or their associated companies;

(h) That the Vessel shall remain the property of the Owners and that the Charterers shall have no rights or interest therein otherwise than as Charterers hereunder and that the Charterers shall at no time do or permit to be done any act or thing which might prejudice the rights of the Owners in and to the Vessel.

## CLAUSE 9. INDEMNITY

The Charterers shall pay to the Owners on demand, and indemnity and keep the Owners indemnified against, all costs charges, expenses, claims proceedings (whether civil or criminal)- liabilities, losses-penalties, fines, duties and fees (including, but not limited to reasonable, legal fees and expenses on a full indemnity basis provided that Owner's are the prevailing party on any such claim generating such legal fees and expenses) and taxes thereon suffered or incurred by the Owners arising directly or indirectly in any manner out of the possession, management control, chartering, sub-chartering, navigation, victualling, fuelling, manning, supply, Insurance, use, operation, return, re-dell very, laying up or storage of or loss of or damage of the Vessel or any other vessel in the actual or disponent ownership of the Charterers or any part thereof or from any maintenance, service, modification- repair, classification or overhaul of, or otherwise in connection with, the Vessel or such other vessel or any part thereof or any cargo carried therein, and regardless of when the same shall arise and whether or not the Vessel or other vessel or the relevant part thereof is in the possession or control of the Charterers; the Indemnities contained in this Clause 10, and each other indemnity contained in this Charter shall survive any termination or expiry of this Charter for a period of twelve (12) months from the date thereof and any breach of, or repudiation or alleged repudiation by the Charterers or the Owners of this Charter. Charterers will cover all taxes including US freight taxes if any but excluding tax on income from Vessel's trading

## CLAUSE 10. TERMINATION EVENTS

Each of the following events shall be a "Termination Event" for the purposes of this Charter:

(a) The Charterers fail to make any payment on its due date or in respect of money payable on demand, (unless otherwise specifically provided) within seven (7) days from the date of such demand;

(b) The Charterers are in breach of anyone or more of the provisions of this Charter relation to the Insurance of the Vessel;

(c) The Charterers fail to comply with any provision of this Charter other than those referred to in sub-clauses (a) and (b) above and in case of any such default which the Owners considers capable of remedy, such default continues for a period fourteen (14) days after the Owners, by notice to the Charterers, require the same to be remedied;

(d) Any license, approval, consent authorization or registration at any time necessary for the validity, enforceability, admissibility in evidence of this Charter, or for the Charterers to comply with their obligations hereunder or in connection with the ownership or operation of the vessel is revoked, withheld or expires;

(e) The Vessel becomes a Total Loss

(f) A petition is filed, or an order made, or an effective resolution passed, for the compulsory or voluntary winding-up or dissolution of the Charterers (other than the purposes of amalgamation or reconstruction in respect of which the prior written approval shall not be unreasonably withheld) or any proceedings analogous to winding-up proceedings are begun in any jurisdiction in relation to the Charterers or if the Charterers suspend payment of, or are unable to or admit inability to pay - their debts as they fall due or make any special arrangement or composition with their creditors generally or any class of their creditors;

(g) As administrator, administrative receivers, receiver or trustee or similar official is appointed of or an encumbrances takes possession of, or execution or distress *is* levied upon- the whole, or what the Owners consider a material part, of the property, assets or undertaking of the Charterers, or the Charterers apply for, or consent to, any such appointment;

(h) The Charterers cease, or threaten to cease, to carry on their business) or dispose or threaten to dispose of what the Owners consider a material part of their property, assets or undertaking, or such a part is seized or appropriated;

(i) The Vessel is the subject of a Compulsory Acquisition;

(j) It becomes impossible or unlawful for the Charterers to fulfil any of their obligations under this Charter

Each of the events specified in the above-mentioned clause shall constitute (as the case may be) a repudiatory breach or a breach of condition of this Charter by the Charterers, the occurrence of which will entitle the Owners by notice to the Charterers to terminate the chartering of the Vessel by the Charterers under this Charter, to recover amounts, to claim damages and/or to exercise any other right or remedy to which the Owners may be entitled under this Charter or at law, in equity or otherwise as a consequence of the occurrence of the termination event.

**CLAUSE 11. OWNERS' RIGHTS ON A TERMINATION EVENT:**

(a) If any termination even shall occur, the Owners may thereupon and at any time thereafter at their option take anyone or more of the following actions:

(i) Take all action which the Owners may reasonably consider necessary to cure any such Termination Event and recover from Charterers all liabilities, reasonable costs and expenses or incurred by the Owners in doing so;

(ii) By notice to the Charterers terminate the chartering of the Vessel by the Charterers under this Charter, either immediately or on such date as the Owners may specify, whereupon:

A) the Vessel shall no longer be in the possession of the Charterers, in accordance with Owner's Instructions with the consent of the Owners and the Charterers shall promptly redeliver the Vessel to the Owners with all reasonable dispatch in the manner and in the condition governing redelivery as specified under this charter, and;

B) the Owners shall be entitled but not bound (and not without prejudice to the Charterers' obligation under sub-clause (A) above) to retake possession of the Vessel wherever found,

Irrespective of whether the Charterers, any sub-charterer or any other person may be in possession of the Vessel Without being bound to give any prior notice or take any legal process and without liability to the part of the Owners, and the Charterers hereby authorize the Owners, for that purpose, to enter upon any premises where the Vessel may be located.

