# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| **ECLIPSE LIQUIDITY, INC.** | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **C.A. NO. 4:15-CV-01645** |
| | § | |
| **AVOR NAVIGATION LTD.; ADVANTAGE** | § | |
| **ARROW SHIPPING, LLC; GENEL** | § | |
| **DENIZCILIK NAKLIYATI A.S. A/K/A** | § | |
| **GEDEN LINES; ADVANTAGE TANKERS,** | § | |
| **LLC; ADVANTAGE HOLDINGS, LLC; and** | § | |
| **FORWARD HOLDINGS, LLC** | § | |
| **Defendants.** | § | |

| | | |
|---|---|---|
| **PSARA ENERGY, LTD.,** | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **C.A. NO. 4:15-CV-01673** |
| | § | |
| **SPACE SHIPPING, LTD.; ADVANTAGE** | § | |
| **ARROW SHIPPING, LLC; GENEL** | § | |
| **DENIZCILIK NAKLIYATI A.S. A/K/A** | § | |
| **GEDEN LINES; ADVANTAGE TANKERS,** | § | |
| **LLC; ADVANTAGE HOLDINGS, LLC; and** | § | |
| **FORWARD HOLDINGS, LLC** | § | |
| **Defendants.** | § | |

| | | |
|---|---|---|
| **TANK PUNK, INC.,** | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **C.A. NO. 4:15-CV-01675** |
| | § | |
| **SPIKE SHIPPING, LTD.; ADVANTAGE** | § | |
| **ARROW SHIPPING, LLC; GENEL** | § | |
| **DENIZCILIK NAKLIYATI A.S. A/K/A** | § | |
| **GEDEN LINES; ADVANTAGE TANKERS,** | § | |
| **LLC; ADVANTAGE HOLDINGS, LLC; and** | § | |
| **FORWARD HOLDINGS, LLC** | § | |
| **Defendants.** | § | |

## DEFENDANTS' MOTION TO VACATE ATTACHMENTS AND DISMISS

Plaintiffs Eclipse Liquidity, Inc. ("Eclipse"), Psara Energy, Ltd. ("Psara"), and Tank Punk, Inc. ("Tank Punk", and together with Eclipse and Psara, "Plaintiffs") have each filed separate actions against Defendants Advantage Arrow Shipping, LLC ("Advantage Arrow Shipping"), Advantage Tankers, LLC, Advantage Holdings, LLC, and Forward Holdings, LLC (collectively, the "Advantage Defendants"), Genel Denizcilik Nakliyati A.S. a/k/a Geden Lines ("Geden Lines") and Geden Lines subsidiaries, respectively, Avor Navigation Ltd. ("Avor"), Space Shipping Ltd. ("Space"), and Spike Shipping Ltd. ("Spike", and together with Geden Lines, the "Geden Defendants").

The Advantage Defendants, making their appearance specially and not generally and pursuant to Federal Rule of Civil Procedure ("F.R.Civ.P.") Supplemental Rule for Admiralty or Maritime Claims E(8), and expressly reserving all defenses, particularly as to venue, personal jurisdiction, and subject matter jurisdiction, make this Motion to Dismiss (the "Motion to Dismiss") the claims (the "Claims") filed in the above-captioned actions against the Advantage Defendants and/or vacate the attachments.

## I.    PROCEDURAL BACKGROUND

Pursuant to a sealed Verified Complaint filed June 10, 2015, and bearing docket number 4:15-cv-1645, Plaintiff Eclipse sought the *ex parte* attachment of

M/T ADVANTAGE ARROW (the "Vessel") under F.R.Civ.P. Supplemental Rule B for Admiralty or Maritime Claims ("Rule B").  Pursuant to Verified Complaints filed July 12, 2015 (together with the Eclipse Complaint, the "Complaints"), Plaintiffs Psara (docket 4:15-cv-1673) and Tank Punk (docket 4:15-cv-1675, and together with the Eclipse and Psara dockets, the "Dockets") also sought the attachment of the Vessel under Rule B.  Other than different plaintiffs and one different defendant for each Complaint, the Complaints are nearly identical.  None of the Claims actually involve the Vessel or her owner and Plaintiffs do not allege a cause of action or claims directly against any Defendants.  Instead, Plaintiffs advance a corporate veil-piercing argument only, leaving the Advantage Defendants to divine the allegations of Plaintiffs from the confused and confusing paragraphs of the Complaints.

The Vessel was attached pursuant to a Process of Maritime Attachment and Garnishment issued by the Court in the Eclipse case.  *See* Eclipse docket entries 3 and 7.  The Advantage Defendants provided substitute security for all of the Claims by depositing $2,200,000 into the Court's registry.  *See* Eclipse docket.  The attachment of the Vessel by Eclipse was released, and the parties stipulated that the case would proceed as if the Vessel were also attached by Psara and Tank Punk.  *See* Eclipse docket 7.  The Eclipse docket was subsequently unsealed.  *See* Eclipse docket 9.

