# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS – HOUSTON DIVISION

| | | |
|---|---|---|
| ECLIPSE LIQUIDITY, INC., | § | |
| Plaintiff, | § | No. 4:15-CV-1645 |
| | § | |
| v. | § | ADMIRALTY |
| | § | |
| AVOR NAVIGATION LTD.; ADVANTAGE | § | |
| ARROW SHIPPING, LLC;  GENEL DENIZCILIK | § | |
| NAKLIYATI A.S. A/K/A GEDEN LINES; | § | |
| ADVANTAGE TANKERS, LLC; ADVANTAGE | § | |
| HOLDINGS, LLC; and FORWARD HOLDINGS, | § | |
| LLC, | § | |
| | § | |
| Defendants. | § | |

-----------------------------------------------------------------

| | | |
|---|---|---|
| PSARA ENERGY, LTD., | § | |
| Plaintiff, | § | No. 4:15-CV-1673 |
| | § | |
| v. | § | ADMIRALTY |
| | § | |
| SPACE SHIPPPING, LTD; ADVANTAGE | § | |
| ARROW SHIPPING, LLC; GENEL DENIZCILIK | § | |
| NAKLIYATI A.S. A/K/A GEDEN LINES; | § | |
| ADVANTAGE TANKERS, LLC; ADVANTAGE | § | |
| HOLDINGS, LLC; and FORWARD HOLDINGS, | § | |
| LLC, | § | |
| | § | |
| Defendants. | § | |

-----------------------------------------------------------------

| | | |
|---|---|---|
| TANK PUNK, INC., | § | |
| Plaintiff, | § | No. 4:15-CV-1675 |
| | § | |
| v. | § | ADMIRALTY |
| | § | |
| SPIKE SHIPPING LTD.; ADVANTAGE | § | |
| ARROW SHIPPING, LLC; GENEL DENIZCILIK | § | |
| NAKLIYATI A.S. A/K/A GEDEN LINES; | § | |
| ADVANTAGE TANKERS, LLC; ADVANTAGE | § | |
| HOLDINGS, LLC; and FORWARD HOLDINGS, | § | |
| LLC, | § | |
| | § | |
| Defendants. | § | |

-----------------------------------------------------------------

**PLAINTIFFS' RESPONSE TO DEFENDANT'S MOTION TO VACATE/DISMISS**

## TABLE OF CONTENTS

**Page**

TABLE OF CONTENTS…………………………………………………………………i

TABLE OF AUTHORITIES………………………………………………………………..iii

INTRODUCTION AND PROCEDURAL STATUS……………………………………1

I. STANDARD OF REVIEW……………………………………………………………1

II. THE COMPLAINTS AS SUPPLEMENTED BY
    THIS MEMORANDUM, ATTACHED DECLARATION
    AND SUPPORTING DOCUMENTS PROVIDE SUFFICIENT
    PROBABLE CAUSE TO MAINTAIN THE ORDERS OF
    ATTACHMENT. THE MOTION TO VACATE THE ORDER OF
    ATTACHMENT SHOULD BE DENIED………………………………………...2

A. OVERVIEW OF DEFENDANTS' ASSESSMENT OF THE FACTS………………..2

1. Overview of Defendants' Methodology……………………………………………..5

2. Control and Domination……………………………………………………………..5

3. The Fraud Allegations………………………………………………………………..8

4. Not Joining Geden Holdings, Ltd. as a Defendant…………………………………9

III. Response to Defendants' Argument………………………………………………9

A. GEDEN HOLDINGS, LTD. WAS PROPERLY NOT NAMED DEFENDANT…….9

1. Plaintiff has not pled an alter ego relationship between
    Geden Holdings, Ltd. and the Defendants………………………………………...9

2. Defendants may not pierce the corporate veil to defeat *quasi-in-rem*
    Rule B jurisdiction………………………………………………………………10

3. Defendants are not present in the district by virtue of
    Geden's registration with the Texas Secretary of States and
    the appointment of an agent for service of process
    situated in another federal district…………………………………………..11

B. THE ATTACHMENT OF THE ADVANTAGE ARROW
UNDER RULE B PROCESS RESTS ON WELL-ESTABLISHED

PRINCIPLES OF ADMIRALTY LAW AND ON AN INDISPUTABLE
SHOWING OF PROBABLE CAUSE……………………………………………..14

1. The fraudulent transfer of the ADVANTAGE ARROW……………………………..15

2. Plaintiff has made a prima facie alter ego case in terms of domination and control….17

3. Plaintiff has made a *prima facie* alter-ego case in terms of misuse of the
corporate form to commit injustice………………………………………………23

CONCLUSION………………………………………………………………………..25

## **TABLE OF AUTHORITIES**

**Page**

### **Cases**

*Am. Water Works Co. v. Util. Workers Local* 537,
   2013 U.S. Dist. LEXIS 32112 (W.D. Pa. 2013)…………………………………11

*Asshauer v. Glimcher Realty Trust,*
   228 S.W.3d 922,933 (Tex. App. – Dallas 2007)…………………………………12

*Atlanta Shipping Corp. v. Chemical Bank,*
   818 F.2d 240, 248 (2nd Cir. 1987)…………………………………………………16

*Bordagain Shipping Co. v. Saudi-American Lines, S.A.,*
   1979 A.M.C. 1058, 1071-72 (E.D. La. 1978)………………………………………..7

*Bridas S.A.P.I.C. v. Government of Turkmenistan,*
   345 F.3d 347 (5th Cir. 2003)………………………………………………………18

*Bridas S.A.P.I.C. v. Government of Turkmenistan,*
   447 F.3d 411 (5th Cir. 2006)………………………………………………..*passim*

*Conner v. Conticarriers & Terminals,*
   944 S.W.2d 405 (Tex. App. – Houston 1997)…………………………………...12

*Heavy Duty Prods., LLC v. Bandwdth, LLC,*
   2015 U.S. Dist. LEXIS 62252 (W.D. Tex. 2015)…………………………………..13

*Heavy Duty Prods., LLC v. Bandwdth, Inc.,*
   2015 U.S. Dist. LEXIS 83111 (W.D. Tex. 2015)…………………………………..13

*Heidmar, Inc. v. Anomina Ravennate Di Armanento Sp.A. of Ravenna,*
   132 F.3d 264 (5th Cir. 1998)………………………………………………………14

*Holborn Oil Trading, Ltd. v. Interpetrol Bermuda Ltd.,*
   774 F. Supp. 840 (S.D.N.Y. 1991)……………………………………15, 16, 24

*Jo Tankers, A.S. v. HBG Logistics, L.L.C.,*
   2013 U.S. Dist. LEXIS 2576 (S.D. Tex. 2013)…………………………………15

*Labanca v. Ostermunchner,* 664 F.2d 65 (5th Cir. 1981)…………………………11, 14

*Maersk, Inc. v. Neewra, Inc.,* 443 F. Supp. 2d 519 (S.D.N.Y. 2006)……………………..2

*MAG Portfolio Consult v. Merlin Biomed Group*,
    268 F.3d 58 (2nd Cir. 2000)………………………………………………...20

*McCarthy v. Azure*, 22 F.3d 351 (1st Cir. 1994)………………………………………10

*Naftomar Shipping & Trading Co. v. KMA Int'l S.A.*,
    2011 U.S. Dist. LEXIS 24723 (S.D. Tex. 2011)……………………………1, 2

