## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| **PSARA ENERGY, LTD.,** | § | |
| **Plaintiff,** | § | |
| **v.** | § | **C.A. NO. 4:15-CV-01673** |
| | § | |
| **SPACE SHIPPING, LTD.; ADVANTAGE** | § | |
| **ARROW SHIPPING, LLC; GENEL** | § | |
| **DENIZCILIK NAKLIYATI A.S. A/K/A** | § | |
| **GEDEN LINES; ADVANTAGE TANKERS,** | § | |
| **LLC; ADVANTAGE HOLDINGS, LLC; and** | § | |
| **FORWARD HOLDINGS, LLC** | § | |
| | § | |
| **Defendants.** | § | |

| | | |
|---|---|---|
| **TANK PUNK, INC.,** | § | |
| **Plaintiff,** | § | |
| **v.** | § | **C.A. NO. 4:15-CV-01675** |
| | § | |
| **SPIKE SHIPPING, LTD.; ADVANTAGE** | § | |
| **ARROW SHIPPING, LLC; GENEL** | § | |
| **DENIZCILIK NAKLIYATI A.S. A/K/A** | § | |
| **GEDEN LINES; ADVANTAGE TANKERS,** | § | |
| **LLC; ADVANTAGE HOLDINGS, LLC; and** | § | |
| **FORWARD HOLDINGS, LLC** | § | |
| | § | |
| **Defendants.** | § | |

## ADVANTAGE DEFENDANTS' EVIDENTIARY BRIEF

The Advantage Defendants, making their appearance specially and not generally and pursuant to Federal Rule of Civil Procedure ("F.R.Civ.P.") Supplemental Rule for Admiralty or Maritime Claims E(8), and expressly reserving all defenses, particularly as to venue, personal jurisdiction, and subject matter jurisdiction, respectfully submit this Evidentiary Brief pursuant to the Court's January 29, 2016 Order and in further support of the Advantage Defendants' Motion to Dismiss. For ease of reference, Defendants use and incorporate herein the same defined terms as in the Motion.

## I.  PROCEDURAL BACKGROUND AND UPDATE

The only complaint currently before the Court is Plaintiffs' Proposed Supplemental and Amended Verified Complaint (the "Proposed Amended Complaint"), filed November 20, 2015 and bearing docket numbers 4:15-cv-1673 and 4:15-cv-1675 (Docket 33-1). The initially-filed complaints (in addition to the Verified Complaints in the previous dockets, the Verified Complaint in docket 4:15-cv-1645 and collectively, the "Initial Complaints") are or will be dismissed due to the posting of security in the underlying arbitrations in England.

Although the only matter that is pending is the Proposed Amended Complaint, the veil-piercing allegations are the same as those in the Initial Complaints and Plaintiffs seek to attach the security given in respect of the Initial Complaints in the amount of $2,635,829. Rather than delay discovery pending the

Proposed Amended Complaint, the parties conducted discovery as ordered by the Court following the Advantage Defendants' Motion to Dismiss the Initial Complaints.

In compliance with the Court's Order dated October 23, 2015 (Docket 30), the parties conducted discovery on Plaintiffs' jurisdiction and alter ego allegations in the Proposed Amended Complaint. In addition to the production of thousands of pages of documents, the Advantage Defendants deposed Ms. Despoina Bacha on December 9, 2015 (the "Bacha Depo."), the employee of Plaintiffs who verified the four complaints filed before the Court, and Plaintiffs deposed Ali Tugrul Tokgoz on January 13, 2016 (the "Tokgoz Depo."), Ms. Nazli Williams on January 14, 2016 (the "Williams Depo."), and Mr. Mehmet Mat on January 15, 2016 (the "Mat Depo."). Plaintiffs also served a subpoena on non-party Geden Holdings' Houston agent and on non-party CIT Finance LLC. (Declaration of Neil A. Quartaro, dated February 8, 2016 ("Quartaro Dec.") Exs. 5 & 6).