(b) If the Owners give notice pursuant to sub-clause (a) above to terminate the chartering of the vessel by the Charterers, the Charterers shall forthwith pay to the Owners all sums of money whether of hire or otherwise due and payable but unpaid under this Charter upon which the Charterers' obligation to pay hire shall cease and the Vessel shall be redelivered to the Owners in accordance with this Charter Party.

(c) At any time after giving notice of termination in accordance with sub-clause (a) above the Owners shall be entitled (but not bound) to sell the vessel, free of this Charter and any right or claim of whatsoever nature of the Charterers whether under this Charter or otherwise and free of any other charter or other engagement concerning her, for such price and on such terms and conditions as they may in their absolute discretion think fit.

CLAUSE 12. CONTRADICTION CLAUSE

If there happens to be a discrepancy between the "Barecon 01" as mutually agreed and amended by Owners and Charterers and the Owners additional terms, then additional terms to always supersede the CIP.

CLAUSE 13. THE CHARTER SHALL HAVE THE OPTION TO PURCHASE THE VESSEL AT

On the 5" Anniversary of the delivery date for a price of USD 54.550.000

The 5" Anniversary of the delivery date will be hereinafter be referred to as the "Purchase Option Date".

The Charterers shall give the Owners notice in writing (the "Notice") of their intention to exercise the purchase option at least 5 MONTHS prior to the relevant Purchase Option Date. On receipt of the Notice the Owners shall take all necessary steps to ensure that there is a smooth transfer of ownership of the Vessel to the Charterers on the relevant Purchase Option Date. The Owners and Charterers agree that the sale and purchase of the Vessel shall be on the terms and conditions of the standard NSF 93 form with logical amendments which the Owners and Charterers agree to conclude and sign at least 90 days prior to the relevant Purchase Option Date. The end of year 5 of BB charter at price USD 54,550,000.00 this will be hereinafter be referred to as the "Purchase Option Date". Should Charterers not declare their purchase option in accordance to Clause 13 herewith, then the Owners will have the right to sell the ship to the Charterers for a price of USD 51,500,000.00 within 30 running days from the latest date of declaration of Charterers option. Should either Charterers' option or Owners' option be exercised, the Buyers will remit the 10% of the purchase price within 5 banking days as per standard NSF 93' safe form.

CLAUSE 14.

MT TBN shall not be delivered to Charterers before 15" April 2010/ 0001 hrs lt and Chrtrs shall have the option of cancelling this charter if the ship is not ready and at their disposal on or before 30 August 2010 / 2359 hrs lt.

CLAUSE 15.

Owners to give 30/15/10 days approximate, then 5/3/2/1 days firm notice of delivery.
Charterers to give 30/15/10 days approximate, then 5/3/2/1 days firm notice of redelivery.

CLAUSE 16.

Owners warrant to the best of their knowledge that at the time of delivery into the bareboat charter the ship is not blacklisted by the Arab Boycott League.

CLAUSE 17.

Charterers have the option to load and/or discharge and/or lighten the vessel via ship to ship transfer in accordance with the procedure set out in OCIM's . Ship to Ship Transfer Guide' . But not more than 60 lightering days per annum.

CLAUSE 18

Local time for laycan, GMT for hire calculation.

CLAUSE 19.

~~Antifouling application will be 60 months period during the next drydocking and Owners will maintain the original paint condition of entire hull of the both ships applying appropriate touch up and final coats as per NB specifications. If present BB Charterers normally apply 30 months paint, Headowners will ask present BB Charterers (AET) to apply 60 months paint when in drydock for SS. Difference in cost will be borne by new BB Charterers (GEDEN).~~ If purchase option is not declared then Charterers to pass SS at the end of the BB and apply 60 months paint scheme.

CLAUSE 20

~~With regard to EU Directive 2005/33/EC low Sulphur use in EU, the Charterers are seeking to get confirmation from the existing Bareboat Charterers ( Messrs AET) to make the necessary applications and communications with the Class to get an extension of 8 months of the implementation date 01-01-2010.~~

CLAUSE 19. **SPECIAL SURVEY**

The Charterers will pass Special Survey prior to redelivery of the Vessel to the Owners should they not exercise their purchase option.

For the Owners

For the Charterers



**ADDENDUM NO 1**

Dated 31 January 2013

To the Bareboat Charter dated 27th May 2010 (the "BBCP")

BETWEEN

Eclipse Liquidity Inc., of the Marshall Islands (the "Owners")

AND

Avor Navigation Ltd, of Malta (the "Charterers")
Geden Holdings Ltd, of Malta (as "Guarantor")

Relating to the charter of the m/t "AVOR" (the "Vessel")
pursuant to the terms and conditions of the BBCP.

With reference to the terms and conditions of the BBCP, it is hereby agreed and confirmed that:

1. The payment of a portion of the daily charter hire of an amount of USD 3.870 arising from the charter hires starting 1st December 2012 until 1st December 2013 shall be deferred. With effect from 1st December 2013 the total amount of deferred charter hires as per this clause (i.e. USD 1.412.550) shall be repaid in proportionately equal instalments until 18th August 2015 and added to the daily charter hire.

2. Accordingly, the amount of USD 2.260 shall be added to the daily charter hire of Box 22 of the BBCP, from 1st December 2013 until 18th August 2015.

All other terms and conditions of the BBCP and its addenda or supplemental agreements or undertakings thereto remain unaltered and in full force and effect.

---

For and on behalf of
the Charterers

---

For and on behalf of
the Guarantor

---

For and on behalf of
the Owners

Efstratios Fineskos