WFW 80378759v2
PD.17831748.1

The three cases were recently consolidated into the Eclipse docket. *See* Eclipse docket 15.

The Advantage Defendants now seek the dismissal of the Complaints and the concomitant vacatur of the attachments by Plaintiffs.

## II.    **FACTS**

Plaintiffs allege that they have chartered three (3) vessels to "Geden Holdings Limited, Malta or nominee always guaranteed by Geden Line." Complaints ¶ 10. Plaintiffs allege that Geden Holdings[1], or its nominee, have failed to pay charter hire. Complaints ¶¶ 12-13. To secure this alleged breach of contract debt of Geden Holdings, which is conspicuously not named as a defendant, Plaintiffs have attached[2] $2,200,000 in property belonging to the Advantage Defendants. Complaints Section V.

Plaintiffs aver that veil piercing is appropriate in this case because: (i) the Geden Defendants control and dominate the Advantage Defendants so that they operate as a common business venture; and (ii) the transfer of the vessels (including the Vessel) to Advantage was fraudulent. However, the facts alleged by Plaintiffs are not legally sufficient to make out a *prima facie* claim that veil piercing is appropriate.

---

[1]    This is the same Geden Holdings the Advantage Defendants argue is a necessary party.

[2]    Plaintiffs allege that the attachments are to secure prospective proceedings against, presumably, Geden Holdings, Geden Lines, and the chartering nominees in London, England. Tank Punk and Psara Complaints ¶ 15; Eclipse Complaint ¶ 16.

Plaintiffs' "control and domination" allegations are convoluted and conclusory, but essentially argue that Plaintiffs' breach of contract claims against Avor, Space, and Spike (Complaints ¶¶ 10-13) can be asserted against their corporate parent, Geden Lines (Complaints ¶ 18), then against Geden Lines's corporate parent Geden Holdings (which is not a named defendant, see *infra*) (Complaints ¶ 26), then against Geden Holdings's parent the Cukurova Group (Complaints ¶ 21), then against Cukurova Group's shareholders from the Karamehmet family (Id.), then against other shares held by the daughter of one of the Cukurova Group shareholders (See, e.g. Eclipse Complaint ¶ 35), and finally down through the two holding companies, operating company, and registered owner of the Vessel that comprise the Advantage Defendants (See, e.g. Eclipse Complaint ¶ 36, Ex. 9). In what must be an unprecedented effort in the lengthy annals of maritime attachment history, Plaintiffs seek to pierce no fewer than eight (8) corporate veils to assert an attachment claim against the Vessel, yet make none of the usual veil-piercing allegations.

The gravamen of Plaintiffs' "fraud" arguments appears to be the allegation that certain vessels (including the Vessel) were sold by their previous owners, Geden Lines and Geden Holdings, to the Advantage Defendants and their subsidiaries in a way that somehow disadvantaged Plaintiffs. *See, e.g*., Eclipse

Complaint ¶ 39.  However, the Complaints are devoid of allegations detailing why this alleged transfer was improper or how Plaintiffs were disadvantaged.[3]  *See* Complaints.  For example, Plaintiffs do not allege any security interest or other property right in any of the vessels sold by the Geden Defendants.  *Id.*  Other than alleging that the vessels constituted general assets of Geden, Plaintiffs do not argue that they ever had any recourse to any of these ships while they were owned by Geden, and there is no logical basis on which Plaintiffs allege that they now have such recourse.  *Id.*  However, according to Plaintiffs, the mere sale of the vessels by the Geden Defendants allows Plaintiffs to prospectively pierce the corporate veil of the purchaser, the Advantage Defendants, and to thereby attach assets belonging to the Advantage Defendants to secure claims against the Geden Defendants.  *See, e.g*., Eclipse Complaint ¶ 45.

Plaintiffs also allege that Geden Holdings is one of the entities comprising the alleged group of alter ego companies, but—tellingly—Plaintiffs do not name Geden Holdings as a defendant.  Geden Holdings is present in this district.  Plaintiffs selectively omit Geden Holdings as a defendant in order to improperly utilize Rule B and attach property belonging to the Advantage Defendants.

**(i)      The "Control and Dominate" Allegations**

Plaintiffs make a limited number of allegations that the Defendants are

---

[3]      Indeed, the Norwegian bond prospectus Plaintiffs rely on notes that any contemplated transfer of Geden-owned vessels would be "by executing arms-length sale transactions . . . at market value  . . .".  Complaints Ex. 9, p. 7 (Executive Summary).

dominated and controlled by the Geden Defendants, including:

> Notwithstanding their formal separate incorporation, the Defendants are in actual fact a single business enterprise pursuing functionally differentiated business objectives through nominally separate business structures but always subject to the command and control of Defendant GEDEN which is the parent company of Defendants SPIKE SHIPPING, [NAVIGATION, SPACE,] ARROW SHIPPING, ADVANTAGE TANKERS, ADVANTAGE HOLDINGS, and FORWARD HOLDINGS, as is more specifically pled hereunder.