*Oxford Capital Corp. v. U.S.*, 211 F.3d 280 (5th Cir. 2000)……………………………19

*Patin v. Thoroughbred Power Boats, Inc*., 294 F.3d 640 (5th Cir.2002)………………..25

*PayPhone LLC v. Brooks Fiber Communs.*,
    126 F. Supp. 2d 175 (D.R.I. 2001)……………………………………………10

*Schlobohm v. Schapiro*, 784 S.W.2d 355 (Tex. 1990)………………………………...12

*Seawind Compania, S.A. v. Crescent Line, Inc.*,
    320 F.2d 580 (2nd Cir. 1963)…………………………………………………14

*STX Panocean (UK) Co. v. Glory Wealth Shipping Pte Ltd.*,
    560 F.3d 127 (2nd Cir. 2009)…………………………………………………14

*Submersible Sys. v. Perforadora Central, S.A. de C.V.*,
    249 F.3d 413 (5th Cir. 2001)…………………………………………………12

*Swift Co Packers v. Compania Colombiana Del Caribe*,
    339 U.S. 684 (1950)……………………………………………………5, 15, 16

*Talen's Landing, Inc. v M/V VENTURE*, 656 F.2d 1157 (5th Cir. 1981)…………..7, 8, 15

*United Continental Tuna Corp. v. United States,* 550 F.2d 569 (9th Cir. 1977)………...11

*Wenche Siemer v. Learjet Acquisition Corp.*, 966 F.2d 179 (5th Cir. 1992)……………12

*White Rosebay Shipping S.A. v. HNA Group Co.*,
    2013 U.S. Dist. LEXIS 15249 (S.D. Tex. 2013)………………………………2

## **Federal Rules**

Fed. Rul. Civ. Proc. 12(b)(6)………………………………………………………...1

USCS Admiralty and Maritime Claims R. B…………………………………….*passim*

USCS Admiralty and Maritime Claims R. E(4)(f)……………………………………1, 2

## INTRODUCTION AND PROCEDURAL STATUS

These consolidated cases were commenced by the respective Plaintiffs under Rule B(1) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions[1] with the Attachment of the Motor Tanker ADVANTAGE ARROW, in aid of London maritime arbitration and to obtain security for unpaid bareboat charter hire owed to Plaintiffs as vessel owners respectively of the motor tankers AVOR, SPIKE, and CV STEALTH. The respective Defendants move to vacate the attachments under Supplemental Rule E(4)(f). Doc. 16 at p.11. At the same time Defendants contend their motion is also based on the respective complaints failure to state a claim, though there is no mention of Rule 12(b)(6) F.R. Civ. P. in their moving papers. Curiously, though Defendants predicate their motion on Supplemental Rule E(4)(f), they have not requested a hearing and seek to have the attachments vacated on the basis of briefs only. As Rule E(4)(f) expressly provides for a hearing, Plaintiffs  respectfully request a hearing.

## I. STANDARD OF REVIEW

When presented with a motion to vacate an order authorizing maritime attachment and garnishment a court must consider whether Plaintiff has made a *prima facie* showing or has shown that there is probable cause to sustain the attachment. *Naftomar Shipping & Trading Co. v. KMA Int'l S.A.*, 2011 U.S. Dist. LEXIS 24723 at * 6-7 (S.D. Tex. 2011). In making its determination under Supplemental Rule E(4)(f) the court does not definitively resolve the dispute between the parties. Rather, the Court must make a preliminary determination whether reasonable grounds exist for the attachment. Courts in Rule E(4)(f) hearings do not make binding determinations of fact, but are "'merely holding that it is likely' that alleged facts are true." *Id*. at * 7-8.

---

[1] Hereinafter referred to as "the Supplemental Rules".

"Under the Supplemental Rules, to support the attachment of Defendants' vessel, Plaintiff must show (1) that Plaintiff has a valid *prima facie* admiralty claim, (2) that Defendant cannot be found within the Southern District of Texas, (3) that Defendant's property may be found in the District, and (4) that there is no statutory or maritime bar to attachment." *White Rosebay Shipping S.A. v. HNA Group Co.*, 2013 U.S. Dist. LEXIS 15249 at * 6-7 (S.D. Tex. 2013).

Rule E(4)(f) also permits the Court to look beyond the complaint, consider evidentiary submissions by the parties, and to hold a hearing, if requested. *Id.* at * 8; *see Naftomar* at * 2-3; *Maersk, Inc. v. Neewra, Inc.*, 443 F. Supp. 2d 519, 527 (S.D.N.Y. 2006) (concluding that court "may consider any allegations or evidence offered in the parties' papers or at the post-attachment hearing").

Plaintiffs believe that the respective Verified Complaints, the arguments contained in this response memorandum, and the declarations in support thereof are sufficient to maintain the attachment. Should the Court require further and additional factual evidentiary materials, Plaintiffs believe that limited jurisdictional discovery shall yield it, and would therefore ask the court to consider ordering limited jurisdictional discovery for this purpose. *Naftomar Shipping & Trading Co. v. KMA Int'l S.A.*, 2011 U.S. Dist. LEXIS 24723 at * 3 (S.D. Tex. 2011).

**II. THE COMPLAINTS AS SUPPLEMENTED BY THIS MEMORANDUM, ATTACHED DECLARATIONS AND SUPPORTING DOCUMENTS PROVIDE SUFFICIENT PROBABLE CAUSE TO MAINTAIN THE ORDERS OF ATTACHMENT. THE MOTION TO VACATE THE ORDER OF ATTACHMENT SHOULD BE DENIED.**

**A.  OVERVIEW OF DEFENDANTS' ASSESSMENT OF THE FACTS**

The central issue before the Court is whether the facts of the respective consolidated cases warranted the order authorizing issuance of the process of maritime attachment and garnishment under Supplemental Rule B (1). Remarkably, Defendants' motion is unsupported by even the barest of declarations to contradict the detailed and well-documented factual allegations

of the Verified Complaints. Defendants, instead, misread, misinterpret, and even ignore the Complaint allegations that overwhelmingly support the order authorizing issuance of the process.

An obvious example of such misreading is Defendants' assertion that the respective Complaint pleads non-party Geden Holdings, Ltd., is a charterer of the vessels. Doc. 16 at p. 4. Nothing of the sort was pled. Though the respective charter parties named as charterer "Geden Holdings Limited, Malta or nominee...," (EXHIBIT 1 to the three complaints), they did not provide that Geden Holdings **and** its nominee would be co-charterers. The identity of each vessel's charterer was clarified when the respective nominee-charterers were actually nominated and Geden Holdings stepped into its new role of performance guarantor. All of this is clear in the performance guarantees signed by Geden Holdings, Ltd., referred to and attached to the First Declaration of Despoina Bacha (hereinafter referred to as "BACHA") ¶ 8, as: DOCUMENT F; DOCUMENT G; and DOCUMENT H.

Defendants' contentious interpretation of the respective Complaints (Doc. 16 at pp. 5-6) seeks to explain away and trivialize their unlawful scheme to massively restructure asset ownership to the detriment of all other creditors, including Plaintiffs, in order to benefit certain financing creditors (banks) and shareholders, *i.e.* the Karamehmet family – beneficial owners of Defendant Geden Lines.