The Proposed Verified Complaint is fatally deficient, and the factual record developed during discovery proves that it cannot be amended in good faith. Leave to file the amended Proposed Amended Complaint should be denied and the Advantage Defendants awarded their costs.

## II.     PLAINTIFFS FAIL TO CARRY THEIR BURDEN

The discovery process was useful for more clearly identifying Plaintiffs' claims, which turn out to have little support.   At base, Plaintiffs complain that certain wholly-owned subsidiaries of Geden Holdings sold the following vessels to certain wholly-owned subsidiaries of Advantage Tankers (the "New Advantage Owners"): Advantage Spring, Advantage Solar, Advantage Start, Advantage Award, Advantage Avenue, Advantage Arrow, Advantage Summer, Advantage Sun, Advantage Atom, Advantage Anthem, and Advantage Sky (the "Vessels"). (Proposed Amended Complaint ¶ 36).

Recalling that piercing the corporate veil is an extraordinary remedy, and that Plaintiffs must show "reasonable grounds" for obtaining an attachment, it is clear that there is insufficient evidence to support Plaintiffs' allegations or to grant an attachment. Moreover, Plaintiffs' veil-piercing legal theory is outside of precedent as it is not an attempt to pierce the veil of a parent and subsidiary. Instead, Plaintiffs are trying to pierce the veils of two entirely separate business structures, largely based on innuendo and with no real evidence that the companies are being operated as a common business venture.

## III.   FACTS

Far from the "sinister" plan painted by Plaintiffs, the facts developed during discovery in this case show that non-party Geden Holdings, like many ship owners

and operators, began to experience financial difficulties when the shipping market crashed starting in 2008. Geden Holdings sold its entire fleet of ships, including the Vessels, when a series of restructuring attempts failed. The Advantage Defendants, who are not controlled by Geden Holdings or its owner, purchased the Vessels in an arm's-length transaction at market prices. The Advantage Defendants thus paid cash at market prices for the Vessels, and were supported by debt provided by new lenders.

Unable to overcome these awkward facts, Plaintiffs instead try and blur the lines between the vessel owner (and non-party) Geden Holdings, and the technical manager Genel Denizcilik Nakliyati A.S. ("Genel"). Once this is appreciated, Plaintiffs' allegations fall apart because the original owner of the Vessels and the entity that is indebted to Plaintiffs, Geden Holdings, is not a defendant. Since the facts demonstrate that Plaintiffs' claims are doomed to fail, the Proposed Amended Complaint can be safely dismissed.

(i) *The Evidence Shows The Vessels Were Simply Sold Following Unsuccessful Restructuring Attempts*

Plaintiffs allege that the attempted restructuring of Geden Holdings and its subsidiaries and the creation of the Advantage Defendants are part of the same transaction. The evidence and testimony reveals that this is not the case. Instead, Geden Holdings began experiencing financial difficulties during the unprecedented collapse of the shipping market commencing in 2008. (Mat Depo. p. 34). Initially,

losses were stemmed with shareholder contributions, but this proved insufficient. (Id., p. 36). Geden Holdings then explored raising capital by spinning off the tankers it owned and issuing debt on the Norwegian bond market. (Id. p. 35-36; Proposed Amended Complaint Ex. 3, p. 3-6). A new corporate vehicle, Universal Maritime, was created for this purpose. (Proposed Amended Complaint Ex. 3, p. 3-6). Unfortunately, there was insufficient interest for a bond issuance and the plan was never consummated. (Mat Depo. p. 36).

Geden Holdings then approached its lenders to restructure its debt payments. (Tokgoz Depo. p. 43). Geden Holdings' lenders required an independent business review to be conducted by a financial advisor, Alix and Partners. (Id. p. 43-44; Mat Depo. p 36-37). This resulted in the "Project Hermitage Restructuring" plan (the "Alix Plan"), which contained a series of restructuring proposals. (Proposed Amended Complaint Ex. 4). However, the Alix Plan was not accepted by all of Geden Holdings' lenders and was abandoned. (Tokgoz Depo. p. 44; Mat Depo. p. 37).