Complaints ¶ 18[4];

and

> Defendants GEDEN and SPIKE SHIPPING [and NAVIGATION and SPACE,] (as well as Geden Holdings Ltd.) have had common officers, common directors, and common parent companies, and common beneficial owners as follows: Mr. M. Bülent Ergin, was director of GEDEN, Geden Holdings Ltd., and Çukurova Holding A.S; Mr. A. Tugrul Tokhöz was on the board of directors of GEDEN, Geden Holdings Ltd., and Çukurova Holding A.S; Mr. Mehmet Mat was the chief financial officer of GEDEN and Geden Holdings Ltd. (See EXHIBIT 4 at pp. 100-101). The ownership of GEDEN; Geden Holdings Ltd.; and Cukurova Holding AS was entirely in the hands of the Karamehmet family in Turkey.

Complaints ¶ 26;

and

> . . . [O]wnership and control over the said [V]essel remains with the same beneficial owners, as and when she was named TARGET and registered in Malta [and owned by Geden].

Eclipse Complaint ¶ 39; Psara and Tank Punk Complaints ¶ 40;

and

---

[4] This allegation is directly contradicted by paragraphs 35-36 of the Eclipse Liquidity Complaint, which allege that the Advantage Defendants are owned by Mrs. Gulsun Nazil Karamehmet Williams and Mr. Tugrul Togohz.

> By reason of the relationship of complete dominion and control that Defendant GEDEN has exercised over their subsidiaries ARROW SHIPPING and SPIKE SHIPPING [and SPACE and NAVIGATION], taking into consideration the foregoing facts and circumstances, it would be just, equitable and proper for the Court to exercise its equitable powers to pierce the corporate veil of ARROW SHIPPING as an alter ego of GEDEN, SPIKE SHIPPING, ADVANTAGE TANKERS, ADVANTAGE HOLDINGS, and FORWARD HOLDINGS.

Eclipse Complaint ¶ 41; Psara and Tank Punk Complaints ¶ 40.

These primary factual allegations in the Complaints of the supposed domination and control of the Advantage Defendants by the Geden Defendants are insufficient to establish a veil-piercing argument.  Since Plaintiffs have not alleged facts that, even if proven, would allow the Advantage Defendants and the Geden Defendants to be treated as a single entity, the Complaints can be dismissed for failure to state a claim.

**(ii)**    **The "Fraud" Allegations**

Plaintiffs also make a number of generalized, non-specific allegations that the sale of the vessels to the Advantage Defendants was somehow fraudulent:

> When Plaintiff entered in the bareboat charter party with Defendant SPIKE SHIPPING [and NAVIGATION and SPACE] guaranteed by its parent GEDEN, and subsequently throughout the years of performance, GEDEN represented itself as the owner and operator for profit of a fleet of tanker and dry cargo vessels and also the operator for profit of non-owned chartered-in ships.

Complaints ¶ 19;

and

> In restructuring the corporate ownership of its most valuable assets, siphoning them out to other nominee companies, and "ring-fencing" them with various layers of corporate shells, for the express purpose of making them inaccessible as a source of recourse to creditors to whom GEDEN and its wholly owned subsidiaries are indebted, GEDEN and its co-defendants actively abused the corporate form for the express wrongful purpose of defeating legitimate claims of creditors whose assets GEDEN and its co-defendants have used, and are continuing to use to enrich themselves.

Eclipse Complaint ¶ 38; Psara and Tank Punk Complaints ¶ 36.

Plaintiffs' allegations are incorrect, but even if they were correct these allegations are legally insufficient to state a claim to pierce the corporate veil.[5] There are no allegations that any of the Geden entities represented that the vessels would not be sold or transferred, or that the Geden entities gave Plaintiffs a security interest in any of the vessels. *See* Complaints. Similarly, the Complaints are devoid of allegations that the vessels were sold at below market prices, or that payment was not received, or that any aspect of the sale of the vessels was at anything other than an arm's length basis. Id. Since Plaintiffs have not alleged any way in which they were fraudulently disadvantaged by the sale of the vessels, they have failed to make a *prima facie* claim of fraud and so the Complaints can be dismissed for failure to state a claim.

---

[5] Plaintiffs go to great lengths to make it appear as though the proposed restructuring of the Geden Defendants was somehow a secret scheme to disadvantage Plaintiffs, but offer as evidence only a publicly distributed prospectus for an unconsummated Norwegian bond offering. *See* Complaints Ex. 4. In any event, this proposed restructuring of the Geden Defendants obviously did not occur, as some of the Geden-owned vessels were instead sold to the Advantage Defendants.