The crux of the restructuring plan, conceived and engineered by Geden Lines'[2] expert consultants, was as simple as it was sinister. A fleet of 9-10 modern Aframax tanker vessels beneficially owned by Geden Lines – held on its behalf by Geden Holdings, Ltd, through Maltese one-ship-companies – was to be transferred to brand new one-ship-companies, held in turn, by a new holding company. The "old" one-ship-companies and Geden Holdings, Ltd. were

---

[2] In the remainder of this brief Plaintiffs will refer to this defendant either by its Turkish name "GENEL DENIZCILIK NAKLIYATI AS" or by its trade name "Geden Lines".

to be entirely stripped of ownership of these assets. "Hold outs" and "nuisances," such as non-lending creditors, would be thereby be "ring-fenced" out and left without recourse against the assets held by the freshly-minted entities, to prevent arrests of sister-ships in South Africa-type jurisdictions. See Complaint 4: 15-cv-01673, Doc. 1 at ¶¶ 29-36;[3] EXHIBIT 5 common to all complaints 4:15-cv-01673, Doc. 1-2 at pp. 1-53 (hereinafter referred to and cited as 'EXHIBIT 5" or "restructuring plan" followed by the ECF page numbers), at pp. 16, 41, and generally.

The restructuring plan was developed on behalf of Geden Lines as owner of the shipping assets, *i.e.* the vessels. *Id*. at pp. 3, 11. It is worth noting that the respective Plaintiffs' bareboat charter parties are acknowledged in the restructuring plan as Geden Lines' obligations, *Id*. at p. 27, which also records the dire financial condition of Geden Lines at the time the restructuring plan was developed. *Id*. at p. 11. It is also indisputable that Plaintiff entered into their respective bareboat charter parties on the strength of performance guarantees (BACHA DOCUMENTS F, G, and H) given by Geden Holdings, Ltd. when it was asset-rich.

Contrary to what Defendants argue, Plaintiffs do not need to plead a security interest to file suit based on Supplemental Rule B. (Doc. 16 at p. 6). Nor is it correct that there can be no Rule B recourse against a performance guarantor's assets. *Id.* On previous occasions Plaintiff has exercised such recourse (*see*, *e.g.*, cases noted in BACHA ¶ 14), and neither Geden Holdings, as guarantor, nor defendant Geden Lines filed a single paper in opposition.

One of the express purposes of restructuring Geden Lines a/k/a/ GENEL DENIZCILIK NAKLIYATI A.S. was to "Ring-fence potential sources of disruption, holdout, or nuisance (such as arrests or sister-ship arrests)". EXHIBIT 5 at p. 41. Restructuring was intended to prevent recourse – judicially enforceable recourse – against vessels. But admiralty jurisdiction cannot be

---

[3] The same allegations are common to all three consolidated complaints. Accordingly, references to the complaint in this memorandum will to the complaint files in 4: 15-cv- 01673.

excluded by rearranging corporate structures and shuffling assets. "The basis of admiralty's power is to protect its jurisdiction from being thwarted by a fraudulent transfer, and that applies equally whether it is concerned with executing its judgment or authorizing an attachment to secure an independent maritime claim." *Swift & Co. Packers v. Compania Colombiana Del Caribe*, 339 U.S. 684, 694-695 (1950).

Defendants are also mistaken in both their beliefs that Geden Holdings, Ltd., is a necessary party, and that it was present in the district when suit was filed. Doc. 16 at p. 13. Geden Holdings, Ltd. has no interest in the asset attached, as the other named defendants have. Its status when suit was filed was and remains that of a red herring. Moreover, it was not and is not present in the district as will be discussed in detail below.

### 1. <u>Overview of Defendants' Methodology</u>

To arrive at their desired conclusions, Defendants needed to first deal with the facts as set out in the respective Complaints. But these facts, taken as premises, do not warrant the conclusions Defendants want to draw. Defendants' methodology is simple: disregard unhelpful allegations, select a few out of context, and impose Defendants' interpretation of them as to what they refer and signify. Thus, re-engineered by Defendants, the respective Complaints are reduced to nearly meaningless statements incapable of supporting Rule B relief, and therefore, in Defendants' view, the attachment of the ADVANTAGE ARROW must be dismissed and/or vacated.

### 2. <u>Control and Domination</u>

Underlying Defendants' factual analysis, there appear to be concepts drawn from *Bridas S.A.P.I.C. v. Government of Turkmenistan*, 447 F.3d 411 (5th Cir. 2006), [4] which posits two necessary categories of circumstances that are essential for the alter-ego doctrine to apply for

---

[4] This Fifth Circuit Court of Appeals decision will be referred to also as *Bridas II*.

veil-piercing purposes: "(1) the owner exercised complete control over the corporation with respect to the transaction at issue and (2) such control was used to commit a fraud or wrong that injured the party seeking to pierce the veil." *Id*. at 416.

Defendants ask the Court to dismiss the Complaints based on what they style "The 'Control and Dominate' Allegations" (Doc. 16 at pp. 6-8), *i.e.* ¶¶ 18, 26, 39, 41 of the ECLIPSE complaint; ¶ 40 of the TANK PUNK Complaint; and ¶ 40 of the PSARA and TANK PUNK complaints. They argue these do not state enough to make out a control and domination case.

Defendants discount all other factual allegations that overwhelmingly support the domination and control of the subsidiary companies. For example, they ignore the allegations in ¶ 30 of the respective Complaints and incorporated EXHIBIT 5, which set out in great detail Geden Lines' restructuring plan. Defendants also ignore the allegations of ¶ 32 of the respective complaints (4:15-cv-01673 and 4:15-cv-01675) and ¶ 33 of 4:15-cv-1645, detailing the transfer of the vessels to new one-ship-companies and the replacement of Geden Lines Ltd. as the holding company of all one-ship-companies by ADVANTAGE TANKERS, LLC,  as pled in the respective complaints at ¶ 34 of the ECLIPSE LIQUIDITY (4:15-cv-1645); and ¶ 33 of PSARA ENERGY (4:15-cv-01673) and TANK PUNK (4:15-cv-01675).

In the circumstances of these arrangements, the transfer of the vessel TARGET, renamed ADVANTAGE ARROW, was not a legitimate arms length transaction, *e.g.* a bona fide sale. It was ownership restructuring designed  to defeat claims of  legitimate creditors as planned out in EXHIBIT 5 (at pp. 1-53).

These circumstances, expressly pled in all three complaints (4:15-cv-01673 and 4:15-cv-01675 at ¶¶ 29-36 and 4:15-cv-1645 at ¶¶ 29-37) cannot be ignored when assessing the adequacy of the pleadings in terms of corporate veil piercing. The guidance of the *Bridas II* court is that, in

making alter-ego-based veil-piercing decisions, the totality of circumstances must be considered and the "laundry lists" (*Id*. at fn. 7) that the courts use in making such determinations are not exclusive (*Id.* at p. 417). Equally important is the principle that each alter-ego case is *sui generis* and revolves about its own facts. *See Talen's Landing, Inc. v M/V VENTURE*, 656 F.2d 1157, 1161, at fn. 6 (5th Cir. 1981), quoting with approval Judge Schwartz in *Bordagain Shipping Co. v. Saudi-American Lines, S.A.*, 1979 A.M.C. 1058, 1071-72 (E.D. La. 1978). In looking at the totality of the circumstances of this case, it is not difficult to discern that Geden Lines entirely dominated and controlled the one-ship-companies that held the vessels and the intermediary corporate entities that acted as holding companies.