The rejection of the Norwegian bond offering and the Alix Plan left Geden Holdings with one option: liquidate assets and pay down debt. (Tokgoz Depo. p. 44; Mat Depo. p. 37). Geden Holdings eventually liquidated its entire fleet, selling 50 to 60 ships over the past 5 or 6 years. (Tokgoz Depo. p. 45). Among these ships were the Vessels, which could command a strong market price under certain

sale conditions because they were under long-term charter to Shell, but at a variable rate. (Tokgoz Depo. p. 71; Mat Depo. p. 40). Two of the senior executives at Geden Holdings, Togrul Tokgoz and Mehmet Mat, were very familiar with the Vessels and had the experience and expertise to continue running them, if a buyer could be found. (Id.). Lacking the capital to start an enterprise that could buy the Vessels, Mr. Tokgoz approached Ms. Williams and proposed forming a new company and purchasing the Vessels. (Tokgoz Depo. p. 71; Williams Depo. p. 12).

Initially, this plan took the form of a joint venture with two private equity firms, "Centerbridge" and "Northern Shipping Funds". (Tokgoz Depo. p. 68-69; Mat Depo. p. 41). Mr. Tokgoz testified that Ms. Williams was seeking a joint venture partner because the variable rate charters for the Vessels meant that her investment was exposed to market forces and she didn't want the whole risk. (Tokgoz Depo. p. 71, 73). The parties went as far as creating a joint venture vehicle, Future Holdings LLC, but were unable to come to final agreement and so the joint venture failed.[1] (Tokgoz Depo. p. 69-70; Mat Depo. p. 41).

Mr. Tokgoz, in a last ditch effort to salvage the value of the Vessels and charters, approached Shell about modifying the terms of the charters for the Vessels if a new owner could be found. (Tokgoz Depo. p. 70; Mat Depo. p. 42).

---

[1] Plaintiffs seemed to find great meaning in the creation of Future Holdings LLC, but in reality it was merely the planned joint venture vehicle for a partnership that never materialized. (Williams Depo. p. 67).

Shell agreed that it would charter the Vessels from the New Advantage Owners, but under hire terms that provided a floor in exchange for sharing the benefit of any market upside. (Id.). The financial result of this amendment was that the initial investment of equity in a new owner for the Vessels would not be at risk because a minimum cash flow was guaranteed. (Id.).

The possibility of an improved minimum cash flow was presented to Ms. Williams, who met with representatives of Shell as part of her efforts to establish the Advantage companies. (Williams Depo. p. 32, 34-35; Tokgoz Depo. p. 70; Mat Depo. p. 42). On the basis of this, Ms. Williams elected to provide the entire equity investment needed to launch Advantage Tankers. (Tokgoz Depo. p. 74). There is no real doubt that Ms. Williams actually provided these funds, as she has produced contemporaneous bank records showing the transfer of approximately $200,000,000 from accounts in her name to the New Advantage Owners to finance the purchase of the Vessels and the initial operation of the company. (Williams Depo. 57-58; Quartaro Dec. Ex. 3).

(ii) *Plaintiffs' alter ego allegations rest on blurring the lines between Geden Holdings, the former owner of the Vessels, and Genil Denizcilik Nakliyati A.S. ("Genel"), the technical manager of the Vessels.*

The testimony was also clear that Plaintiffs' case depends on blurring the lines between Geden Holdings, a non-party that is central to Plaintiff's allegations, and Genel, the company that provided technical management services to the Vessels. The Court is respectfully urged to take note of this, as non-party Geden

Holdings is the vessel owning entity, while Genel simply provides technical management services.

By way of background, Genel provides technical management services to the Vessels and to other vessels owned by various parties. (Declaration of Ali Togrul Tokgoz, dated February 8, 2016 ("Tokgoz Dec."), ¶ 3) (attached as Exhibit A). Specifically, Genel provides a "turn-key" solution to ship owners that wish to outsource the day-to-day management of ships, such as arranging and paying crew, maintaining the vessels, obtaining insurance and supplies, and other specialized functions. (Id., ¶ 4). Genel does not own vessels, and provides only third-party management services, including to publicly-traded companies and to the Advantage Defendants. (Id. ¶ 5). The Vessels are tankers, and Genel has built a reputation as an experienced and competent technical manager and manages numerous vessels under charter to the largest oil companies in the world, colloquially referred to as the "oil majors." (Tokgoz Dec. at ¶6).