**(iii)     The Alleged Central Role of Geden Holdings**

Plaintiffs allege that non-party Geden Holdings, Ltd. ("Geden Holdings") is the central entity in the business structure alleged by Plaintiffs.  The primary complaint of Plaintiffs is that they have not received charter hire for certain vessels Plaintiffs chartered to Geden Holdings.  Complaints at ¶¶ 10-12.  Plaintiffs also allege that Defendant Geden Lines is owned by non-party Geden Holdings. Complaints at ¶ 20.  Plaintiffs further allege that Geden Holdings is part of a group of Geden companies that have common officers, directors, and parent companies:

> Defendants GEDEN and SPIKE SHIPPING [and ADVANTAGE and NAVIGATION] (as well as Geden Holdings Ltd.) have had common officers, common directors, and common parent companies, and common beneficial owners as follows: Mr. M. Bülent Ergin, was director of GEDEN, Geden Holdings Ltd., and Çukurova Holding A.S; Mr. A. Tugrul Tokhöz was on the board of directors of GEDEN, Geden Holdings Ltd., and Çukurova Holding A.S; Mr. Mehmet Mat was the chief financial officer of GEDEN and Geden Holdings Ltd. (See EXHIBIT 4 at pp. 100-101). The ownership of GEDEN; Geden Holdings Ltd.; and Cukurova Holding AS was entirely in the hands of the Karamehmet family in Turkey. *Citations omitted*.

Complaints at ¶ 26.  Emphasis added.

Critically, this allegation of common officers, directors, and parent companies has no reference to any Advantage entity and hence adds nothing to Plaintiffs' argument.

Plaintiffs go on to allege that Geden Holdings was at one time the owner of the Vessel and sold her as part of the alleged fraudulent transfer of assets:

> At the same time Defendant GEDEN transferred the legal and equitable title to the ownership of the said vessels from Geden Holdings, Ltd. to another new holding company.

Eclipse Complaint ¶ 34; Psara and Tank Punk Complaints ¶ 33.

In other words, Plaintiffs allege that Geden Holdings is the central entity controlling the group of companies Plaintiffs allege should be treated as a single entity. Despite these allegations, Plaintiffs fail to name Geden Holdings as a defendant in the instant matter. *See* Complaints. Plaintiffs have artfully refrained from naming this necessary party solely because to include Geden Holdings as a defendant would destroy Plaintiff's ability to attach the Vessel under Supplemental Rule B.

## III.    ARGUMENT

**(i)    Plaintiffs Have the Burden to Show the Attachment was Proper**

Plaintiffs have the burden to show that the Rule B attachments in this matter were proper. Pursuant to F.R.Civ.P. E(4)(f) "[w]henever property is arrested or attached, any person claiming an interest in it shall be entitled to a prompt hearing at which the plaintiff shall be required to show why the arrest or attachment should not be vacated or other relief granted consistent with these rules." Once a defendant's property has been attached, the defendant can move to vacate the attachment under Rule E(4)(f), and "a district court must vacate an attachment if the plaintiff fails to sustain his burden of showing that he has satisfied the

requirements of Rules B and E." *Naftomar Shipping and Trading Co. v. KMA Intern. S.A.*, 2011 WL 888951, *2 (S.D. Tex., March 10, 2011).

Plaintiffs have used Rule B to attach property belonging to the Advantage Defendants.  In order to show that the attachment of the Advantage Defendants' property was proper, Plaintiffs must show that: (1) they have a valid *prima facie* admiralty claim against Defendants; (2) Defendants cannot be found within the district; (3) Defendants' property may be found within the district; and (4) there is no statutory or maritime law bar to the attachment.  *Aqua Stoli Shipping Ltd. v. Gardner Smith Pty Ltd.*, 460 F.3d 434, 445 (2nd Cir. 2006) (abrogated on other grounds by *Shipping Corp. of India Ltd. v. Jaldhi Overseas Pte Ltd.,* 585 F.3d 58 (2nd Cir. 2009)).  Here, Plaintiffs have deliberately omitted naming Geden Holdings as an alleged alter ego in order to evade the requirement that a defendant cannot be found within the district.  Even without this fatal defect Plaintiffs have failed to allege a *prima facie* case.

If the Complaints are dismissed the attachments cannot stand.  *See Man Diesel A/S v. Seahawk North Am. LLC*, No. 09 CV 0687, 2009 WL 3030220, at *1 n.1 (S.D.N.Y. Sept. 22, 2009) (unpublished) ("When the underlying action is dismissed, the attachment is necessarily vacated.") (citation omitted).  In the alternative, the attachments should be vacated because Plaintiffs cannot show probable cause for the attachment based on the failure to plead facts that support

Plaintiffs' alter ego theory.