Geden Lines' implementation of its restructuring plan involved making fresh loan agreements between the financing banks and the new one-ship-companies as borrowers. These agreements contain cross-security and cross-collateral provisions, as, *e.g.*, in the case of the ADVANTAGE ARROW which is mortgaged for the bank loan obligations of another vessel formerly owned by a Geden Holdings, Ltd.'s wholly owned subsidiary (True Shipping, Ltd.) *i.e.* the former M/T TRUE, renamed "ADVANTAGE AVENUE".  Defendant Advantage Tankers in this arrangement assumed the role of guarantor. *See* BACHA ¶ 20 and DOCUMENT L. Overall control, however, rests now, as it did before, with a member of the Karamehmet family.

Under the same arrangements, based on the evidence of the mortgages and loan agreements, it is clear Defendant GENEL DENIZCILIK NAKLIYATI A.S. a/k/a GEDEN LINES continues to play a major role as the Technical Manager and Commercial Manager. BACHA ¶ 22 and DOCUMENT Q (Loan Agreement Schedule 2).  The address of the "new" owners of the ADVANTAGE ARROW and ADVANTAGE AVENUE continues to be the address of Geden Lines, Ltd. at Buyukdere Cad, Yapi Kredi Plaza A Blok K 1234330 Levent,

Istanbul, Turkey; the same address as that of non-defendant Geden Holdings, Ltd., registered in the records of the Texas Secretary of State, and the same address which was registered with the Texas Secretary of State for the former registered owner of the ADVANTAGE ARROW, *i.e.* Target Shipping, Ltd.  BACHA ¶ 23, DOCUMENTS R, S, BACHA ¶¶ 16, 17, DOCUMENT I**.**

### 3.  **The Fraud Allegations**

Defendants use the same editing and editorializing methodology to deal with allegations of the Complaint under the heading "The Fraud Allegations". Doc. 16 at pp. 8-9. They criticize the Complaint, as, in their opinion, it does not plead fraud, which they contend is an essential element if a court is to disregard the corporate veil on alter-ego grounds.

*Bridas II* clearly holds that a plaintiff who seeks to pierce the corporate veil does not need to prove fraud. The cases "…plainly envision a broader scope that includes the misuse of the corporate form to promote injustice". *Id.* at 417. The courts can pierce the corporate veil of a corporation in order to reach the "alter-egos" in order to prevent manifest injustice to third parties. *Talen's Landing, Inc.* at 1160 (emphasis added).

Defendants contend two paragraphs of the respective complaints, *i.e.* ¶¶ 19 and 38 in the Eclipse Complaint and ¶ 36 in the Psara and Tank Punk Complaints, contain allegations which are "incorrect". Doc. 16 at pp. 8-9.  But Defendants fail to offer even a scrap of a document to contradict them, or any of the allegations in ¶¶ 29-38 of the respective Complaints, and the contents of EXHIBIT 5 that overwhelmingly make a *prima facie* case of  Defendants' abuse of the corporate form. Defendants also argue: that the allegations of the Complaints are "insufficient to state a claim to pierce the corporate veil", *Id*. at p. 9; that it isn't alleged the Geden entities represented the vessels would not be sold or transferred; that the Geden entities gave Plaintiffs a security interest in any of the vessels; or "…that the vessels were sold at below

market prices, or that  payment was not received; or that any aspect of the sale of the vessels was at anything other than an arm's length basis." *Id.* As noted, Plaintiff is not required to prove fraud in order to make a showing of probable cause for veil-piercing in a Rule B attachment case. It suffices to plead abuse of the corporate form to promote injustice. This was clearly set out in the allegations of the respective complaints in ¶¶ 29 through 36 of  4:15-cv-01673 and 4:15-cv-01675 and ¶¶ 29 through 37 of 4:15-cv-1645.

**4.   Not Joining Geden Holdings, Ltd. as a Defendant**

Faithful to their methodology of edit and editorialize, Defendants persist in their interpretative reading of the allegations of the Complaint under the heading "(iii) The Alleged Central Role of Geden Holdings". Doc. 16 pp. 10-11. Thus they assert: "In other words, Plaintiffs allege that Geden Holdings is the central entity controlling the group of companies Plaintiffs allege should be treated as a single entity." *Id.* at p 11. (Emphasis added). Plaintiffs have alleged Geden Holdings, Ltd. is a charterer. Doc. 16 at p. 10. Plaintiffs have pled in ¶ 20 of the respective complaints that "Defendant Geden Lines is owned by non-party Geden Holdings." Doc. 16 at p. 10. No such allegations attributed to Plaintiffs are contained in any of the complaints. Geden Holdings, Ltd., no matter how desperately Defendants want it to be made a defendant, has no role to play in these proceedings. It has no interest in the ADVANTAGE ARROW.

### III. RESPONSE TO DEFENDANTS' ARGUMENT

### A. GEDEN HOLDINGS LTD. WAS PROPERLY NOT NAMED DEFENDANT

**1.   Plaintiff has not pled an alter-ego relationship between Geden Holdings, Ltd. and the Defendants**.

In the foregoing part of this opposition brief, Plaintiffs carefully analyzed the "FACTS" section of Defendants' Memorandum in support of the motion to vacate (Doc. 6 at pp. 4-11)

because Defendants read in the Complaints allegations Plaintiffs have not made. Once again, therefore, it is absolutely incorrect: (1) that Plaintiffs have pled Geden Holdings, Ltd. is an alter-ego of Defendants (Doc. 16 at p. 13); (2) that Plaintiffs have pled Geden Holdings, Ltd. is their contracting counterparty (*Id.*); and (3) that Plaintiffs have alleged that "Geden Lines is owned by Geden Holdings". *Id.* Defendants' motion to dismiss/vacate, to the extent it rests on such misstatements cannot be credited.

### 2. **Defendants may not pierce their own corporate veil to defeat *quasi-in-rem* Rule B jurisdiction.**

Based on the entirely false statement that Plaintiffs have alleged Geden Holdings Ltd. is an alter-ego of the Defendants (Doc. 16 at p.13),  Defendants argue it should have been joined as a party. If Geden Holdings had been made a party, Defendants contend, Plaintiffs' respective suits should be dismissed because the presence of one alter-ego in the district must be taken as the presence of all corporate defendants who are so related to the defendant who is present in the district. (Doc. 16 at pp. 14-15, relying on *Glory Wealth Shipping Pte Ltd. v. Industrial Carriers, Inc.*, 590 F. Supp. 2d 562, 564 (S.D.N.Y. 2008).

Defendants in effect argue Geden Holdings, Ltd. should be regarded as their alter-ego. If their arguments are accepted, the purported presence of Geden Holdings in the District, would be tantamount to their own presence. This would defeat the *sine qua non* condition for the availability of *quasi-in-rem* attachment under Rule B, *i.e.* that the defendant cannot be found in the district. However, a corporation may not pierce its own corporate veil in order to gain a jurisdictional advantage, *e.g.* create diversity of citizenship; *see PayPhone LLC v. Brooks Fiber Communs.*, 126 F. Supp. 2d 175, 179 (D.R.I. 2001).  The rationale underlying this rule is that the alter-ego doctrine is equitable in nature, and it can be invoked only where equity requires the action to assist a third party. *See McCarthy v. Azure*, 22 F.3d 351, 362-363 (1st Cir. 1994*);*

*United Continental Tuna Corp. v. United States,* 550 F.2d 569, 573 (9th Cir. 1977) revd. on other grounds by 425 US 164 (1976); *Am. Water Works Co. v. Util. Workers Local 537*, 2013 U.S. Dist. LEXIS 32112 (W.D. Pa. 2013) at * 8.  Advocating to cast Geden Holdings. Ltd. in the role of their alter-ego, Defendants have transgressed against this principle which, as noted, does not aid them.