(iii)    *Plaintiffs' Testimony Was So Evasive As To Render it Incredible*

Plaintiffs' representative, Ms. Bacha, was deposed by video on December 9, 2015. Ms. Bacha was uncooperative and consistently sought to evade the questions asked. In many cases, rather than answer a direct question she simply repeated her theory of the case. Since the entire deposition of Ms. Bacha is or will be provided to the Court, the Advantage Defendants respectfully refer the Court to

this document, a brief perusal of which will reveal that nearly every question posed to Ms. Bacha needed to be asked several times in the face of evasive non-answers. (*See*, Bacha Depo.).

## IV.  ARGUMENT

The overarching approach to Plaintiffs' claims should be one of skepticism and caution because Plaintiffs allege they are entitled to pierce the corporate veil of the defendants.  The alter ego doctrine, like all variations of piercing the corporate veil doctrine, is reserved for exceptional cases.  (*In re Multiponics*, Inc., 622 F.2d 709, 724–25 (5th Cir. 1980)) and Plaintiffs bear the burden to show that there are reasonable grounds for the requested attachment (*See, e.g*., *A. Coker & Co., Ltd. v. Nat'l Shipping Agency Corp., et al.*, 1999 WL 311941, *1 (E.D. La. May 17, 1999).

**1.  Plaintiff Should Not Be Allowed To 'Relate-Back" the Proposed Amended Complaint**

The underlying facts alleged in the Proposed Amended Complaint are very different than those alleged in the Initial Complaints.  The Initial Complaints seek security for allegedly unpaid charter hire. (*See*, Verified Complaints filed under dockets 4:15-cv-1673, 4:15-cv-1675, and 4:15-cv-1645).  The Proposed Amended Complaint seeks damages allegedly related to the condition of the ocean-going vessel SPIKE when she was re-delivered to Plaintiffs on August 7, 2015 at the end of a five-year charter.   (Proposed Amended Complaint ¶¶12-18).   However,

Plaintiffs now seek as security the funds attached pursuant to Rule B under the allegations of the Initial Complaints, essentially arguing that the principle of relation-back should apply here. In this case, which involves the *ex parte* attachment of assets, the Court should not permit the cause of action in the Proposed Amended Complaint, which did not even exist when the Initial Complaints were filed, to relate back to the time when the Initial Complaints were filed. Instead, the security should be released and Plaintiffs made to re-file <u>if</u> they can demonstrate a cognizable case.

## 2. <u>The Failure to Join Geden Holdings is Fatal to Plaintiff's Case</u>

Geden Holdings is a key link in Plaintiffs' alleged chain of alter ego entities, but is not named in these proceedings. The reason for this is simple: Geden Holdings is "present" for Rule B purposes in the Southern District of Texas ("<u>SDTX</u>"). Plaintiffs did not conduct any discovery on this point, and so the evidence conclusively shows that Geden Holdings has: (1) registered as a foreign corporation with the Texas Secretary of State; (2) a telephone number in the SDTX; (2) an office in the SDTX; (3) owned or controlled ships that have called in the SDTX; and (4) a registered agent for the service of process in the SDTX. (*See* Declaration of Marc Matthews dated August 4, 2015, Docket 16-1; Quartaro Dec. Ex. 4). In fact, Plaintiffs relied on Geden Holdings' registered agent in Houston to serve a subpoena in this very case. (Quartaro Dec. Ex. 6).

According to Plaintiffs, the alleged chain of alter ego companies runs through Geden Holdings, starting with Spike Shipping (Bacha Depo. p. 27), owned by Geden Lines (Id.), which plaintiffs allege is owned by Geden Holdings (Id.). According to Ms. Bacha, Geden Holdings is owned by the Cukurova Group (Bacha Depo. p. 28) which is then allegedly owned by Ms. Williams (Id.). Geden Holdings is the entity that Plaintiffs allege owns all of the vessels in the fleet, including the Vessels. (Bacha Depo. p 63).