**(ii)    Plaintiffs Fail to Include a Necessary Party**

The Complaints are dismissible for failure to join a necessary party. Although they allege Geden Holdings is an alter ego of the other Defendants, and the linchpin binding all of the alleged alter egos, Plaintiffs do not name Geden Holdings as a defendant because doing so would destroy one of the requirements for an *ex parte* Rule B attachment.   To support the attachment of the Vessel pursuant to Rule B, Plaintiffs must show, *inter alia*, that the defendant is not present within the district. *Aqua Stoli* at 445.  As the Fifth Circuit has explained, "[a] defendant is present in the district if (1) the defendant can be found within the district in terms of jurisdiction, and (2) the defendant can be found within the district for service of process." *Heidmar, Inc. v. Anomina Ravennate Di Armanento Sp.A. of Ravenna*, 132 F.3d 264, 268 (5th Cir. 1998) (citation omitted).

In this case, Plaintiffs allege that their contract counterparty on the charters is Geden Holdings and its nominee.  Complaints at ¶ 10.  Plaintiffs also allege that Geden Lines is owned by Geden Holdings (Complaints at ¶ 20), and that Geden Holdings is "controlled by the Cukurova Group, a leading Turkish conglomerate ultimately and beneficially owned by members of the Karamehmet family. Complaints at ¶ 21.  Plaintiffs also allege that:

> Defendants GEDEN and SPIKE SHIPPING [and ADVANTAGE and NAVIGATION] (as well as Geden Holdings Ltd.) have had common

officers, common directors, and common parent companies, and common beneficial owners as follows . . .

Complaints at ¶ 26.

Plaintiffs further allege that Geden Holdings was an owner of at least some of the vessels before they were sold to the Advantage Defendants. Complaints ¶ 34.

The Complaints thus allege that Geden Holdings is the central entity that ties together the companies that Plaintiffs argue are part of the same enterprise, yet Plaintiffs do not name this entity as defendant. While this might appear to be mere oversight, it is in fact an artful, deliberate, and fatal omission.[6]

Plaintiffs' failure to name an alleged alter ego as a defendant is fatal to the Complaints if this alter ego entity is present in the jurisdiction. Where alter ego liability is alleged, the presence of one of the alleged alter egos in the district will be imputed to all of the alleged alter ego entities. *See Glory Wealth Shipping Pte Ltd. v. Industrial Carriers, Inc.*, 590 F.Supp. 2d 562, 564 (S.D.N.Y. 2008) ("if one defendant is present in the district for the purposes of issuing a maritime attachment, its alter egos are present as well"). Accordingly, if Geden Holdings is present in the Southern District of Texas, the attachment must be vacated because Plaintiffs cannot show that none of the alleged alter egos are present in the district.

In this case, Geden Holdings is present in the district because it has

---

[6]    At the outset, it is highly objectionable that Plaintiffs would disregard their obligation of candor to the Court, especially in the context of *ex parte* attachment proceedings, and fail to advise the Court that one of the alleged alter ego companies is in fact present in the jurisdiction, but that Plaintiffs have not named it as a defendant to preserve their putative access to Rule B.

registered as a foreign corporation to do business in Texas, and has appointed an agent for service of process in Texas.[7]  *See* Exhibit 1.  This registration and appointment of an agent is a matter of public record, and the Court is respectfully urged to take judicial notice of this publicly accessible filing, a courtesy copy of which is respectfully provided to the Court in the Declaration of Marc Matthews dated August 4, 2015, Exhibit 1, filed with the instant motion.

The practical effect of the failure to include as a defendant an entity that Plaintiffs themselves argue is an alleged alter ego of the named Defendants is that Plaintiffs have failed to name a necessary party under F.R.Civ.P. 12(b)(7).  This defect is not curable, at least with respect to the Rule B attachments, because if Plaintiffs named Geden Holdings as a defendant, Plaintiffs could not then avail themselves of Rule B.

**(iii)** **Plaintiffs Fail to Meet the Corporate Veil-Piercing Standard and So Cannot Show "Reasonable Grounds" for the Attachment**

To survive a Rule E hearing, Plaintiffs must show that there are "reasonable grounds" for a Rule B attachment.  *A. Coker & Co., LTD. v. Nat'l Shipping Agency Corp.*, et al., 1999 WL 311941, *1 (E.D. La. May 17, 1999) (applying reasonable grounds/probable cause standard, finding "[a]t a post-arrest hearing, the

---

[7]    Moreover, should Plaintiffs attempt to submit amended complaints arguing that this registration and appointment of an agent is insufficient to establish the "presence," the "Whitepages.com" internet-based telephone book lists Geden Holdings as having an address and phone number in the district.  See http://www.whitepages.com/business/geden-holdings-limited-houston-tx-2.  A printout of this information is attached as an exhibit to the Declaration of Marc G. Matthews, attached as Exhibit 1.

plaintiff has the burden to establish probable cause for the arrest. The hearing is not intended to definitively resolve the dispute between the parties; rather, the Court must make a preliminary determination whether reasonable grounds exist for the arrest.") (citation omitted).  At the very least, Plaintiffs must show reasonable grounds by alleging a *prima facie* case.