### 3.  Defendants are not present in the district by virtue of Geden's registration with the Texas Secretary of States and the appointment of an agent for service of process situated in another federal district.

Defendants argue that "Geden Holdings is present in the district because it has registered as a foreign corporation to do business in Texas, and has appointed an agent for service of process in Texas. To support their application to vacate/dismiss the attachment, Defendants rely on the Declaration of Marc G. Matthews, Doc. 16-1 at pp. 1-5.

The Fifth Circuit Court of Appeals in *Labanca v. Ostermunchner*, 664 F.2d 65 (5th Cir. 1981) noted that Supplemental Rules do not provide guidelines for determining whether a defendant cannot be found in the district - a necessary condition for the availability of the Rule B(1) provisional remedy.

> [H]owever, federal case law has established a two-prong test for determining whether a defendant can be found "within the district." First, can the defendant be found within the district in terms of jurisdiction? Second, can the defendant be found within the district for service of process? If the answer to both questions is affirmative, then the defendant can be found "within the district" for the purposes of Rule B(1), and the process of attachment and garnishment is not available to the plaintiff.

*Id.* at p. 67.

### a. Geden Holdings, Ltd. is not jurisdictionally present in the District

With reference to the first question the Fifth Circuit Court of Appeals has held:

> Absent a federal statute that provides for more expansive personal jurisdiction, the personal jurisdiction of a federal district court is

coterminous with that of a court of general jurisdiction of the state in which the district court sits.

*Submersible Sys. v. Perforadora Central, S.A. de C.V.*, 249 F.3d 413, 418 (5th Cir. 2001).

It follows that in order to determine whether the registration of Geden Holdings with the Texas Secretary of State, as a foreign corporation, is sufficient for the United States District Court to exercise personal jurisdiction over Geden Holdings the question must be answered by Texas law.

A Texas court may exercise jurisdiction over a nonresident if: (1) the Texas long-arm statute authorizes the exercise of jurisdiction; and (2) the exercise of jurisdiction is consistent with federal and state guarantees of due process. *Schlobohm v. Schapiro*, 784 S.W.2d 355, 356 (Tex. 1990). The Fifth Circuit held in *Wenche Siemer v. Learjet Acquisition Corp.*, 966 F.2d 179, 183 (5th Cir. 1992), cert. denied, 506 U.S. 1080 (1993), that exercise of jurisdiction over a nonresident corporation is constitutionally permissible only when the foreign corporation's continuous and systematic contacts create a "general business presence" in the forum state. The court declared that "being qualified to do business...'is of no special weight' in evaluating general personal jurisdiction" and "a foreign corporation that properly complies with the Texas registration statute only consents to personal jurisdiction where such jurisdiction is *constitutionally permissible*." *Id*. at 181, 183 (emphasis added).

In *Conner v. Conticarriers & Terminals,* 944 S.W.2d 405, 416 (Tex. App. – Houston 1997) (emphasis in original), the Court of Appeals held:

> A foreign corporation, however, cannot voluntarily consent to jurisdiction by compliance with the Texas registration statute unless it is actually "doing business" in Texas. By registering to do business, a foreign corporation only potentially subjects itself to jurisdiction.

*See also Asshauer v. Glimcher Realty Trust*, 228 S.W.3d 922, 933 (Tex. App. – Dallas 2007).

Apart from registration with the Texas Secretary of State, Defendants contend Geden Holdings has an address and a telephone number in Houston and this should be a sufficient basis for jurisdiction. Doc. 16, p. 15 at fn 7. However, the question is whether Geden Holdings is actually doing business in Texas and this means whether "the corporation's contacts in Texas were continuous, systematic, and of such a nature that the imposition of personal jurisdiction would not violate "traditional notions of fair play and substantial justice." *Conticarriers & Terminals* at 417.

An on-site visit at Geden Holding's purported business address in Houston, at 4265 San Felipe St., Houston, TX 77027-2920, shows that Geden Holdings does not regularly occupy business premises there, nor does it conduct any business activity there. The office and telephone number in the White Pages extract put forward by the Defendants as proof of Geden's being found in the district is what is commonly known a "virtual office". *See* Declaration of Robert Brooks.  "Something called a "virtual" office carries little weight in establishing jurisdiction, because jurisdiction requires an analysis of a party's real—not virtual—contacts" *Heavy Duty Prods., LLC v. Bandwdth, Inc.*, 2015 U.S. Dist. LEXIS 83111 at *11-12 (W.D. Tex. 2015). *See also Heavy Duty Prods., LLC v. Bandwdth, LLC*, 2015 U.S. Dist. LEXIS 62252 at * 13 (W.D. Tex. 2015). If Geden Holdings, Ltd. has any real business contacts with Texas, which amount to doing business in the state, Defendants have not disclosed them in their motion to vacate.

Accordingly, at the time of the issuance of the process of maritime attachment and garnishment Geden Holdings, Ltd. could not be found in the District for purposes of jurisdiction as Defendants contend.[5]

---

[5] At page Doc 16 p. 14, fn. 6 of its memorandum in support of the motion to vacate, Defendants impugn Plaintiffs' "candor to the Court", as they argue, in failing to "advise the Court that one of the alleged alter-ego companies is in fact present in the jurisdiction".  "Presence in the jurisdiction" in the context or Rule B attachment is a legal issue determined on the basis of rules established by court decisions. Under these rules laid down by the Fifth Circuit

**b. Geden Holdings, Ltd. did not have an agent for service of process in the Southern District of Texas.**

The address of the agent for service of process designated by Geden Holdings, Ltd. with the Texas Secretary of State is C T Corporation System, 1999 Bryan St., Ste. 900, Dallas, TX 75201-3136. (Doc. 16-1 at p. 4). This agent for service of process is located in the Northern District of Texas. It was made clear in *Labanca v. Ostermunchner*, 664 F.2d 65, 68 (5th Cir. 1981) "that Supplemental Rule B(1) allows maritime attachment whenever a defendant cannot be served with process within the particular district, regardless of the presence of an authorized agent in another district of the same state." Accordingly, Geden Holdings, Ltd. could not have been served with process in the Southern District of Texas and Defendants' arguments to the contrary disregard well established jurisprudence of the Fifth Circuit.[6]

**B. THE ATTACHMENT OF THE ADVANTAGE ARROW UNDER RULE B PROCESS RESTS ON WELL-ESTABLISHED PRINCIPLES OF ADMIRALTY LAW AND ON AN INDISPUTABLE SHOWING OF PROBABLE CAUSE**

Defendants seem to believe that piercing of the corporate veil on the basis of an alter-ego relationship is the only way an asset of the obligor in the hands of a third party may be attached under Rule B process of maritime attachment and garnishment. Accordingly, they concentrate their argument on veil-piercing issues. Doc. 16 at pp. 15-23.

When discussing veil-piercing, Defendants' analysis attempts to "impose a mechanistic standard on the fact-intensive inquiry required to determine if the corporate veil must be pierced".