Interestingly, Ms. Bacha's testimony describing the ownership structure of the Geden companies was wildly at odds with the supposedly verified Initial Complaints and the Proposed Amended Complaint, which do not allege that Ms. Williams has any ownership interest in any of the Geden companies. (Proposed Amended Complaint ¶ 25). In any event, other than speculation, there is no evidence that Ms. Williams now has or ever had an ownership interest in any of the Geden companies.

Accordingly, Plaintiffs are mistaken that Ms. Williams has any ownership interest in any of the Geden companies (and have produced no evidence in this regard, though it has been requested). (Bacha Depo. p. 37-38). Instead, Geden Holdings and Genel are both indirectly owned by Mr. Emin Karamehmet through holding companies. (Tokgoz Depo. p. 37-39). This is a critical problem for

Plaintiffs because it shows there is no common ownership of the Geden companies and the Advantage Defendants, a key element in the alter ego enquiry.

No matter which corporate structure is used, Geden Holdings owned the vessels which Plaintiffs allege were then improperly transferred to the Advantage Defendants. (*See* Quartaro Dec. Ex. 1). The failure to name this company as a defendant is simply a ploy to maintain the fiction that none of the alleged alter egos are present in the SDTX, and that Rule B is thus available to Plaintiffs. The failure to join an indispensable party when obtaining *ex parte* relief, or even to advise the Court of this omission, should be roundly rejected and the Proposed Amended Complaint dismissed.

Plaintiffs have partially responded to this argument by alleging that Geden Holdings' Houston office was not an agent for service when the Initial Complaints were filed. The Court need not reach that issue however, because there is no dispute that Geden Holdings had a registered agent in the SDTX before November 20, 2015, when the Proposed Amended Complaint was filed. (*See* Quartaro Dec. Ex. 4). In other words, if Geden Holdings is a necessary party, then Plaintiffs could not swear that none of the alleged alter ego entities were not present in the SDTX when the Proposed Amended Complaint was filed.

### 3. **Plaintiffs Fail to Carry Their Burden to Show Alter Ego**

In order to carry their burden to make out an alter ego case, Plaintiffs must show that: "(1) the owner exercised complete control over the corporation with respect to the transaction at issue and (2) such control was used to commit a fraud or wrong that injured the party seeking to pierce the veil." *Bridas S.A.P.I.C. v. Government of Turkmenistan*, 345 F.3d 347, 359 (5th Cir. 2003).

Plaintiffs cannot show that a common parent dominates and controls the Advantage Defendants and the Geden Defendants because Plaintiffs fail to name an essential link in the chain, Geden Holdings, and because few if any of the applicable factors have been demonstrated. Plaintiffs also cannot show that the sale of the Vessels wrongfully disadvantaged Plaintiffs in any way. Since Plaintiffs cannot meet either of the requirements of *Bridas I*, the Proposed Amended Complaint should be dismissed.

### *(i)* *Plaintiffs Cannot Show Domination and Control*

It must be recognized that Plaintiffs' allegations are in uncharted waters because they do not fit in the test established by the Fifth Circuit in *Oxford Capital Corp. v. U.S.* (211 F.3d 280, 284 n.2), a result of the failure to name the alleged parent, Geden Holdings. As a result of this omission, the normal factors do not apply because there are no alleged common owners of Geden Holdings and the Advantage Defendants. Second, even ignoring the legal gymnastics required to

overcome this hurdle, the evidence shows that few if any of the factors are supported by the evidence.