In order to successfully make out a *prima facie* case to pierce the corporate veil between separately organized business entities, Plaintiffs must allege that the target company was (i) completely dominated by its alleged alter ego and (ii) that this domination led to a wrong.  In *American Fuel Corp. v. Utah Energy Dev. Co.*, 122 F.3d 130, 134 (2nd Cir. 1997), the Second Circuit recognized that "'[w]hile complete domination of the corporation is the key to piercing the corporate veil . . . such domination, standing alone, is not enough; some showing of a wrongful or unjust act toward [the party seeking piercing] is required.'" 122 F.3d at 134 (citation omitted).  The Fifth Circuit has subsequently explained that this injustice requirement can be met by showing fraud, an illegal act, or a misuse of the corporate form.  *Bridas S.A.P.I.C. v Gov't of Turkmenistan*, 447 F.3d 411, 416–17 (citing *In re Sims*, 994 F.2d 210, 217–18 (5th Cir. 1993).

In sum, Plaintiffs have the burden to show, under at least a reasonable grounds/probable cause standard, that the attachment of the Vessel was proper. Plaintiffs cannot carry this burden because the Complaints do not meet the legal

requirements for alleging alter ego/veil piercing.

*(i)*    <u>*Plaintiffs Fail to Make a Prima Facie Veil-Piercing Claim*</u>

The Complaints should be dismissed for failure to state a claim because Plaintiffs have not made a valid *prima facie* claim to pierce the corporate veil and treat all defendants as alter egos.[8]    In the Fifth Circuit, the alter ego doctrine applies only if: "(1) the owner exercised complete control over the corporation with respect to the transaction at issue and (2) such control was used to commit a fraud or wrong that injured the party seeking to pierce the veil." *Bridas S.A.P.I.C. v. Government of Turkmenistan*, 345 F.3d 347, 359 (5th Cir. 2003).

First, the Complaints suffer from a paucity of alleged facts to support the domination-and-control argument.  While Plaintiffs make conclusory allegations that veil piercing is appropriate, Plaintiffs allege very few specific facts supporting this argument.  For example, there are no allegations that any of the Geden Defendants, or their officers, directors, or employees, control any aspect of the Advantage Defendants, who now own the vessels.  *See* Complaints.  Plaintiffs allege that the Geden Defendants have common officers and directors, but do not allege there are common officers and directors between the Advantage Defendants and the Geden Defendants.  Complaints ¶ 26.  Thus, even if these allegations are true, they do not support holding the Advantage Defendants liable for the Geden

---

[8]    Plaintiffs also fail to allege any exceptional circumstances justifying this extraordinary remedy: "The alter ego doctrine, like all variations of piercing the corporate veil doctrine, is reserved for exceptional cases." *Bridas S.A.P.I.C. v. Gov't of Turkmenistan*, 447 F.3d 411, 416 (5th Cir. 2006) (citation omitted).

Defendants' alleged breaches of contract.

Second, Plaintiffs' factual allegations with respect to the underlying alleged fraud are virtually non-existent (and in some cases are contradicted by other allegations). For example, Plaintiffs allege that the Geden Defendants transferred the legal and equitable title to certain of their vessels to the Advantage Defendants—in other words, the vessels were sold. Plaintiffs do not allege that anything about this transaction was fraudulent, however, such as by a below-market price or that the sale was on less than arm's-length terms.

Pursuant to the applicable legal standard, Plaintiffs must establish reasonable grounds to support a finding of the Geden Defendants' dominion and control over the Advantage Defendants as well as fraud in relation to the underlying sale of the Vessel by Geden. Since Plaintiffs cannot make the specific factual allegations required to make a *prima facie* case, the Complaints should be dismissed and the attachments vacated.

(ii)    <u>*Plaintiffs' Allegations of Dominion and Control are Legally Insufficient*</u>

While adopting a "totality of the circumstances" test, the Fifth Circuit has developed a list of factors to consider in determining whether one company exercises dominion and control over another, such that an alter ego relationship exists:

(1) the parent and subsidiary have common stock ownership;
(2) the parent and subsidiary have common directors or officers;

- 18 -

(3) the parent and subsidiary have common business departments;
(4) the parent and subsidiary file consolidated financial statements;
(5) the parent finances the subsidiary;
(6) the parent caused the incorporation of the subsidiary;
(7) the subsidiary operated with grossly inadequate capital;
(8) the parent pays salaries and other expenses of the subsidiary;
(9) the subsidiary receives no business except that given by the parent;
(10) the parent uses the subsidiary's property as its own;
(11) the daily operations of the two corporations are not kept separate;
(12) the subsidiary does not observe corporate formalities.