---

Court of Appeals in *Labanca*, Geden Holdings, Ltd. is not present in the jurisdiction. *Id.* at 68. Defendants' unfortunate remarks noted above are legally unsustainable and, therefore, out of order.

[6] It may be that in other jurisdictions, as *e.g.* New York, it is sufficient to have a foreign corporation register with the secretary of state and appoint an agent for service of process in any district, to establish state-wide corporate jurisdictional presence. But this is based on New York statutory law - New York Business Code § 1304 which provides that registration of foreign companies subjects foreign companies to personal jurisdiction in New York. *STX Panocean (UK) Co. v. Glory Wealth Shipping Pte Ltd.*, 560 F.3d 127, 131 (2d Cir. N.Y. 2009)(citing *Seawind Compania, S.A. v. Crescent Line, Inc*., 320 F.2d 580, 583 (2d Cir. 1963)). The law of the Fifth Circuit and Texas law are not the same in this regard. *See Labanca* at 68; *Heidmar, Inc. v. Anomina Ravennate Di Armanento Sp.A. of Ravenna*, 132 F.3d 264, 268 (5th Cir 1998).

*Holborn Oil Trading, Ltd. v. Interpetrol Bermuda Ltd.*, 774 F. Supp. 840, 845 (S.D.N.Y. 1991). It ignores the guidance of the courts that each case is *sui generis* and must be decided in its own context, *Talen's Landing, Inc* at fn. 6; *Jo Tankers, A.S. v. HBG Logistics, L.L.C.*, 2013 U.S. Dist. LEXIS 2576 at * 13 (S.D. Tex. 2013). It also ignores the guidance of *Bridas II* that the list of factors employed by the courts to assess domination and control of the subsidiary by the parent are non-exclusive. *Bridas II* at 417.

### 1. **The fraudulent transfer of the ADVANTAGE ARROW**

A United States District Court sitting in admiralty and dealing with a maritime claim brought under Rule B of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions has the equitable power to make an order of maritime attachment and garnishment directing the attachment of property, tangible or intangible, in the hands of someone other than the Plaintiffs' obligor in the circumstances identified in *Swift & Co. Packers v. Compania Colombiana Del Caribe* 339 U.S. 684, 694-695 (1950). These circumstances, as the Supreme Court of the United States identified them, are "…to protect its jurisdiction from being thwarted by a fraudulent transfer…" *Id.* at 694. There is no requirement for the court to first decide that the one in whose hands the obligor's property is found is an alter-ego of the obligor. The distinction is clearly made in footnote 4 in *Swift & Co.* that allowing an attachment on the grounds of fraudulent transfer is an entirely separate and distinct basis from that of allowing the attachment based on an alter-ego relationship between Plaintiffs' obligor and the possessor of the property. *Swift & Co.* at 689, fn. 4.

The distinction is important for purposes of the case at hand because Plaintiffs' claim is not based solely on an alter-ego relationship of the corporate owner of the ADVANTAGE ARROW and the Plaintiffs' obligors, *i.e.* the bareboat charterers of Plaintiffs' respective vessels.

15

It is also based on the simple proposition that the transfer of ownership title to the ADVANTAGE ARROW was made in order to put her beyond the reach of non-lending creditors of the Defendants. Conceptually, the restructuring and transfer of property transactions identified here do not differ materially from those that were identified in *Swift & Co.*, *i.e.* the fraudulent transfer of property to the detriment of creditors. Plaintiffs would add that the type of "fraud" identified in *Swift & Co.* is not the classic common law tort of fraud, but a fraudulent transfer of property to evade or frustrate creditors. *See, e.g., Holborn Oil Trading, Ltd.* at 847; *Atlanta Shipping Corp. v. Chemical Bank*, 818 F.2d 240, 248 (2nd Cir. 1987) (Citing *Swift & Co.*).

The facts on which Plaintiff relies for its claim that the transfer of the ADVANTAGE ARROW was fraudulent have been pled in the respective complaints quite specifically at ¶¶ 29-40, 45 in 15-cv-1645; ¶¶ 29-40, 45 in 15-cv-01673 (Doc. 1 at pp. 9-12) ; and ¶¶ 29-40 in 15-cv-01675 (Doc. 1 pp. 29-40). EXHBIT 5, common to all three complaints, refers to the ADVANTAGE ARROW with its former name "TARGET" under the various alternative plans of restructuring (*see e.g.* EXHIBIT 5, in 15-cv-01673, Doc. 1-2 at p. 18). The restructuring plan expressly anticipates restructuring of ownership as follows: "There will be **some change in the ownership** in the go-forward entities Newco Alpha and Beta (in order to protect relevant lenders from sister-ship arrests in South Africa-type jurisdictions)". *Id.* at p. 16 (emphasis in original). The owner of the assets (debtor) is clearly identified as Defendant "GENEL Denizcilik Nakliyati A.S. - GEDEN Lines (the "Company")". *Id.* at p. 3. The interest of the beneficial owner in the assets is quite clearly spelled out, and it is none other than "the Company", *i.e.* Defendant "GENEL DENIZCILIK NAKLIYATI A.S." *Id.* at p. 11. The Plaintiffs' interests are also identified in the restructuring plan under the heading "**Group D, Geden Oldco**: 11 Group D vessels make up the residual fleet and are not part of the Company's future". *Id.* at p. 26

(emphasis in original). The objectives of the restructuring plan are also clearly stated as "Ring-fence potential sources of disruption, holdout or nuisance (such as arrests or sister-ships arrests)" *Id*. at p. 41. Finally, with regard to Geden Holdings, Ltd. the authors of the restructuring plan comment: "Provides for re-categorization of exposure from 'Geden Holdings, Ltd,' to Newco where equity is 'in the money' and shareholders are better incentivized to provide ongoing support" *Id*.

Based on the above, the Court does not need to pierce the corporate veil of any of the Defendants on an alter-ego basis or otherwise in order to uphold the attachment of the ADVANTAGE ARROW. Transfer of its ownership to a newly-incorporated entity, which is part and parcel of the same business enterprise, for the purpose of thwarting the admiralty court's jurisdiction, in the circumstances of this case, is sufficient reason to uphold the attachment.

**2. Plaintiff has made a *prima facie* alter-ego case in terms of domination and control.**

**a. Planned corporate and ownership restructuring as domination and control**

Defendants argue the respective complaints are deficient as they do not make a *prima facie* case of the respective Defendants' exercise of domination and control over the corporate owner of the ADVANTAGE ARROW, *i.e.* Advantage Arrow Shipping, LLC. Doc. 16 at pp. 18-21. In Defendants' view, evidently, expropriating Geden Holdings, Ltd. from its ownership interest in 9 one-ship-companies and transferring it to a "newco" – ADVANTAGE TANKERS LLC – is not domination and control. Nor is the transfer of ownership of 9 Aframax tankers from their 9 original one-ship-owning companies to a set of 9 new one-ship-companies controlled by ADVANTAGE TANKERS, LLC. Defendants rely on *Bridas II*, for their alter-ego veil-piercing arguments (Doc. 16 at p. 17) and this Fifth Circuit case contains some useful guidance as to what

may constitute domination and control in the context of a parent-subsidiary corporate relationship.