The non-exclusive list of factors to be considered in an alter ego enquiry are more fully discussed in the Motion to Dismiss, but in summary require Plaintiffs to show that the alleged alter egos have factors such as common stock ownership, common officers and directors, common business departments, consolidated financial statements, and that the parent finances the subsidiary. Other important elements of an alter ego case are that the parent financed the subsidiary, and caused its incorporation, that the subsidiary operated with grossly inadequate capital, that the parent pays the salary and other expenses of the subsidiary, sends it business, uses the subsidiaries' property as its own, that the operations are not kept separate, and that the subsidiary does not observe corporate formalities.

Ms. Bacha's testimony clearly shows that the supposedly verified Proposed Amended Complaint relies on nothing more that conclusory statements and supposition regarding these factors:

Q: And are you aware of any – at any time Geden and Advantage filing consolidated financial statements?

A: No, I don't know this. I don't know.

Q: Okay. Thank you. Do you have any evidence that Geden provides finances to any – Geden Holdings provides financing to any Advantage company or to Forward Holdings?

A: I don't know that. . . .

(Bacha Depo. p. 42-43).

Ms. Bacha went on to admit (after being extensively pressed) that she did not know who was responsible for incorporating the Advantage Defendants (Bacha Depo. p. 47-48), and that she did not know of any instances where Geden Holdings referred business to and Advantage companies. (Bacha Depo. p. 50-51). Ms. Bacha further admitted that she had no evidence that the Advantage Defendants failed to observe corporate formalities (Bacha Depo. p. 53).

Even shoehorning Plaintiff's allegations into the applicable test shows that the only allegations supported by any evidence are that Genel, Geden Holdings and Advantage have a common CEO and CFO and that Genel's role as the technical manager of the Vessels means that it could be argued that it is somehow a common business department. There is no alleged or demonstrated common stock ownership, Geden and Advantage do not file consolidated financial statements, neither Geden nor Genel financed the Advantage Defendants, and there are no allegations that Advantage operates with grossly inadequate capital. (Bacha Depo. p. 34-54).

*(ii)* *There is No Allegation or Evidence that the Sale of the Vessels Wronged Plaintiffs*

In order to prevail on the veil piercing argument, Plaintiffs must also show that the domination and control of the alter ego "was used to commit a fraud or wrong that injured [Plaintiffs]". *Bridas I,* 345 F.3d 347, 359 (5th Cir. 2003). In

this case, Plaintiffs do not allege that they have any kind of security interest in the Vessels, and Plaintiffs testified that they have never believed they had any such interest:

Q: At any time, did plaintiff have a security interest in any of the [Vessels]?
A: . . .No.
(Bacha Depo. p. 71).

Nor did Plaintiffs have any expectation that the Vessels would <u>not</u> be sold:

Q: [Did Plaintiffs] have an expectation that any of the [Vessels] would not be sold by Geden during the pendency of the charter [of Plaintiffs' vessel]?

A: To have any expectations that not to be sold, no, we didn't have this kind of expectation.

(Bacha Depo. p. 72).

There is thus no allegation or evidence that Plaintiffs had any interest in the Vessels, or that Geden made any representation that the Vessels were security for Plaintiffs' claims. This is another fatal defect in Plaintiff's claims because it means that Plaintiffs cannot show they were disadvantaged by the sale of the Vessels.

Even reading Plaintiffs' allegations charitably, Plaintiffs at least have to show that the transfer of the Vessels from the Geden Holdings Owners to the New Advantage Owners took place on less than market terms. As the Motion to Dismiss argues, Plaintiffs do not actually allege that the sale price of the Vessels was not for market value, but this is now established by Plaintiff's own testimony:

Q: Do you have any evidence that the transfer of these [V]essels from Geden to Advantage was for anything less than fair market value?

A: No, I have not such evidence.

(Bacha Depo. p. 86).

Accordingly, the Proposed Amended Complaint can be dismissed because Plaintiffs do not even allege that they were disadvantaged by the sale of the Vessels. Plaintiffs are perfectly aware that this is fatal to their case, and Ms. Bacha was extremely evasive when directly asked to explain how Plaintiffs were disadvantaged by the sale of the Vessels. (*See* Bacha Depo. p. 90-100). In asking the question 'how plaintiffs allege there were disadvantaged by the sale of the Vessels', Ms. Bacha simply repeated that Geden Holdings owed Plaintiffs hire payments, and that was a sufficient disadvantage. (Id.) This refusal to answer a straightforward question on an element essential to Plaintiffs' case is a telling sign that the alter ego allegations are meritless.