*Oxford Capital Corp. v. U.S.*, 211 F.3d 280, 284 n.2 (5th Cir. 2000) ("*Oxford Capital*") (citation omitted).

To make out "a *prima facie* claim for alter ego liability, plaintiffs must make specific factual allegations from which alter ego status can be inferred; conclusory allegations are insufficient." *Emeraldian Ltd. Partnership v. Wellmix Shipping Ltd.*, 2009 WL 3076094, *3 (S.D.N.Y. Sept. 28, 2009). The Complaints in this case make a series of conclusory allegations and contain so few specific factual allegations that Plaintiffs have failed to make a *prima facie* case.

Plaintiffs do not allege that the Geden and Advantage Defendants have common ownership, or common officers or directors, or common business departments, nor do they allege that any defendants file consolidated financial statements. *See* Complaints. In fact, Plaintiffs allege that the Geden Defendants are organized in a completely different jurisdiction than the Advantage Defendants. Complaints ¶¶ 3-8. Plaintiffs make no allegations that any of the Geden Defendants caused the organization of or capitalized any of the Advantage

Defendants, or that any Advantage Defendant was undercapitalized. *See* Complaints. Plaintiffs also say nothing about salaries or other payments being made by one defendant on behalf of another, or that there is any business relationship or sharing of assets. *See* Complaints. Plaintiffs also make no allegations that the Advantage Defendants do not keep their operations separate from those of the Geden Defendants, or that any defendants ignore corporate formalities. *See* Complaints.

The only specific factual allegation made by Plaintiffs that is listed in *Oxford Capital* is that a minority owner of Defendant Forward Holdings is also on the board of directors of Geden Lines. Complaints ¶ 35. This single allegation, even if true, is woefully insufficient to justify piercing the corporate veil between two groups of companies that Plaintiffs acknowledge are under different ownership (in other words, Plaintiffs are not alleging that the companies in a single corporate family are alter egos—they are alleging that two entirely separate corporate families should be treated as one).

Plaintiffs make other allegations in support of their veil-piercing arguments that are irrelevant. For example, Plaintiffs allege that one of the owners of Defendant Forward Holdings is the daughter of one of the owners of Geden Lines (and Geden Holdings), but this is not one of the factors listed by the Fifth Circuit. Complaints at ¶ 35. Familial relationships do not *ipso facto* establish any

commercial relationship. Plaintiffs also allege common officers, directors, and parent companies within the Geden Defendants, but do not link any of these entities to the new owners, the Advantage Defendants. Complaints ¶ 26.

The most telling example of Plaintiffs' attempt to conjure up supporting facts is the identification of Geden Lines, which provides third-party management services, as a common link between the Geden Defendants and the Advantage Defendants. Complaints at ¶ 27. However, a careful examination of Plaintiffs' allegations and supporting exhibits reveals that Geden Lines is merely listed as the manager of certain of Advantage's vessels, a fact which carries no weight in an alter ego analysis.[9] Complaints Exs. 6-8. The paucity of Plaintiffs' dominion-and-control allegations reveals that Plaintiffs are fully aware that the Geden Defendants do not exercise any control over the Advantage Defendants, and that Plaintiffs cannot plausibly allege otherwise.

*(iii)*    *Plaintiffs' Allegations of Fraud are Legally Insufficient*

Plaintiffs also make few allegations of fraud or injustice, other than to allege that they have not received certain charter payments owed by the Geden Defendants (a complaint that sounds in contract, not fraud). The primary allegation of Plaintiffs as it relates to the sale of the vessels is that Geden publicly represented itself as the owner and operator of a fleet of tanker and dry cargo

---

[9]    Plaintiffs' allegation that the Geden Lines list of vessels under management is a list of vessels Geden Lines actually owns is egregiously misleading as this list includes the very vessels owned by Plaintiffs and chartered to Geden Line!

vessels.    While this may be true, Plaintiffs do not allege that Geden ever represented that none of its vessels would be sold, or that Plaintiffs could look to those assets to secure breach of charter claims.    Nor do Plaintiffs allege (because they cannot) that they ever had a lien, claim, security, or other interest in any of the vessels owned by Geden and subsequently sold to Advantage and its subsidiaries. Since there is no allegation that these assets were ever represented to be a source of security for Plaintiffs, they should not be heard to now complain about the sale of these vessels at market prices.

Notably, Plaintiffs do not allege that the sale of the vessels to the Advantage Defendants was on anything other than an arm's-length basis.    Plaintiffs make no allegations of price fixing, favorable sale terms, or special terms that might call these sales into question.    *See* Complaints.    Instead, Plaintiffs rely on nothing more than the conclusory allegation that the sale of the vessels was "fraudulent corporate restructuring and asset allocation."    This is insufficient to make out a fraud claim, even if the specificity requirements of Federal Rule of Civil Procedure 9(h) are ignored.