In *Bridas II*, the dominant, controlling entity was the Government of Turkmenistan. In the case at hand, the dominant, controlling entity is GENEL DENIZCILIK NAKLIYATI A.S. (Geden Lines). In *Bridas II*, the controlled entity, in the joint venture agreement, was the various entities which played the role of the "Turkmenian Party". *Bridas S.A.P.I.C. v. Government of Turkmenistan*, 345 F.3d 347, 351 (5th Cir. 2003) (hereinafter referred to as "*Bridas I*"). In the case at hand, the controlled entity was Geden Holdings, Ltd. in its capacity as a holding company cast in the role of performance guarantor; and the 9 original one-ship-companies, including Target Shipping, Ltd., the former owner of the ex-M/T TARGET, renamed ADVANTAGE ARROW. In both cases, the financial wherewithal of the dominated party was substantially diluted by the dominating party. In discussing the issue of domination and control, the *Bridas II* Court noted "The Government manipulated Turkmenneft legally and economically to repudiate the contract with Bridas and then render it impossible for Bridas to collect damages." *Bridas II* at p. 419. This is not unlike the facts of the case at hand. Here also, Geden Lines manipulated Geden Holdings, Ltd. (it caused it to be expropriated of its assets) and the 9 original one-ship-companies to make it impossible for parties such as Plaintiff to collect damages (since Geden Holdings, as a result of its expropriation, was no longer the legal owner of the vessels). Exercise of domination and control in this manner was clearly pled in the respective complaints, *i.e.* ¶¶ 30-36 in 4:15-cv-1673 and 4:15-cv-1677 and in ¶¶ 30-37 of 4:15-cv-1645 and EXHIBIT 5 thereto. Greater domination and control than the expropriation of a corporation by requiring it to transfer its assets to another entity is difficult to conceive.

### b.   Domination and Control based on other criteria

Defendants refer to one of the non exclusive "laundry lists" that guide courts when making decisions about assessing alter-ego relationships between parent and subsidiary companies. *Oxford Capital Corp. v. U.S*., 211 F.3d 280, 284 at fn. 2 (5th Cir. 2000) ("Oxford Capital").  Doc. 16 at pp. 18-21. It may be useful to also consider these factors in assessing the allegations of the respective complaints in this regard in this case.

**(i) the parent and subsidiary have common stock ownership**;

There is no doubt in the case at hand, the respective parent companies and the respective subsidiaries have had common ownership. Geden Holdings Ltd., in the prospectus for the failed initial public offering it had launched in 2012, identified the Karamehmet family as its 100% owner. Complaint EXHIBIT 4 at 4: 15-cv-1673, Doc. 1-1 at p. 68. In the same prospectus Geden Holdings, Ltd. is identified as the owner of the vessels owned by the 9 one-ship-companies. *Id.* In the Organization chart which represents the ownership structure after restructuring, Advantage Tankers is the 100% owner of the same renamed vessels and it is 85% owned by Mrs. Gulsun Nazli Karamehmet Williams and 15% by Ali Tugrul Tokhoz. Complaint EXHIBIT 9, 15-ca-1673, Doc. 1-1 at p. 65.  The beneficial owners of the Geden Fleet were and are members of the Karamehmet family – through Geden Lines.

**(ii) the parent and subsidiary have common directors or officers;**

While little is known about the newly created one-ship-companies which own the Advantage Tankers Fleet, there is no question that the corporate owner of the ADVANTAGE ARROW that preceded Advantage Arrow Shipping, LLC, *i.e.* Target Shipping, Ltd., had the same corporate officers and directors as Geden Holdings, Ltd., *i.e.* the parent and subsidiary had common directors or officers; Mehmet Mat, Ali Tugrul Tokhoz and Mehmet Bulent Ergin, as it is plainly shown in BACHA at ¶¶ 16, 17, 18, and DOCUMENTS I and J. It should be also noted

that in the loan agreement documents, Ali Tugrul Tokhoz is shown as 15% equity holder of the restructured Geden fleet held through holding company Advantage Tankers, Ltd., *see e.g.* 4:15 – cv-0157, Doc. 1-2 at p. 65; and Mehmet Mat is shown as an authorized officer of both Advantage Tankers, LLC and Advantage Arrow Shipping LLC. *See* BACHA at ¶ 21, DOCUMENT N.

**(iii) the parent and subsidiary have common business departments;**

Under the respective loan agreements and mortgages following restructuring, the business of the Advantage Tankers LLC fleet continues to be under the commercial and technical management of GENEL DENIZCILIK NAKLAIYATI A.S. (Geden Lines) which, accordingly, shares with the respective one-ship-companies the same operating departments. BACHA ¶ 22, DOCUMENTS O, P, and Q. The same business address[7] is also shared by Advantage Tankers LLC, the one-ship-companies that own them, and GENEL DENIZCILIK NAKLAIYATI A.S., *i.e.* Buyukdere Cad. Yapi Kredi Plaza A Block K. 12. 34330 Levent Istanbul Turkey. BACHA 23, DOCUMENTS R and S.

**(iv) The parent and subsidiary file consolidated financial statements**;

The restructuring plan upon which the new ADVANTAGE TANKERS structure was built (EXHIBIT 5, 4:15-CV-01673, Doc. 1-2 at p. 1- 53) is based entirely on the consolidated accounts of GENEL DENIZCILIC NAKLIYATI A.S. (Geden Lines), *Id.* at pp. 3, 11, and *passim*.  Moreover, Geden Holdings, Ltd. has always dealt with the accounts from the operation of the vessels of its wholly owned subsidiaries on a consolidated basis, as is shown from the Geden Line financial condition and process report which is attached to BACHA declaration ¶ 24 as DOCUMENT T.

---

[7] "[C]ommon office space, address and telephone numbers of corporate entities" are also consider by the courts in making  corporate veil piercing decisions.  *MAG Portfolio Consult v. Merlin Biomed Group*, 268 F.3d 58, 63 (2nd Cir., 2000), *cited in Bridas I* at p. 359.

**(v) the parent finances the subsidiary;**

There is historical evidence that Geden Holdings, Ltd., when it was a parent company of Defendants' tanker fleet, paid the obligations of the subsidiaries. Thus in BACHA, DOCUMENT T at pp. 4-5 thereof, there is clear reference to Geden's payment of an outstanding debt owed to a shipyard in respect of the vessel ROYAL in the amount of 4.5 MILLION. Under the Loan Agreement for the financing of the ADVANTAGE ARROW, Advantage Tankers is bound and obligated as a guarantor of the loan obligations and is a party to the loan agreement in this capacity. BACHA ¶ 21, DOCUMENT O. The parent company's status as guarantor of the subsidiary's obligations is one of the factors that courts take into account in considering domination and control. *Bridas II* at p. 418.

**(vi) the parent caused the incorporation of the subsidiary;**

The Defendants' restructuring plan (EXHIBIT 5) envisions the creation of "Newcos", *i.e.* new corporate entities to become the successor corporate entities to the business operated by Geden Lines. 4:15-cv-01673, Doc. 1-2, at p. 8; *see also* 4:15-cv-01673, Doc. 1-2 at pp. 17-25. It is a fair inference the "Newcos" of the Advantage Tankers LLC group did not come into being spontaneously. They were organized by Geden Lines to implement restructuring.