However, even if Plaintiffs did colorably allege and testify that they were disadvantaged by the sale of the Vessels, the evidence shows that: (a) the price of the Vessels was market; (b) the New Advantage Owners paid cash; (c) part of the purchase price of the Vessels was supported by loans from new lenders; and (d) Plaintiffs actually benefitted from the sale of the Vessels. None of this evidence is contradicted by Plaintiffs.

a. <u>The Price of Each Vessel Was Set by an Independent Broker</u>

The documents and testimony showing that the price of the Vessels was determined by a third party brokerage service, Clarksons, is unchallenged.  In each case, Clarksons provided an independent valuation of each Vessel that set the sale price, a process supervised by the mortgagee banks for each Vessel and by Ms. Williams.  (Williams Depo. p. 30-31).  Plaintiffs have adduced <u>no</u> evidence that the price of the Vessels was anything other than market, and so these prices are uncontested.

b. <u>The New Advantage Owners Paid Cash</u>

The evidence is also clear that the New Advantage Owners paid cash for the Vessels.  In each case, the bill of sale can be matched with contemporaneous bank records showing two payments for each ship, one to the registered owner's account controlled by the mortgagee banks in payment of the debt on each Vessel, and one to Geden Holdings in payment of the equity interest in each Vessel.  (Quartaro Dec. Ex. 1).  In summary, these payments were as follows:

| Vessel | Sale Price | Payment of Debt | Payment of Equity |
|--------|-----------|-----------------|-------------------|
| Advantage Spring | $54,000,000 | $43,612,706 | $10,387,294 |
| Advantage Solar | $46,500,000 | $34,500,000 | $12,845,000 |
| Advantage Start | $54,000,000 | $28,512,245 | $25,487,755 |
| Advantage Award | $48,500,000 | $28,150,000 | $20,350,000 |
| Advantage Avenue | $46,250,000 | $28,750,000 | $17,500,000 |
| Advantage Arrow | $44,000,000 | $23,515,000 | $20,485,000 |
| Advantage | $54,000,000 | $43,702,119 | $10,297,881 |

| Summer | | | |
|---|---|---|---|
| Advantage Sun | $57,750,000 | $42,997,750 | $14,752,250 |
| Advantage Atom | $48,500,000 | $20,350,000 | $28,150,000 |
| Advantage Anthem | $48,500,000 | $27,550,000 | $20,950,000 |
| Advantage Sky | $50,250,000 | $35,387,500 | $14,862,500 |

(Quartaro Ex. 1).

In total, records showing payment of $357,027,320 in debt to Geden's lenders and $196,067,680 in equity to Geden have been produced.[2] Plaintiffs have not produced a scintilla of evidence to refute these records, and in fact concede that if Geden Holdings received its equity interest for the Vessels, the Plaintiffs could not have been disadvantaged:

Q: [I]f Geden [Holdings] received the value of its equity in these [V]essels, plaintiffs could not have been disadvantaged by that sale. Is that what you're saying?

A: Yes.

(Bacha Depo. p. 89).

The evidence proves that Geden Holdings was paid fair market value for the Vessels. Plaintiffs admit that this fact is fatal to their case, and accordingly the Proposed Amended Complaint can be dismissed.