Moreover, as Plaintiffs acknowledge, the vessels owned by Geden were financed.    Complaints at ¶ 29.    As Plaintiffs are aware, the vessels were all the subject of mortgages that establish liens in favor of the mortgagees, liens that by definition come before any claim Plaintiffs might have against the vessels as assets

of Geden. *See* 46 U.S.C. § 31325(a) (providing that foreign mortgage gives rise to maritime liens); *Cargill, Inc. v. M/T Pac. Dawn*, 876 F.Supp. 508, 510 (S.D.N.Y. 1995) (listing priority of claims against a vessel). Thus, even if Plaintiffs had attached the vessels and sold them while they were owned by Geden, the mortgages would have been paid first, along with any other priming claims. This is exactly what happened when the vessels were sold to Advantage – the proceeds of sale went to Geden's lenders to pay off the secured debt of each vessel. There is simply no plausible argument made by Plaintiffs that they had any reason to expect that any of the vessels were a source of security for any claims Plaintiffs might make.

In any event, as a matter of law, even if the arm's-length sale of assets by Geden to Advantage was somehow improper, Plaintiffs cannot allege fraud until they have an actual or imminent judgment. An improper transfer of assets between corporations for the purpose of avoiding liability occurs when there is an actual debt or money judgment owed or imminent, not merely when there is a pre-existing contractual obligation. *See, e.g.*, *District Council No. 9 v. APC Painting, Inc.*, 272 F.Supp. 2d 229, 241 (S.D.N.Y. 2003) (misuse of corporate form alleged when defendant dissolved one of his corporate entities shortly after a final arbitration award was issued against him). Here, Plaintiffs have not even commenced arbitration. Complaints at ¶16.

## IV.    <u>CONCLUSION</u>

Plaintiffs have obtained ex parte relief and attached $2,200,000 of property belonging to the Advantage Defendants for debt that, to the extent it exists, is owed by the unrelated Geden Defendants.  Plaintiffs fail to tell this Court why the Advantage Defendants should be liable for the Geden Defendants' debt, except to make conclusory, unsupported veil-piercing allegations.

The Complaints must be dismissed for failure to name a necessary party, Geden Holdings.  Although alleged to be an alter ego of Defendants, Geden Holdings is conspicuously not named as a defendant—omitted for the transparent reason that naming this entity would render Rule B unavailable to Plaintiffs.

The Complaints can also be dismissed because Plaintiffs' allegations of domination and control are so few that Plaintiffs have failed to make a *prima facie* case.  Similarly, Plaintiffs' allegations of fraud are so few and so conclusory that Plaintiffs have not adequately alleged facts to support their claims.  The Complaints can be dismissed, and the attachments vacated, for this failure to state a claim (or, in the alternative, the attachments can be vacated based on Plaintiffs' failure to establish probable cause).

WHEREFORE, the Advantage Defendants pray that the Complaints be dismissed, that the attachments be vacated, and that the Advantage Defendants be

WFW 80378759v2
PD.17831748.1

awarded their attorneys' fees and costs. The Advantage Defendants pray for all other and further relief to which they may be justly entitled.

Respectfully submitted,

*s/ Marc G. Matthews*

Marc G. Matthews
Texas Bar #24055921
Federal ID No. 705809
500 Dallas Street, Suite 1300
Houston, Texas 77002
Telephone: (713) 626-1386
Telecopier: (713) 626-1388
marc.matthews@phelps.com

**ATTORNEY-IN-CHARGE
FOR DEFENDANTS ADVANTAGE
ARROW SHIPPING, LLC;
ADVANTAGE TANKERS, LLC;
ADVANTAGE HOLDINGS, LLC;
AND FORWARD HOLDINGS, LLC**

OF COUNSEL:
**Phelps Dunbar LLP**
Brian D. Wallace (LA Bar #17191; Fed. ID 205890)
wallaceb@phelps.com

and

**Watson, Farley, and Williams (New York) LLP**
Neil Quartaro (admitted Pro Hac Vice)
nquartaro@wfw.com
John Kissane (admitted Pro Hac Vice)
jkissane@wfw.com
1133 Avenue of the Americas, 11th Floor
New York, New York 10036

WFW 80378759v2
PD.17831748.1

## <u>CERTIFICATE OF SERVICE</u>

I certify that a copy of the foregoing was electronically filed with the Clerk, with a copy served electronically by the Clerk or by the undersigned on this the 4th day of August, 2015 upon all counsel of record.


*s/ Marc G. Matthews*

Marc G. Matthews

WFW 80378759v2
PD.17831748.1