**(vii) the subsidiary operated with grossly inadequate capital;**

The dire financial circumstances of Defendant Geden Lines are quite clearly summarized in its restructuring plan: "Earnings from vessels financed by banks have fallen $45m short of debt service in the period 2011-2012. Similarly bareboat vessels have fallen $43m short of obligations in the period 2011-2012. With above measures and actions, available cash is projected at only c. $23.8m including retention at the end of March and c. $7.5 in restricted cash deposits." 4:15-cv-01673, Doc. 1-2 at p. 11. With specific reference to bareboat chartered vessels,

such as those of Plaintiffs', inability to pay charter hire was a chronic condition continuing to the present time which is the reason for the attachments in the present action.

**(viii) the parent pays salaries and other expenses of the subsidiary;**

This is a matter of the internal relationship of parent and subsidiary about which Plaintiffs have no information.

**(ix) the subsidiary receives no business except that given by the parent;**

As noted in the foregoing, Geden Lines is, under the terms of the respective loan agreements, the commercial manager of the Defendants. It is Geden Lines that charters the vessels and decides how they are employed. All of the vessels in which the equity is held by ADVANTAGE TANKERS are required to be employed under 5 year time charter to Shell Western Supply and Trading of Barbados. BACHA ¶ 25, DOCUMENT P.

**(x) the parent uses the subsidiary's property as its own;**

From both the contents of the restructuring plan and its eventual implementation as evidenced by the respective loan agreements, it is clear that the business enterprise operated by the defendants was managed as a fleet of tankers under the central management of Geden Lines, and is now operating, again, under the central management of Geden Lines in its capacity as technical and commercial manager. The profit and loss from these operations has been treated as profit and loss of Geden Lines, as shown in the restructuring plan, *i.e.* EXHIBIT 5 to the respective Complaints.

**(xi) the daily operations of the two corporations are not kept separate**

As noted in the foregoing, under the respective loan agreements and mortgages, the commercial and technical management of the respective one-vessel-owning-companies is required to be performed by GENEL DENIZCILIK NAKLAIYATI A.S., which, accordingly,

22

shares the same operating departments. BACHA ¶ 22, DOCUMENTS O, P, and Q. The place where the commercial and technical management is performed is at the same common business address shared by Advantage Tankers LLC, the one-ship-companies it owns, and GENEL DENIZCILIK NAKLAIYATI A.S., *i.e.* Buyukdere Cad. Yapi Kredi Plaza A Block K. 12. 34330 Levent Istanbul Turkey BACHA ¶ 23, DOCUMENT S.

**(xii) the subsidiary does not observe corporate formalities.**

Plaintiff does not have specific information about this item.

On the balance, when applying a multi-factor test to determine whether the subsidiary corporate defendants were dominated and controlled by the Karamehmet – Geden Lines interests, it is clear that they were.

### 3. Plaintiff has made a *prima facie* alter-ego case in terms of misuse of the corporate form to commit injustice.

Defendants' contend Plaintiffs have not made a *prima facie* case justifying the attachment of the ADVANTAGE ARROW because they have not, in so many words, alleged fraud. Their argument confuses "fraud" in the common law tort sense and "fraudulent transfer", in the equity jurisprudence sense. Thus, Defendants argue that Plaintiffs' have filed "(a complaint that sounds in contract, not fraud)" Doc. 16 at p. 21, and "Plaintiffs rely on nothing more than the conclusory allegation that the sale of the vessels was "fraudulent corporate restructuring and asset allocation. This is insufficient to make out a fraud claim, even if the specificity requirements of Federal Rule of Civil Procedure 9(h) are ignored". *Id.*

Defendants are mistaken. Plaintiffs have not filed a suit to recover damages based on defendants' fraud. Rather, Plaintiffs' claims of fraud actually serve to support the action for piercing the corporate veil, and do not state a separate cause of action. Plaintiffs seek to secure admiralty claims based on a scheme to transfer assets fraudulently in an attempt to defraud

creditors and this is part and parcel of a suit to pierce the corporate veil. *See e.g. Holborn Oil Trading, Ltd.* at 847. Nonetheless, Plaintiffs do not need to prove fraud in order to prevail on an alter-ego-based veil-piercing claim. The court decisions hold that the test may be met through an "illegal act" or "misuse of the corporate form" *Bridas II* at 417.

What is astounding in Defendants' argument is that it seeks to justify as lawful and proper the restructuring of the Geden group of companies whereby they were stripped of their assets that were transferred to "newcos" so that non-lending creditors would be cut off from recourse against assets held by companies which were thus "ring-fenced". Defendants contend this premeditated preemptive action was taken in concert with the respective financing banks which in any event would have prevailed even if there had been no restructuring, had Plaintiffs made their Rule B attachments, and the respective banks had intervened and asserted their preferred mortgages. Doc. 16 at pp. 22-23. Defendants' argument amounts to a virtual admission that Defendants engaged in the conduct complained of, but it really shouldn't matter because claimants would have been primed by the mortgagee banks anyway. So, Defendants' argument appears to be that in implementing the restructuring plan, the financing banks simply exercised their rights as mortgagees privately, preemptively, and extra-judicially. Whether it is lawful for ship mortgagees to do such things is for another day and another case to decide, but no mortgagee bank has intervened in these suits.

*Bridas II* involved a closely analogous situation. In that case plaintiff sought to pierce the corporate veil of a company owned by Turkmenistan in order to impose liability on the government of Turkmenistan itself. Plaintiff had a joint venture agreement with a state owned entity. The government of Turkmenistan repeatedly manipulated the state-owned entity to diminish its ability to respond to an award of potential damages, the Court held that "[T]he

24

Government's manipulation of Turkmenneft to prevent Bridas from recovering any substantial damage award satisfies the 'fraud or injustice' prong. *See Patin v. Thoroughbred Power Boats, Inc.*, 294 F.3d 640, 648-49 (5th Cir. 2002) (piercing the corporate veil where a company transferred its operations from one party to another to escape liability)." *Bridas II* at 417. It is respectfully submitted that the conduct of the Defendants, in the restructuring of corporate ownership and wholesale transfer of assets, particularly the stripping of the assets off Plaintiffs' performance guarantor is indistinguishable from the conduct of the government of Turkmenistan in the Bridas cases. Such conduct satisfies the requirement of an act of injustice that warrants piercing the corporate veil.

## CONCLUSION

For the foregoing, and what might be added at the Supplemental Rule E(4)(f) hearing, which Plaintiffs respectfully request, the Defendants' motion requesting the Court to vacate the Orders authorizing process of maritime attachment and garnishment and to dismiss the respective Verified Complaints should be denied, and Plaintiffs should have such other and further relief that the Court deems just, equitable, and proper.

Respectfully submitted,

Date:   August 20, 2015                          CHALOS & CO, P.C.
        Houston, TX

                        By:     /s/George A. Gaitas
                                George A. Gaitas
                                State Bar No. 24058885
                                Federal Bar No. 705176
                                Briton P. Sparkman
                                Federal Id No. 1148116
                                7210 Tickner Street
                                Houston, Texas 77055
                                Telephone: 713-936-2427
                                Fax: 866-702-4577
                                E-mail:gaitas@chaloslaw.com
                                        bsparkman@chaloslaw.com


                                *Attorneys for Consolidated Plaintiffs*
                                PSARA  ENERGY,  LTD.  and  TANK
                                PUNK, INC.


                        **<u>CERTIFICATE OF SERVICE</u>**

        I hereby certify that the foregoing pleading was served on all counsel of record in this matter by and through the Court's cm/ECF System on August 20, 2015.


                                /s/ George A. Gaitas
                                George A. Gaitas