---

[2] Plaintiffs appear to imply that Ms. Williams did not actually invest approximately $200 million in Advantage Tankers. The evidence and testimony are unchallenged that Ms. Williams did in fact make this investment in a series of transfers from bank accounts in her name. (Williams Depo. p. 57-58; Williams Depo. Ex. 8). Ms. Williams was fortunate to have been born very wealthy, a fact unchallenged by Plaintiffs. (Williams Depo. p. 62).

c. <u>The Sale of the Vessels to the New Advantage Owners Was Supported by New Lenders</u>

Further evidence of the arm's length nature of the purchase of the Vessels by the New Advantage Owners is the support of new lenders. The acquisition of the Vessels by the New Advantage Owners was pursuant to new loans from CIT Finance, DVB Bank, Hayfinn Services, Norddeutsche Landesbank Girozentrale, and Unicredit Bank AG. (Quartaro Dec. Ex. 2). The fact that five major international banks committed approximately $400,000,000 to finance the acquisition of the Vessels from Geden Holdings is persuasive evidence that this was indeed an arms-length transaction that involved new money and the actual payment of value to Geden Holdings.

d. <u>In Any Event, the Sale of the Vessels Benefitted Plaintiffs</u>

Plaintiffs vaguely complain that the sale of the Vessels somehow disadvantaged them, but even if the fact that Geden Holdings received all of its equity interests in cash is ignored, the evidence shows that the sale of the Vessels in fact benefitted Plaintiffs. Geden Holdings received approximately $196,000,000 in equity in cash from the sale of the Vessels that Geden Holdings used for general business purposes. (Tokgoz Depo. p. 130). As a review of the Initial Complaints shows, the Geden Defendants were allegedly behind in payments of charter hire to various companies owned and controlled by Plaintiffs. In response to the subpoena Plaintiffs served on Geden Holdings in Houston, the company produced payment

records showing the transfer of approximately $9,200,000 in charter hire to Plaintiffs and related companies. (Quartaro Dec. Ex. 6). Thus, entirely contrary to Plaintiffs vague assertions, the sale of the Vessels actually benefitted Plaintiffs because it allowed Geden Holdings to pay some of the overdue charterhire sought by Plaintiffs.

## CONCLUSION

Plaintiffs seek to attach over $2,600,000 of property belonging to the Advantage Defendants for debt that, to the extent it exists, is owed by the unrelated Geden Defendants. The discovery ordered by the Court did not reveal any of the usual veil piercing factors, and so there is no reason why the Advantage Defendants should be liable for the Geden Defendants' debt.

The Complaints must also be dismissed for failure to name a necessary party, Geden Holdings, which is a central link in the chain of alter ego companies alleged by Plaintiffs. In addition, discovery proved that Geden Holdings was in fact paid the fair market value of the Vessels, and in fact some of those monies were used to pay Plaintiffs.

Having adduced no evidence that the Advantage Defendants are controlled by the Geden entities (and omitting Geden Holdings from this analysis), and having admitted that they have no case if Geden Holding was paid the fair value of the Vessels, the Proposed Amended Complaint can be denied and the attachments

vacated, and Defendants should be awarded their attorneys' fees and costs.

Defendants pray for all other and further relief to which they may be justly entitled.

Respectfully submitted,

*s/ Marc G. Matthews*

Marc G. Matthews
Texas Bar #24055921
Federal ID No. 705809
500 Dallas Street, Suite 1300
Houston, Texas 77002
Telephone: (713) 626-1386
Telecopier: (713) 626-1388
marc.matthews@phelps.com

**ATTORNEY-IN-CHARGE
FOR DEFENDANTS ADVANTAGE
ARROW SHIPPING, LLC;
ADVANTAGE TANKERS, LLC;
ADVANTAGE HOLDINGS, LLC;
AND FORWARD HOLDINGS, LLC**

OF COUNSEL:
**Phelps Dunbar LLP**
Brian D. Wallace (LA Bar #17191; Fed. ID 205890)
wallaceb@phelps.com

and

**Watson, Farley, and Williams (New York) LLP**
Neil Quartaro (admitted Pro Hac Vice)
nquartaro@wfw.com
John Kissane (admitted Pro Hac Vice)
jkissane@wfw.com
1133 Avenue of the Americas, 11th Floor
New York, New York 10036

## **CERTIFICATE OF SERVICE**

I certify that a copy of the foregoing was electronically filed with the Clerk, with a copy served electronically by the Clerk or by the undersigned on this the 8th day of February, 2016 upon all counsel of record.

/s/Marc G. Matthews

Marc G. Matthews